1  Peter J. Kennedy (State Bar No. 166606)
2  Natasha Sung (State Bar No. 228633)
   REED SMITH LLP
3  355 South Grand Avenue, Suite 2900
   Los Angeles, CA 90071-1514
   Telephone: 213.457.8000
4  Facsimile: 213.457.8080

5  Mark S. Melodia (*Pro Hac Vice pending*)
   Paul J. Bond (*Pro Hac Vice pending*)
6  REED SMITH LLP
   Princeton Forrestal Village
7  136 Main Street, Ste 250
   Princeton, NJ 08540
8  Telephone: (609) 987-0050
   Facsimile: (609) 951-0824

9
10 Attorneys for Defendants,
   Countrywide Financial Corporation,
   Countrywide Bank, FSB, Countrywide
11 Home Loans, Inc., and Bank of America
   Corporation
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

Case No.   CV09-01045 SVW (Ex)

15 [Removal from Superior Court of
   California, County of Los Angeles, Case
16 Nos. BC 397636 and BC 398509,
   consolidated per Court order on Dec. 23,
17 2008]

18 **DEFENDANTS COUNTRYWIDE**
   **FINANCIAL CORPORATION,**
19 **COUNTRYWIDE BANK, FSB,**
   **COUNTRYWIDE HOME LOANS,**
20 **INC., AND BANK OF AMERICA**
   **CORPORATION'S NOTICE OF**
21 **REMOVAL OF CONSOLIDATED**
   **ACTION UNDER 28 UNITED**
22 **STATES CODE SECTIONS 1332,**
   **1441, AND 1446**
23

24 **[DIVERSITY OF CITIZENSHIP]**

SPENCER SILVERBACH and VICKI
SILVERBACH, individuals, on behalf of
themselves and all others similarly
situated,

                    Plaintiffs

          v.

COUNTRYWIDE FINANCIAL CORP., a
corporation, COUNTRYWIDE BANK,
FSB, a corporation, COUNTRYWIDE
HOME LOANS, INC., a corporation,
BANK OF AMERICA CORPORATION,
a corporation, and J. DOES 1 through 100,
corporations,

                    Defendants.

---

DEFENDANTS' NOTICE OF REMOVAL OF CONSOLIDATED ACTIONS

TO THE CLERK OF THE UNITED STATES DISTRICT COURT OF THE
CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendants Countrywide Financial Corporation,
Countrywide Bank, FSB, Countrywide Home Loans, Inc., and Bank of America
Corporation hereby remove these consolidated actions entitled *Weber v. Countrywide
Fin. Corp.,* Case No. BC 397636 and *Silverbach, et al. v. Countrywide Fin. Corp., et.
al.,* Case No. BC 398509 ("Consolidated Actions") from the Superior Court of the
State of California, County of Los Angeles, pursuant to 28 U.S.C. §§ 1332, 1441, and
1446, as amended in relevant part by the Class Action Fairness Act of 2005
("CAFA").

## **INTRODUCTION**

The Consolidated Actions removed today represent two out of approximately
thirty-five class actions filed nationally arising from a former Countrywide
employee's improper sale of customer information.  All other such class actions have
been transferred to the Western District of Kentucky pursuant to an order by the
Judicial Panel on Multi-District Litigation.

Though not initially removable because CAFA's amount in controversy
requirement of $5,000,000 was not met, the cases became removable on January 15,
2009, when Plaintiffs sent a Consolidated Class Action Complaint to Defendants.
There, Plaintiffs, for the first time, purport to seek statutory and punitive damages
under the Consumer Legal Remedies Act ("CLRA").  Such damages would exceed
$5,000,000.  In addition, Plaintiffs' January 22, 2009 *Ex Parte* Application and
January 30, 2009 letter evidence Plaintiffs' seeming rejection of the MDL settlement
terms, which exceed $5,000,000, and instead show that Plaintiffs are seeking much
more than that amount.  Lastly, in Plaintiffs' February 10, 2009 Motion for Class
Certification, they and their expert declare that the 2.4 million members of the

NOTICE OF REMOVAL OF CONSOLIDATED ACTIONS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   putative class each deserve more than two years' worth of credit protection remedies.

2   This explicit demand made unmistakable Plaintiffs' satisfaction of CAFA's

3   jurisdictional amount.  Accordingly, the Consolidated Actions are removable based on

4   three separate and independently-sufficient bases:  (1) the Consolidated Class Action

5   Complaint; (2) Plaintiffs' *Ex Parte* Application and letter to Defendants' counsel, and

6   (3) Plaintiffs' Motion for Class Action Certification and the attached expert

7   certification.

8

9                   **STATEMENT OF JURISDICTION**

10          1.      This Court has original jurisdiction over these Consolidated Actions

11   under CAFA.  *See* 28 U.S.C. § 1332(d).  In relevant part, CAFA grants district courts

12   original jurisdiction over civil class actions filed under federal or state law where any

13   member of the putative class is a citizen of a state that is different from any defendant,

14   and where the amount in controversy in the aggregate exceeds the sum or value of

15   $5,000,000, exclusive of interest and costs.  *Id.*  As set forth below, these

16   Consolidated Actions each meet all of CAFA's requirements for removal, and they are

17   timely and properly removed by the filing of this Notice.

18

19          **PROCEDURAL BACKGROUND OF THE MDL ACTIONS**

20          2.      Approximately 35 civil class actions have been filed against Defendants

21   arising from alleged failures to safeguard consumer's personal information, including

22   these Consolidated Actions.  *See* Declaration of Peter J. Kennedy ("Kennedy Decl."),

23   ¶ 4.  On December 2, 2008, the Judicial Panel on Multidistrict Litigation ("MDL")

24   transferred the federal court class actions to the Western District of Kentucky for

25   coordinated proceedings.  *Id.*

26          3.      On January 20, 2009, Defendants and various representative plaintiffs

27   entered into a Settlement Agreement in the coordinated MDL actions entitled *In re:*

28   *Countrywide Financial Corp. Customer Data Security Breach Litigation.*  A true and

correct copy of the Settlement Agreement is attached hereto as Exhibit A.  On January 21, 2009, a Motion for Preliminary Approval of Class Action Settlement and Publishing of Notice, and Settling of Final Fairness Hearing was filed in the MDL actions.  A true and correct copy of the Motion for Preliminary Approval is attached hereto as Exhibit B.

4.     The Settlement Agreement provides for the following benefits:  (1) up to $1,500,000 in out-of-pocket reimbursements to class members; (2) up to $5,000,000 in actual identity theft reimbursement; and (3) an offer of two years of credit monitoring benefits to more than 2,000,000 class members.  *See* Settlement Agreement, ¶ 2.  A case management conference has been scheduled in the MDL for February 17, 2009.  Kennedy Decl., at ¶ 4.

## PROCEDURAL BACKGROUND OF THE CONSOLIDATED ACTIONS

5.     On or about September 5, 2008, Plaintiff Daniel Weber ("Weber") filed a Complaint against Defendant Countrywide Financial Corporation ("Countrywide") in the Superior Court of the State of California for the County of Los Angeles, entitled *Weber v. Countrywide Fin. Corp.,* Case No. BC 397636 (the "*Weber* Action").  A true and correct copy of the *Weber* Complaint is attached hereto as Exhibit C.

6.     Mr. Weber, on behalf of himself and a purported nationwide class, alleged causes of action for (a) negligence; (b) violation of Business & Professions Code § 17200; and (c) violation of Business and Professions Code § 17500 arising from alleged failures to safeguard consumers' personal information.  The putative nationwide class was defined as the following:

> All applicants and customers of COUNTRYWIDE in the United States whose personal information … were maintained by Defendant COUNTRYWIDE and DOES 1-100 and were subjected to the unauthorized release of that information to others for the period commencing from at least August 1, 2004 through the date of judgment.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  *See Weber* Complaint, ¶ 17.

2      7.    On or about September 19, 2008, Plaintiff Spencer and Vicki Silverbach

3  (the "Silverbachs") filed a Complaint against Defendants Countrywide Financial

4  Corporation, Countrywide Bank, FSB, Countrywide Home Loans, Inc., and Bank of

5  America Corporation in the Superior Court of the State of California for the County of

6  Los Angeles, entitled *Silverbach, et al. v. Countrywide Fin. Corp., et. al.*, Case No.

7  BC 398509 (the "*Silverbach* Action"). A true and correct copy of the *Silverbach*

8  Complaint is attached hereto as Exhibit D.

9      8.    The Silverbachs, on behalf of themselves and a purported nationwide

10  class, alleged causes of action for (a) violation of Civil Code § 1770; (b) violation of

11  Business & Professions Code § 17200; (c) violation of Business and Professions Code

12  § 17500; (d) violation of Civil Code § 1798.80; and (e) violations of the Constitution

13  of the State of California, Article I, Section 1 arising from alleged failures to

14  safeguard consumers' personal information. The Silverbachs seek to represent

15  California and non-California "consumers … whose personal information … were

16  maintained and/or provided to others by Defendants and/or were subjected to the

17  unauthorized release of that information to others for the period commencing from at

18  least January 2005 through the date of judgment." *See Silverbach* Complaint, ¶ 22.

19  The Settlement Class includes Plaintiffs and all of the putative class members of the

20  Consolidated Actions. *See* Settlement Agreement, ¶ 1.24; *Weber* Complaint, ¶ 17;

21  *Silverbach* Complaint, ¶ 22.

22      9.    After service and review of the *Weber* and *Silverbach* Complaints,

23  Defendants determined that the actions were not removable under CAFA because the

24  amount in controversy in the aggregate did not appear to exceed the sum or value of

25  $5,000,000. Defendants specifically looked for a claim of statutory damages, and

26  found none. Defendants specifically looked for any reference in the Complaints to a

27  demand for credit monitoring or some other credit protection service. Defendants

28  removed another case arising from the same events where the Complaint sought credit

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  monitoring. A true and correct copy of the *Reist* Notice of Removal is attached hereto

2  as Exhibit E. But neither the *Weber* nor the *Silverbach* Complaint made any such

3  demand.

4        10.    The parties appeared for status conferences on December 15, 2008, and

5  December 23, 2008. True and correct copies of the December 15, 2008 and

6  December 23, 2008 Status Conference Transcripts are attached as Exhibits F and G,

7  respectively. During the December 23, 2008 status conference, Judge Anthony J.

8  Mohr of the Superior Court of the State of California for the County of Los Angeles

9  ordered the *Weber* and *Silverbach* Actions consolidated for all purposes except trial.

10  *See* December 23, 2008 Status Conference Transcript, 7:21-25.

11        11.    During the December 23, 2008 status conference, counsel for Weber

12  informed Defendants that a Consolidated Class Action Complaint would be filed

13  merging the *Weber* and *Silverbach* Complaints. *See* December 23, 2008 Status

14  Conference Transcript, 7:2-17; Declaration of Natasha Sung ("Sung Decl."), ¶ 3.

15  After that conference, counsel for Weber informed Defendants that the Consolidated

16  Class Action Complaint would be served on or around December 29, 2008. *See* Sung

17  Decl., ¶ 3.

18        12.    On January 15, 2009, during a meet and confer call between counsel,

19  counsel for Defendants mentioned that he had not yet received the Consolidated Class

20  Action Complaint from Plaintiffs. Counsel for Weber stated that they would not

21  proceed with the Consolidated Class Action Complaint, and Defendants should

22  respond to the original complaints. The parties agreed that Defendants would have

23  until February 17, 2009 to respond to the *Weber* and *Silverback* Complaints. *See*

24  Kennedy Decl., ¶ 2.

25        13.    Later that same day, Defendants received in the mail the Consolidated

26  Class Action Complaint. A true and correct copy of the Consolidated Class Action

27  Complaint is attached hereto as Exhibit H. Counsel for Defendants called counsel for

28  Weber for an explanation. Weber's counsel stated that the Consolidated Class Action

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Complaint was sent in error and should be disregarded.  Counsel for Defendants sent a

2   letter confirming this arrangement as well as other agreements reached that day.  The

3   Consolidated Class Action Complaint has not been filed.  *See* Kennedy Decl., ¶ 3 and

4   Exhibit 1, thereto.

5       14.    In the Consolidated Class Action Complaint, Plaintiffs, for the first time,

6   seek statutory and punitive damages under the Consumer Legal Remedies Act

7   ("CLRA").  *Compare* Consolidated Class Action Complaint, ¶¶ 62-69 *with Weber*

8   Complaint (no cause of action for CLRA alleged) and *Silverbach* Complaint, ¶¶ 50-53

9   (cause of action for CLRA alleged, but no damages sought).  However, the

10  Consolidated Class Action Complaint still did not demand credit monitoring or any

11  other form of credit protection be bought for the putative class.

12      15.    On or about January 22, 2009, counsel for Plaintiffs filed an *Ex Parte*

13  Application seeking a discovery plan and briefing schedule for their anticipated

14  motion for class certification.  A true and correct copy of the *Ex Parte* Application is

15  attached hereto as Exhibit I.  In the application, counsel for Plaintiffs expressed their

16  dissatisfaction with the Settlement Agreement, "Apparently, a small faction of the

17  Plaintiffs' attorneys have attempted to reach a settlement with Countrywide on behalf

18  of the entire putative nationwide class.  The settlement was not reached by lead

19  counsel in any proceeding and is the subject of significant scrutiny from parties within

20  and outside of the MDL proceedings."  *See* Ex Parte Application, 4:23-26.  By

21  implication, Plaintiffs were stating their opinion that their cases were more valuable

22  than could be settled by two years of credit monitoring and $6.5 million in potential

23  reimbursements.

24      16.    On January 27, 2009, Defendants filed a Motion to Stay Actions Pending

25  Final Approval of Class Action Settlement.

26      17.    On or about January 30, 2009, counsel for Plaintiffs sent a letter to

27  counsel for Defendants, again expressing dissatisfaction with the Settlement

28  Agreement, stating, "After reviewing the terms of the agreement in detail we have

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  little confidence that this agreement was arms-length or in the best interests of the

2  class members.  While we would like to give the benefit of doubt to participants who

3  crafted the agreement, the very procedural posture under which it was created raises

4  serious questions … The substantive terms of the agreement exacerbate these

5  concerns (scope of release, lack of benefit to a majority of class, etc.).”  A true and

6  correct copy of the January 30, 2009 letter is attached hereto as Exhibit J.

7      18.    On February 10, 2009, Plaintiffs filed a Motion for Class Certification.

8  A true and correct copy of the Motion for Class Certification is attached hereto as

9  Exhibit K.

10     19.    In this Motion, Plaintiffs alleged a class of at least 2.4 million persons.

11  *See* Exhibit K, p. 8.

12     20.    Attached to the Motion for Class Certification, Plaintiffs submitted a

13  Certification of Evan D. Hendricks.  A true and correct copy of the Certification of

14  Evan D. Hendricks is attached hereto as Exhibit L.

15     21.    Evan D. Hendricks, as expert for Plaintiffs, opines “unequivocally” that

16  two years of credit monitoring “is not adequate” as a remedy for the class.  *See*

17  Certification of Evan D. Hendricks, ¶¶ 10-11.

18     22.    The Hendricks Certification is the first mention Plaintiffs have made of

19  credit monitoring, other than to suggest by opposing the Settlement Agreement that

20  two years is an inadequate remedy.

21     23.    Even two years of credit monitoring, as a remedy sought, would put more

22  than $5,000,000 at issue.  For example, Experian’s TripleAdvantage credit monitoring

23  costs $14.95 per month.  A true and correct copy of Experian’s website showing such

24  costs is attached hereto as Exhibit M.  $14.95 per month multiplied by two years

25  multiplied by 2.4 million persons would be $861,120,000.

26     24.    The Hendricks Certification goes further and specifically demands the

27  use of two products:  ID Watchdog and Identity Guard.  *See* Certification of Evan D.

28  Hendricks, ¶ 35.

25.     ID Watchdog is available at the monthly rate of $19.95 per month.  A true and correct copy of ID Watchdog's website showing such costs is attached hereto as Exhibit N.  Offering ID Watchdog to Plaintiff's putative class of 2.4 million for two years would therefore cost up to $1,149,120,000.

26.     Identity Guard is available at the monthly rate of $14.99 per month.  A true and correct copy of Identity Guard's website showing such costs is attached hereto as Exhibit O.  Offering Identity Guard to Plaintiff's putative class of 2.4 million for two years would therefore cost up to $863,424,000.

27.     The Consolidated Class Action Complaint, Plaintiffs' *Ex Parte* Application, Plaintiffs' January 30, 2009 letter, and Plaintiffs' Motion for Class Certification have each independently placed Defendants on notice that the Consolidated Actions are removable because (1) the remedies to be sought exceed $5,000,000; and (2) Plaintiffs have shown, by their statements, that they believe the benefits provided under the Settlement Agreement are insufficient, and they intend to seek class benefits beyond those provided under the Settlement Agreement.

## PARTIES AND CITIZENSHIP

28.     Defendant Countrywide Financial Corporation is a Delaware corporation, with its principal place of business in Calabasas, California.

29.     Defendant Countrywide Bank, FSB is a federal savings bank with its principal place of business in Calabasas, California.

30.     Defendant Countrywide Home Loans, Inc. is a Delaware corporation, with its principal place of business in Calabasas, California.

31.     Defendant Bank of America Corporation is a Delaware corporation, with its principal place of business in Charlotte, North Carolina.

32.     Upon information and belief, Daniel Weber is a resident of the County of Los Angeles in the State of California. *See Weber* Complaint, ¶ 9.

33.     Upon information and belief, Spencer and Vicki Silverbach are residents

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL OF CONSOLIDATED ACTIONS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of the County of Sacramento in the State of California. *See Silverbach* Complaint, ¶¶ 9, 11.

34.    Upon information and belief, DOES 1 through 100 of the Consolidated Actions have not been substituted, identified or served. Pursuant to 28 U.S.C. § 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for the purpose of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action. *Newcombe v. Adolf Coors Co.*, 157 F. 3d 686, 690-91 (9th Cir. 1998).

35.    In turn, diversity of citizenship sufficient to satisfy the requirements of CAFA is present in that at least one putative class member of the purported nationwide classes and at least one defendant are citizens of different states. *See* Kennedy Decl., ¶ 7.

### TIMELINESS OF REMOVAL

36.    Defendants filed this Notice of Removal within thirty (30) days of service of the Consolidated Class Action Complaint on January 14, 2009, which is the paper from which Defendants could first determine that the Consolidated Actions had became removable, and the removal is therefore timely. *See* 28 U.S.C. § 1446(b). In addition, Defendants also filed this Notice of Removal within thirty (30) days of service of the January 22, 2009 *Ex Parte* Application and January 30, 2009 letter, which also placed Defendants on notice that the Consolidated Actions had become removable. Finally, Defendants filed this Notice of Removal within thirty (30) days of service of the February 10, 2009 Motion for Class Certification, from which removal jurisdiction may be ascertained.[1]

---

[1]    It should be noted that grounds for removal must be unequivocally clear and certain to start the thirty day removal period. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 589, 694 (9th Cir. 2005) ("Thus, the first thirty-day period for removal in 28 U.S.C. § 1446(b) only applies if the case stated by the initial pleading is removable on its face. If we were to flip the burden and interpret the first paragraph of 28 U.S.C. § 1446(b) (the first thirty-day window) to apply to all initial pleadings unless they clearly reveal that the case is not removable, defendants would be faced with an

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

37.    Pursuant to 28 U.S.C. § 1446(b),

If the case stated by the initial pleading is not removable, a notice of
removal may be filed within thirty days after receipt by the defendant,
through service or otherwise, of a copy of an amended pleading, *motion*,
order *or other paper* from which it may first be ascertained that the case
is one which is or has become removable.

28 U.S.C. § 1446(b) (emphasis added).

38.    The phrase "other paper" includes pleadings, and other non-filed papers
such as settlement demands and discovery. *See, e.g., Babasa v. LensCrafters, Inc.*,
498 F.3d 972, 975 (9th Cir. 2007) (holding settlement letter placed party on notice that
amount in controversy exceeded amount required for removal).  Accord, e.g., *Osborne
v. Pinsonneault*, Case No. 4:07CV-2-M, 2007 U.S. Dist. LEXIS 17076, * 4-5 (W.D.
Ky. Mar. 2, 2007) (holding defendants had properly removed case based on settlement
demand letter).

39.    The Consolidated Class Action Complaint served on Defendants
constitutes an "other paper" under 28 U.S.C. § 1446(b) because, like a settlement
demand letter, it contains Plaintiffs' thoughts and expectations regarding their
recovery as anticipated in the *Silverbach* Complaint.

40.    In addition, counsel for Plaintiffs' seeming rejection of the benefits
provided under the Settlement Agreement is apparent in their *Ex Parte* Application
and January 30, 2009 letter.  The latter two documents show Plaintiffs believe that the
parties to the Settlement Agreement have undervalued Defendants' liability.  Hence,
Plaintiffs essentially seek much more than the CAFA threshold of $5,000,000.  *See*
January 30, 2009 letter ("After reviewing the terms of the agreement in detail we have
little confidence that this agreement was arms-length or in the best interests of the

_____

unreasonable and unrealistic burden to determine removability within thirty days of
receiving the initial pleading.").

1   class members … The substantive terms of the agreement exacerbate these concerns

2   (scope of release, lack of benefit to a majority of class, etc.).").

3       41.   Lastly, Plaintiffs' Motion for Class Certification and the attached

4   Hendricks certification make clear Plaintiffs' intent to seek remedies for the class in

5   excess of $5,000,000. Plaintiffs finally, explicitly, say what they are seeking,

6   allowing Defendants to ascertain the existence of removal jurisdiction.

7       42.   Based upon the service of the Consolidated Class Action Complaint,

8   Defendants had until February 13, 2009 to remove the Consolidated Actions. Based

9   upon the service of the *Ex Parte* Application and the January 30, 2009, Defendants

10  had until February 20, 2009 and February 27, 2009, respectively, to remove the

11  Consolidated Actions. Based upon the service of the Motion for Class Certification,

12  Defendants had until March 12, 2009 to remove. Defendants filed this Notice of

13  Removal on February 11, 2009.

14

15  **VENUE**

16      32.   The Superior Court of California for the County of Los Angeles is

17  located within the United States District Court for the Central District of California,

18  Western Division. *See* 28 U.S.C. § 84(c)(2). Thus, venue is proper in this Court

19  because it is the "district and division embracing the place where such action is

20  pending." 28 U.S.C. § 1441(a).

21

22  **COMPLIANCE WITH 28 U.S.C. § 1446**

23      33.   No previous application has been made for the relief requested herein.

24      34.   Pursuant to 28 U.S.C. § 1446(a), a copy of the process, pleadings, and

25  orders served on Defendants in the Consolidated Actions will be filed and attached to

26  this Notice of Removal and its supporting papers. The papers filed by Defendants in

27  the Consolidated Actions will also be filed and attached to this Notice of Removal and

28  its supporting papers. *See* Kennedy Decl., ¶¶ 9-10, Exs. 2-3.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    35.    Pursuant to 28 U.S.C. § 1446(d), Defendants will file a written notice of

2    the removal of these Consolidated Actions along with all supporting papers with the

3    Clerk of the Los Angeles Superior Court.  Defendants will also serve Plaintiffs with

4    written notice of the removal of these Consolidated Actions and all supporting papers.

5

6    WHEREFORE, because the minimal diversity requirements of CAFA are

7    satisfied, this Court is vested with original jurisdiction over these Consolidated

8    Actions, and they are removable to this Court under 28 U.S.C. §§ 1332, 1441 and

9    1446.

10

11   DATED:  February 11, 2009

12                                          REED SMITH LLP

13

14                                          By

15                                              Peter J. Kennedy
                                                Attorneys for Defendants
16                                              Countrywide Financial Corporation,
                                                Countrywide Bank, FSB, Countrywide
17                                              Home Loans, Inc., and Bank of America
                                                Corporation

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CONSOLIDATED ACTIONS

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:08-MD-01998-TBR<br><br>Honorable Thomas B. Russell |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of January 20, 2009 (the "Settlement Agreement"), is made and entered into by and among the following Settling Parties (as defined below): (i) Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman ("Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP (collectively, "Proposed Co-Lead Settlement Class Counsel"); and (ii) Countrywide Financial Corporation ("Countrywide Financial"), Countrywide Home Loans, Inc. ("Countrywide Home"), Countrywide Bank FSB ("Countrywide Bank"), Full Spectrum Lending Division ("FSL") and Bank Of America Corporation ("Bank of America") (collectively, "Countrywide"), for the benefit of Countrywide and all its Related Entities (as defined herein), and by and through Countrywide's counsel of record, Mark S. Melodia, Esq. and Paul Bond, Esq., Reed Smith LLP. The Settlement Agreement is intended by the Settling Parties (as defined below) to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## I. THE LITIGATION

On or about August 1, 2008, the FBI announced that a former employee of Countrywide was arrested for allegedly stealing and selling Settlement Class Members' (as

- 1 -

defined below) Private Information (as defined below). Following an extensive investigation by

the FBI, it was discovered that Rene L. Rebollo, Jr. ("Rebollo"), a senior financial advisor at

Countrywide since 2006, allegedly stole and unlawfully sold or attempted to sell Countrywide's

customers' Private Information to third parties. Rebollo worked in Countrywide's subprime

mortgage division, and ultimately downloaded and made available the Private Information of what

is believed to be approximately 2.4 million individuals to third parties. Subsequently, a number of

lawsuits (collectively referred to as "the Litigation") were filed in various courts asserting claims

against Countrywide in relation to the distribution of the Private Information.[1]    On December 2,

---

[1] Where originally filed, these actions were docketed as:  *Moses, et al. v. Countrywide  Fin.  Corp., et al.*, Case No. CV08-05416 MMM (RCX) (C.D. Cal.) (filed Aug. 18, 2008); *Goldman, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-61349 (S.D. Fla.) (filed Aug. 22, 2008); *Elkhettab v. Countrywide Fin. Corp., et al.*, Case No. 08-05808 SVW (SSX) (C.D. Cal.) (filed Sept. 5, 2008); *Weber v. Countrywide Fin. Corp., et al.*, Case No. BC397636 (Sup. Ct. Cal.) (filed Sept. 5, 2008); *Martin v. Countrywide Fin. Corp., et al.*, Case No. 08-0666-CV-W-SOW (W.D. Mo.) (filed Sept. 12, 2008); *Wickman v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-01668-DMS-CAB (S.D. Cal.) (filed Sept. 12, 2008); *Lemuz, et al. v. Countrywide Fin. Corp., et al.*, Case No. CV08-06034 (C.D. Cal.) (filed Sept. 15, 2008); *Munz v. Countrywide Fin. Corp., et al.*, Case No. 2:09-cv-707 (M.D. Fla.) (filed Sept. 15, 2008); *Martin, et al. v. Countrywide Fin. Corp., et al.*, Case No. CV08-06042 (C.D. Cal.) (filed Sept. 16, 2008); *Leonard v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-01435-FRB (E.D. Mo.) (filed Sept. 19, 2008); *Silverbach, et al. v. Countrywide Fin. Corp., et al.*, Case No. BC398509 (Sup. Ct. Cal.) (filed Sept. 19, 2008); *Garbo, et al. v. Countrywide Bank, FSB, et al.*, Case No. 08-cv-02035 (D. Co.) (filed Sept. 22, 2008);  *Litvin v. Countrywide Fin. Corp., et al.*, Case No. 1:33-av-00001 (D.N.J.) (filed Sept. 22, 2008); *Hamilton, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-02450 (D. Kan.) (filed Sept. 23, 2008); *Ippolito v. Countrywide Fin. Corp., et al.*, Case No. 08-02249 (N.D. Ohio) (filed Sept. 23, 2008); *Kirksey v. Countrywide Fin. Corp., et al.*, Case No. 08-cv-00545-KD-B (S.D. Ala.) (filed Sept. 23, 2008); *Posada, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-02246 (E.D. Cal.) (filed Sept. 23, 2008); *Devries v. Countrywide Fin. Corp., et al.*, Case No. 08-06334 (C.D. Cal.) (filed Sept. 25, 2008); *Brooks, et al. v. Countrywide Fin. Corp., et al.*, Case No. 1:08-cv-04817 (D.N.J.) (filed Sept. 26, 2008); *Colon v. Countrywide Fin. Corp., et al.*, Case No. 6:08-cv-1687 (M.D. Fla.) (filed Oct. 1, 2008); *Kowalski, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-5643 (N.D. Ill.) (filed Oct. 3, 2008); *Arias, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-cv-1875 (S.D. Cal.) (filed Oct. 14, 2008); *Hemphill, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-C-0863 (E.D. Wis.) (filed Oct. 14, 2008); *Johnson, et al. v. Countrywide Fin. Corp., et al.*, Case No. 8:08-cv-01144 (C.D. Cal.) (filed Oct. 14, 2008); *Blake v. Countrywide Fin. Corp., et al.*, Case No. 2:08-cv-14384 (E.D. Mich.) (filed Oct. 15, 2008); *Davis v. Countrywide Fin. Corp., et al.*, Case No. 4:08-cv-03095 (S.D. Tex.) (filed

2008, the Judicial Panel on Multidistrict Litigation ("the Panel") transferred all related actions to the Western District of Kentucky for coordinated proceedings.    Subsequent to the transfer and coordination of all related actions, two additional cases were filed.[2]   One previously filed case[3] was voluntarily dismissed, resulting in the Panel's Order of December 30, 2008, vacating its December 2, 2008 Order insofar as it transferred said case.

Pursuant to the terms set out below, this Settlement Agreement resolves all Claims, actions and proceedings asserted, or that could be asserted, against Countrywide arising out of or related to the alleged theft of the Private Information by or on behalf of consumers who are members of the Settlement Class herein defined (collectively, "the Litigation"), but excluding the rights of Settlement Class Members who opt out of the Settlement.

---

Oct. 17, 2008); *Modrzejewski, et al., v. Countrywide Fin. Corp., et al.*, Case No. 3:08-cv-50299 (N.D. Ill.) (filed Oct. 20, 2008); *Wilkinson v. Countrywide Fin. Corp., et al.*, Case No. 2:09-cv-00356 (D. Me.) (filed Oct. 21, 2008); *Reist, et al. v. Countrywide Fin. Corp., et al.*, Case No. A0809782 (Ct. Common Pleas, Hamilton Cty. Ohio) (filed Oct. 23, 2008); *Wardrop v. Countrywide Fin. Corp., et al.*, Case No. 1:08-cv-06264 (N.D. Ill.) (filed Oct. 31, 2008); *Blickensderfer, et al. v. Countrywide Fin. Corp., et al.*, Case No. 3:08-cv-05025 (N.D. Cal.) (filed Nov. 4, 2008); *Hamilton, et al. v. Bank of America Corp., et al.*, Case No. 3:08-cv-00505 (W.D.N.C.) (filed Nov. 5, 2008); *Lazard v. Countrywide Fin. Corp., et al.*, Case No. CV08-07463 (C.D. Cal.) (filed Nov. 12, 2008); *Clarke v. Countrywide Home Loans, Inc., et al.*, Case No. 2:08-cv-00774 (M.D. Fla.) (filed Dec. 6, 2008); *Hayes v. Countrywide Fin. Corp.*, Case No. 08-CVS-5306 (N.C. Sup. Ct.) (filed Dec. 8, 2008).

[2] *Mooney, et al. v. Countrywide Fin. Corp., et al.*, Case No. 3:08cv-639-S (W.D. Ky.) (filed Dec. 8, 2008); *Holmes, et al. v. Countrywide Fin. Corp., et al.*, Case No. 5:08CV-205-R (W.D. Ky.) (filed Dec. 17, 2008).

[3] *Holmes, et al. v. Countrywide Fin. Corp., et al.*, Case No. 1:08-cv-5619 (D.N.J.) (filed Nov. 14, 2008).

## II.   CLAIMS OF THE REPRESENTATIVE PLAINTIFFS AND BENEFITS OF THE SETTLEMENT

Representative Plaintiffs believe the Claims asserted in the Litigation have merit. Representative Plaintiffs, Proposed Co-Lead Settlement Class Counsel, Proposed Plaintiffs' Executive Committee, and other Plaintiffs' Counsel, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Countrywide through motion practice, trial, and potential appeals.  Proposed Co-Lead Settlement Class Counsel, Proposed Plaintiffs' Executive Committee, and the other Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk of further litigation, as well as the difficulties and delays inherent in such litigation.

Proposed Co-Lead Settlement Class Counsel, Proposed Plaintiffs' Executive Committee, and the other Plaintiffs' Counsel believe that the settlement set forth in this Settlement Agreement confers substantial benefits upon the Settlement Class (as defined below).  Representative Plaintiffs, Proposed Co-Lead Settlement Class Counsel, Proposed Plaintiffs' Executive Committee, and the other Plaintiffs' Counsel have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.   DENIAL OF WRONGDOING AND LIABILITY

Countrywide denies each and every claim and contention alleged against it in the Litigation and all charges of wrongdoing or liability alleged against it.  Nonetheless, Countrywide and its counsel have concluded that further continuation of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.  Countrywide has also taken into account the uncertainty and risks inherent in any litigation, including in class action cases such

as this Litigation. Countrywide has, therefore, determined that it is desirable that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.   TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Representative Plaintiffs, individually and on behalf of the Settlement Class, by and through Proposed Co-Lead Settlement Class Counsel, and Countrywide that, subject to approval by the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to all Settling Parties, upon and subject to the following terms and conditions of this Settlement Agreement.

### 1.   Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Claims" means all known claims and Unknown Claims, actions, allegations, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether contingent or non-contingent, and whether at law or equity.

1.2    "Claims Administration" means the processing of claims received from Settlement Class Members, with review by Proposed Co-Lead Settlement Class Counsel.

1.3    "Claims Administrator" means a nationally recognized and experienced class action claims administrator to be agreed upon by the Settling Parties, and, in any event, as approved by the Court.

1.4    "Costs of Claims Administration" means all actual and reasonable costs associated with or arising from Claims Administration.

1.5    "Credit Monitoring Protection Package" means: (i) for Persons residing in the United States (excluding residents of the State of New York and the Commonwealth of Puerto Rico) who

were sent a Letter (as defined in ¶ 1.12) by Countrywide, the Experian "Triple Advantage$^{SM}$" product, http://www.experian.com/consumer-products/triple-advantage.html, subject to the Experian Guarantee (as defined in ¶ 1.8) of this product, along with $25,000 in identity theft insurance provided by a designated third-party insurer, as provided for in Exhibit 1, attached hereto; and (ii) for Persons residing in New York or Puerto Rico who were sent a Letter (as defined in ¶ 1.11) by Countrywide, where such identity theft insurance and the Experian Guarantee (as defined in ¶ 1.8) are not currently available from Experian, the "Triple Advantage$^{SM}$" product.

    1.6    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 9.1 hereof have occurred and been met.

    1.7    "Experian" means ConsumerInfo.com, Inc., also known as Experian Consumer Direct, who has or will have an agreement with Countrywide Home for the provision of certain credit monitoring product(s).

    1.8    "Experian Guarantee" means Experian's guarantee of the "Triple Advantage$^{SM}$" product, as provided for in Exhibit 2, attached hereto.

    1.9    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by this court ("Court"); (ii) the Court has entered a Judgment (as defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmation is no longer subject to further appeal or review.

    1.10    "Identity Theft" means the use of a Settlement Class Member's name, address, Social Security number (SSN), bank, or credit card account number, or other identifying information without the Settlement Class Member's knowledge to commit fraud or other crimes.

1.11    "Judgment Order" means a judgment order entered by the Court:  (i) in the form attached hereto as Exhibit 3, or (ii) a judgment (a) substantially similar to such form in both terms and cost and (b) which is acceptable to the Settling Parties in their discretion, which is to be reasonably exercised.

1.12    "Letter" means a letter from Countrywide dated anytime from August 2, 2008 to and including November 2, 2008, notifying a Person that their Private Information (as defined in ¶ 1.18) was involved in the alleged theft committed by a Countrywide employee.

1.13    "Named Plaintiff" means each Person (as defined in ¶ 1.16 herein) who is named as a plaintiff in any case in the Litigation and, additionally, who, with the agreement of Proposed Co-Lead Settlement Class Counsel and Countrywide's counsel, subsequently joins in this settlement by affirming in writing (which will be filed with the Court by the Settling Parties) that he or she, through his or her counsel, approve and join in this settlement.

1.14    "Notice Specialist" means a nationally recognized and experienced class action notice firm as agreed to by the Settling Parties, and, in any event, as approved by the Court.

1.15    "Opt-Out Date" means the date by which members of the Settlement Class must mail their requests to be excluded from the Settlement Class in order for that request to be effective.  The postmark date shall be the mailing date.

1.16    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, and/or assignees.

1.17   "Plaintiffs' Counsel" means Proposed Co-Lead Settlement Class Counsel, Proposed Plaintiffs' Executive Committee, and all other attorneys, as agreed to by Proposed Co-Lead Settlement Class Counsel and Countrywide's counsel, who represent Named Plaintiffs who have joined in this settlement.

1.18   "Private Information" means Settlement Class Members' names, Social Security numbers, home and/or office addresses, telephone numbers, credit and bank account information, employment history and information, and other information included in their mortgage applications or other mortgage documents with Countrywide or any other originating mortgagor.

1.19   "Proposed Co-Lead Settlement Class Counsel" means Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP.

1.20   "Proposed Plaintiffs' Executive Committee" means Proposed Co-Lead Settlement Class Counsel and Larry D. Drury, Larry D. Drury, Ltd.; Lance A. Harke, Harke & Clasby LLP; Sherrie R. Savett, Berger & Montague P.C.; Ralph K. Phalen, Ralph K. Phalen, Attorney at Law; Mark A. Maasch, Turner & Maasch, Inc.; Daniel C. Girard, Girard Gibbs, LLP; Justin G. Witkin, Aylstock, Witkin, Kreis & Overholtz, PLLC; Frank E. Piscitelli, Jr., Frank Piscitelli Co., L.P.A.; and E. Kirk Wood, Wood Law Firm, LLC.

1.21   "Proposed Plaintiffs' Liaison Counsel" means Mark K. Gray, Franklin Gray & White.

1.22   "Related Entities" means any past or present director, officer, employee, agent, attorney, predecessor, successor, parent, subsidiary, division and any affiliated entity of Countrywide, but excluding Rene L. Rebollo, Jr.

1.23   "Released Claims" shall collectively mean any and all Claims (including, without limitation, any causes of action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, Gramm-Leach-Bliley Act 15 U.S.C. § 6801 *et seq.*, the California Business & Professional Code §

- 8 -

17200 et seq., California Civil Code § 1798.80–84 *et seq.*, California Civil Code § 1798.53, and all similar statutes in effect in any other states in the United States as defined herein; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; and wantonness), and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against Countrywide or its Related Entities based on, relating to, concerning or arising out of the alleged theft of the Private Information or the allegations, facts, or circumstances described in the Litigation. Released Claims shall not include the right of any Settlement Class Member or Countrywide or its Related Entities to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.24    "Settlement Class" means all Persons in the United States who either: (1) provided their Private Information to Countrywide prior to July 1, 2008; or (2) whose mortgage was serviced by Countrywide prior to July 1, 2008. Countrywide, for this purpose, does not include Bank of America. Excluded from the definition of the Settlement Class are (i) Countrywide and its officers and directors; (ii) the Court presiding over any motion to approve this Settlement Agreement; (iii) any Person or entity named as a defendant in any of the pending lawsuits in the Litigation; and (iv) those Persons who timely and validly request exclusion from the Settlement Class. The Settling

Parties agree that the definition of the Settlement Class contained herein may be modified as required, if at all, to comport with further review and confirmatory discovery.

1.25    "Settlement Class Member(s)" means a Person(s) who fall(s) within the definition of the Settlement Class.

1.26    "Settling Parties" means, collectively, Countrywide and its Related Entities, and Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.27    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Representative Plaintiff, does not know of or suspect to exist in his or her favor at the time of the release of Countrywide which, if known by him or her, might have affected his or her settlement with and release of Countrywide, or might have affected his or her decision not to object to and/or participate in this settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States, or principle of common law which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to or different from those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but the Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have,

and by operation of the Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims.   The Settling Parties acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the settlement of which this release is a part. Notwithstanding the foregoing, the Settling Parties acknowledge and incorporate here as if fully set forth herein the last sentence of ¶ 1.23 above.

1.28   "United States" as used in this Settlement Agreement includes the District of Columbia, Puerto Rico, U.S. Virgin Islands, Guam, and any other recognized territory of the United States.

**2.      The Settlement**

2.1      (a) <u>Credit Monitoring Protection Package.</u>  Countrywide shall make available free of charge to all Persons who were sent a Letter by Countrywide:  (i) for those Persons who did not accept Countrywide's prior offer of two (2) years of credit monitoring, two (2) years of the Credit Monitoring Protection Package (as defined in ¶ 1.5), from the date of enrollment; and (ii) for those Persons who accepted Countrywide's prior offer of two (2) years of credit monitoring, said credit monitoring shall be guaranteed by Experian pursuant to the Experian Guarantee.  Said Persons shall have ninety (90) days following the receipt of the mailed notice of the settlement to subscribe for the Credit Monitoring Protection Package or 120 days from the first date of publication of the published notice of the settlement, whichever is later.  Mailed notice shall be postmarked no later than 30 days from preliminary approval, except as otherwise ordered by the Court.  Each Person's' valid subscription for the Credit Monitoring Protection Package shall be effective upon the later of the Effective Date of the settlement or thirty (30) days from when received by Experian.

(b) <u>Additional Identity Theft Reimbursement.</u>

(i)        Countrywide shall reimburse, as provided for below, each Settlement Class Member, up to $50,000 per each Identity Theft incident, and in each such instance, in the amount of the proven loss, for any loss that is claimed and shown by the claimant to have occurred more likely than not as a result of the alleged theft of the Private Information, regardless of whether said claimant elects to make a claim pursuant to the Credit Monitoring Protection Package or any other claim under this settlement, and further that:  (1) it is an actual, documented, and unreimbursed loss; (2) which resulted from identity theft caused by the alleged theft of the Private Information (excluding any charges initiated with the Settlement Class Member's authorization); and (3) that occurred during the time period from January 1, 2006, through and including July 31, 2012.  Claims alleging identity theft discovered prior to Final Approval must be made within 90 days of Final Approval.  Claims alleging identity theft discovered after Final Approval must be made no later than the earlier of 90 days following the claimant's first knowledge of the identity theft or October 31, 2012, whichever is the first to occur.  Disputes as to such claims are to be resolved pursuant to the provisions as stated in ¶ 2.1(e).

(ii)        Claimants seeking Additional Identity Theft Reimbursement must submit a written claim under penalty of perjury to the Claims Administrator, in a format to be mutually agreed upon by the Settling Parties and approved by the Court, together with proof of such losses.  Total aggregate payments made by Countrywide pursuant to ¶ 2.1(b) shall be made on a first valid claim received basis, subject to a cap of $5,000,000.   All identity theft insurance, and the Experian Guarantee made available through this Settlement Agreement, which the Settlement Class Member has otherwise received through this Settlement Agreement or with any credit monitoring product purchased or obtained prior to receiving notice of the settlement, including that which they are eligible for pursuant to ¶ 2.1(a) above, must be exhausted before Countrywide is responsible for

any amount claimed as a result of the conduct giving rise to this Settlement Agreement and the Additional Identity Theft fund may be accessed. The claimant's filing of a claim with the insurance provider for an alleged loss, and the approval or denial of same by the insurance provider, or the filing of a claim for reimbursement with Experian under the Experian Guarantee, and the approval or denial of the claim by Experian, shall be deemed to have exhausted that remedy; no lawsuit against the insurance provider or Experian in the event of a denial or anything less than full payment of the claim shall be required, although the claimant may file such a suit against the insurance provider or Experian without prejudice to their rights hereunder. Nothing in this agreement shall be construed to provide for a "double payment." Notwithstanding the above, for those Settlement Class Members residing in New York and Puerto Rico, said individuals are eligible to make a claim for Additional Identity Theft Reimbursement upon knowledge of the Identity Theft but within the claim periods provided for herein.

(iii)    Claimants who are reimbursed for a loss described in ¶ 2.1(b)(i) shall also be entitled to receive one (1) year of the Credit Monitoring Protection Package, in addition to the Credit Monitoring Protection Package offered in ¶ 2.1(a), upon submission of a request made within thirty (30) days of acceptance of the payment of the identity theft claim, with said payment to advise the Settlement Class Member of their right to the additional one (1) year of the Credit Monitoring Protection Package.

(b)    Expense Reimbursement. All Persons who were sent a Letter by Countrywide shall also be entitled to recover, in addition to all of the other relief contained herein, reimbursement of the following out-of-pocket expenses incurred by claimants as a result of the theft of the Private Information: (i) documented paper check printing costs of up to $90 per claimant necessitated by the opening of a new checking account or changing accounts that were incurred prior to the

published notice of this settlement; (ii) the cost of obtaining credit monitoring and identity theft insurance by a claimant incurred prior to the first cancellation opportunity of said credit monitoring and identity theft insurance after the Credit Monitoring Protection Package offered hereunder becomes available, but in no event more than $20.00 per month, subject to reasonable documentation, and up to a total maximum of $200.00 per claimant; (iii) the cost of telephone calls, postage related to inquiries on a claimant's bank accounts, financial accounts, mortgage accounts and/or credit reports, lost time (calculated at $10.00 per hour), the cost of placing a freeze on a claimant's credit report, and/or the cost of changing a claimant's phone number, up to $60 per claimant, subject to reasonable documentation and a signed statement by the claimant that his or her claim is true and correct and is being made under penalty of perjury; and (iv) the cost of replacing their driver's license, except in the normal course of renewing one's license.  Claimants seeking Expense Reimbursement must submit a written claim to the Claims Administrator, in a format to be mutually agreed upon by the Settling Parties, together with proof of such losses, within ninety (90) days after the Effective Date.  Total aggregate payments made by Countrywide pursuant to ¶ 2.1(c) shall be made on a first valid claim received basis, be subject to a cap of $1,500,000.  In the event that the total legitimate claims made by Persons pursuant to ¶ 2.1(c) exceeds $1,500,000, then the payment of said claims shall be made on a prorated basis.

(d) Dispute Resolution.

(i)      Following the later of the Effective Date or the submission of any claim under ¶¶ 2.1(b) and/or 2.1(c), Countrywide shall have thirty (30) days to accept or reject the claim, or to identify in writing to the claimant, with copies made available to Proposed Co-Lead Settlement Class Counsel at their request, such consents and additional information ("Claim Supplementation") as Countrywide may reasonably request. If Countrywide requests such Claim

Supplementation, the claimant shall provide it to Countrywide within forty-five (45) days of the request. In the event of unusual circumstances interfering with compliance during that period, the claimant may request and, for good cause shown (illness, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension during which to comply. Countrywide shall have thirty (30) days from receipt of the Claim Supplementation to accept or reject the claim.

(ii)        In the event Countrywide denies a claim and the claimant disputes said denial, the Settling Parties shall attempt to resolve the dispute on their own. Should the Settling Parties fail to resolve the dispute on their own, the claimant shall have forty-five (45) days following said failure to resolve the dispute to submit his or her claim, including all supporting materials previously submitted to Countrywide, to an independent arbitrator from JAMS/Endispute. The claimant shall be supplied by Countrywide with the information necessary to make the filing with JAMS/Endispute. In the event of unusual circumstances interfering with compliance during that period, the claimant may request and, for good cause shown (illness, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension during which to comply. JAMS/Endispute shall notify Countrywide of the filing, at which time Countrywide shall have thirty (30) days from the date of such notice to provide its reasons for rejection of the claim to JAMS/Endispute. Thereafter, JAMS/Endispute shall conduct a hearing and proceedings to resolve the dispute, in accordance with its rules and procedures. Said hearing and proceedings shall occur in the claimant's hometown, over the telephone, or by ruling on the papers submitted, at the claimant's selection.

(iii)        The decision of JAMS/Endispute shall be final. If the decision by JAMS/Endispute results in an award in favor of the claimant, Countrywide shall pay: (a) the

amount of the award plus an additional 10% of the face value amount of the award; and (b) if the Settlement Class Member has hired an attorney to represent the Settlement Class Member in connection with the arbitration dispute process, the reasonable attorney's fees, costs, and expenses incurred by the Settlement Class Member, but said fees, costs, and expenses shall not be included as part of the face value amount of the award to which the 10% premium is applied.  All fees and expenses of JAMS/Endispute shall be the sole obligation of and paid for by Countrywide.  Legal fees and expenses shall be borne by the party to the dispute resolution incurring them, except as otherwise stated herein.

      (e)    <u>Claims Process Assistance</u>.  Countrywide shall provide for or cause to be provided at its expense a sufficient number of persons to be available at a toll-free telephone number during normal business hours to handle inquiries from claimants regarding their class membership, the settlement, its available benefits, and the process and procedure for filing a claim, as applicable throughout the life of the Settlement Agreement.

      2.2    Countrywide agrees not to contest that a Person has received a Letter (as defined in ¶ 1.12), as long as Countrywide's records indicate that a Letter was mailed to said Person or if the Person presents a letter so addressed to them, or the Person provides a signed and sworn affidavit containing a statement that to the best of their recollection, that they did receive a Letter but no longer have it in their custody or possession, except that Countrywide may contest the authenticity of the Letter upon which the Person relies and may challenge the affidavit if Countrywide believes it to be not well-founded.

      2.3    All costs associated with notice to the Settlement Class and Claims Administration as required herein shall be paid by Countrywide.

2.4      The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the settlement is terminated or cancelled pursuant to the terms of this Settlement Agreement, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue. The Settling Parties' agreement to certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

### 3.    Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing

3.1      As soon as practicable after the execution of the Settlement Agreement, Proposed Co-Lead Settlement Class Counsel and counsel for Countrywide shall jointly submit this Settlement Agreement to the Court. Proposed Co-Lead Settlement Class Counsel shall also file a motion for preliminary approval of the settlement with the Court and apply for entry of an order (the "Order of Preliminary Approval"), in the form attached hereto as Exhibit 4, or an order substantially similar to such form in both terms and cost, requesting, *inter alia*:

(a)      certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.4; and

(b)      preliminary approval of the settlement as set forth herein.

The Settling Parties will submit a proposed Notice Plan to the Court within twenty-one (21) days of the filing of the Settlement Agreement with the Court, and not less than fourteen (14) days prior to the date set by the Court for the hearing on preliminary approval.

3.2      Countrywide shall pay for and assume the administrative responsibility of providing notice to the Settlement Class, and the costs of such notice, together with the Costs of Claims Administration, shall be paid by Countrywide.  For those Settlement Class Members who were previously sent a Letter, notice shall be provided via first-class direct mail postcard.  For those Settlement Class Members who were previously sent a Letter and for whom Countrywide has a current e-mail address, supplemental notice shall be provided via e-mail and will contain active links to the settlement website.

3.3      The Notice Specialist shall also construct and maintain a settlement website in conformity with the W3C Worldwide Web Content Accessibility Guidelines (Version No.1), Priorities 1 and 2, and shall maintain and update the content of the website throughout the Claims Period, with available access to the Summary Notice, Notice, and Proofs of Claim approved by the Court, as well as this Settlement Agreement.  The settlement website shall contain a question and answers section, with a link to a video presentation explaining the relevant terms of the settlement and how to properly fill out and submit the requisite claim forms and necessary documentation. Additionally, the settlement website shall prominently display an appropriately recognized third-party verification on it (VeriSign, etc.) verifying the website's authenticity and legitimacy.  The Claims Administrator will also provide copies of the forms of Summary Notice, Notice, and Proofs of Claim approved by the Court, as well as this Settlement Agreement, to Settlement Class Members so requesting either over the telephone or in writing. Prior to the Final Fairness Hearing, Proposed Co-Lead Settlement Class Counsel and Countrywide shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

3.4     The Settling Parties reserve the right to modify the settlement website after the Effective Date to make current the information that is provided therein and to eliminate information that is no longer relevant.

3.5     Proposed Co-Lead Settlement Class Counsel and Countrywide shall request that after notice is given, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

3.6     Proposed Co-Lead Settlement Class Counsel and Countrywide further agree that the proposed Order of Preliminary Approval shall provide, subject to Court approval, that, pending the final determination of the fairness, reasonableness, and adequacy of the settlement set forth in the Settlement Agreement, no Settlement Class Member, either directly, representatively, or in any other capacity, shall institute, commence, or prosecute, against Countrywide, any of the Released Claims in any action or proceeding in any court or tribunal.

### 4.     Opt-Out Procedures

4.1     Each Person desiring to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established for said purpose.  The written notice must clearly manifest the intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked at least twenty-one (21) days prior to the date as set by the Court in the Notice for the Final Fairness Hearing.  Signature by an authorized representative is acceptable if proper and adequate documentation of the authorization accompanies the opt-out.

4.2     All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of, nor be bound by the terms of, this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the

- 19 -

Settlement Class in the manner set forth in ¶ 4.1 above, except as otherwise ordered by the Court, shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

## 5.    Objection Procedures

5.1          Each Settlement Class Member desiring to object to the settlement shall submit a timely written notice of his or her objection.  Such notice shall state:  (i) the objector's full name, address, telephone number, and e-mail address; (ii) information identifying the objector as a Settlement Class Member, including (a) proof that they are a member of the Settlement Class (e.g., a Letter from Countrywide, mailed/emailed notice of the settlement, or evidence that they either provided their Private Information to Countrywide prior to July 1, 2008, or had their mortgage serviced by Countrywide prior to July 1, 2008), including documentation of any damages they claim to have incurred as a result of the alleged theft of their Private Information, if any, if they are objecting to any portion of the settlement dealing with reimbursement of Identity Theft losses and for which they believe they would have an existing claim, , or (b) an affidavit setting forth, in as much detail as the objector can reasonably provide, either (1) that they received a Letter from Countrywide, or mailed/emailed notice, addressed to them, indicating that their Private Information may have been compromised, including the approximate date of said receipt, (2) that they provided their Private Information to Countrywide prior to July 1, 2008, or (3) that they had their mortgage serviced by Countrywide prior to July 1, 2008; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; and (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative

(along with documentation setting forth such representation).   To be timely, written notice of an objection in appropriate form must be filed with the Clerk of the United States District Court for the Western District of Kentucky, at a courthouse location to be designated by the Court, twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing, and also served on both of the following:  one of Proposed Co-Lead Settlement Class Counsel, Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, and, further, counsel for Countrywide, Mark S. Melodia, Reed Smith LLP, Princeton Forrestal Village, 136 Main Street, Suite 250, Princeton, NJ 08543-7839.

### 6.   Releases

6.1      Upon the Effective Date, each Settlement Class Member, including Representative Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims.

6.2      Upon the Effective Date, Countrywide shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Co-Lead Settlement Class Counsel, Proposed Plaintiffs' Executive Committee, and all other Plaintiffs' Counsel who have consented to and joined in the settlement, from all Claims, including Released Claims and Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement and/or resolution of the Litigation, except for enforcement of the Settlement Agreement as to such matters as pertain to each of them.

**7.   Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses, and Incentive Awards**

7.1   The Settling Parties have not discussed attorneys' fees, costs, and expenses, and incentive awards, other than that Countrywide would pay reasonable attorneys' fees, costs, and expenses, and incentive awards.

7.2   Within fourteen (14) days of the execution of this agreement, the Settling Parties will attempt to agree on an appropriate amount of attorneys' fees, costs, and expenses, and incentive awards.  If the Settling Parties cannot agree within that period, then the Settling Parties agree to proceed to non-binding mediation with a mediator that is mutually agreed upon by the Settling Parties.  If the Settling Parties cannot resolve the matter through said mediation, then they agree to submit the issue of attorneys' fees, costs, and expenses, and incentive awards to the Court.  In any event, the award of attorneys' fees, costs, and expenses, and incentive awards are subject to Court approval.

7.3   Co-Lead Settlement Class Counsel, in their sole discretion, to be exercised reasonably, shall allocate and distribute the amount of attorneys' fees, costs, and expenses that is awarded by the Court amongst Plaintiffs' Counsel.  The attorneys' fees, costs, and expenses provided for under this Section shall be paid in lieu of any applicable fee-shifting statute.

7.4   Countrywide has agreed to pay, subject to Court approval, incentive awards to Representative Plaintiffs and other Named Plaintiffs, in amounts to be determined pursuant to ¶ 7.2.

7.5   Within thirty (30) days of the Effective Date, Countrywide shall pay the attorneys' fees, costs, and expenses, and incentive awards, as ordered by the Court pursuant to ¶ 7.2, to an account established and/or directed by Proposed Co-Lead Settlement Class Counsel.  Proposed Co-Lead Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses, and incentive awards, consistent with ¶¶ 7.3 and 7.4.

7.6     The amount(s) of any award of attorneys' fees, costs, and expenses, and incentive awards is intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.

**8.     Administration of Claims**

8.1     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2.1, except as provided otherwise therein.  Proposed Co-Lead Settlement Class Counsel shall be given reports as to both claims and distribution, and shall have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate.

8.2     Except as otherwise ordered by the Court, all Settlement Class Members who fail to submit a proof of claim for any benefits hereunder within the time frames set forth herein, or within such other period as may be ordered by the Court, or otherwise allowed, including under the extenuating circumstances as outlined above, shall be forever barred from receiving any payments or benefits pursuant to the settlement, but will in all other respects be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Judgment.

8.3     No Person shall have any claim against Countrywide or its Related Entities, Countrywide's counsel, Proposed Co-Lead Settlement Class Counsel, Proposed Plaintiffs' Executive Committee, or Plaintiffs' Counsel based on distributions of benefits made substantially in accordance with the Settlement Agreement and/or further order(s) of the Court.

8.4     All payments and distributions hereunder, unless expressly provided otherwise or for an identity theft claim pursuant to ¶¶ 2.1(a) and (b) of this agreement, shall be made within ninety (90) days of the deadline for filing claims, or ninety (90) days of the Effective Date, whichever is later.

9.    **Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

9.1      The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

(a)      the Court has entered the Order of Preliminary Approval , as required by ¶ 3.1, hereof;

(b)      the Court has entered the Judgment granting final approval of the settlement as set forth herein; and

(c)      the Judgment has become Final, as defined in ¶ 1.9, hereof.

9.2      If all of the conditions specified in ¶ 9.1 hereof are not satisfied, then the Settlement Agreement shall be canceled and terminated subject to ¶ 9.3, unless Proposed Co-Lead Settlement Class Counsel and counsel for Countrywide mutually agree in writing to proceed with the Settlement Agreement.

9.3      In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation, and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or litigant, which extension shall be subject to the decision of the Court, (ii) the terms and provisions of the Settlement Agreement shall have no further force or effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and (iii) any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.* Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, and/or expenses awarded to

Proposed Co-Lead Settlement Class Counsel shall constitute grounds for cancellation or termination of the Settlement Agreement.

### 10.   Miscellaneous Provisions

10.1      The Settling Parties: (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and any applicable requirements under the Class Action Fairness Act of 2005, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement. Countrywide shall be responsible for effectuating the required notice to the Attorneys General and shall advise Proposed Co-Lead Settlement Class Counsel of same.

10.2      The Settling Parties intend this settlement to be a final and complete resolution of all disputes, claims, and causes of action by and between them with respect to the Litigation in any way whatsoever. The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.3      Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of Countrywide and/or its Related Entities; or (ii) is or may be deemed to be or may be used as an admission of, or

- 25 -

evidence of, any fault or omission of any of Countrywide and/or its Related Entities, in any civil, criminal, and/or or administrative proceeding in any court, administrative agency, and/or other tribunal. Countrywide and/or its Related Entities may file the Settlement Agreement and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4       Representative Plaintiffs shall be entitled to reasonable confirmatory discovery from Countrywide to be conducted by Proposed Co-Lead Settlement Class Counsel and the Proposed Plaintiffs' Executive Committee. Said confirmatory discovery will include, but will not be limited to, evidence of corrective action undertaken by Countrywide to prevent future such incidents from occurring and enhancement of the security of consumers' information entrusted to Countrywide and its Related Entities. The period for confirmatory discovery shall begin as of the date of this Settlement Agreement and shall last for a period of ninety (90) days thereafter. Countrywide shall cooperate in good faith to facilitate the confirmatory discovery. All materials provided to Proposed Co-Lead Settlement Class Counsel and members of the Proposed Plaintiffs' Executive Committee that are proprietary and confidential shall be designated as such and retained by Proposed Co-Lead Settlement Class Counsel, subject to Court order that either party may find it necessary to seek and which is obtained and entered by the Court. At the conclusion of confirmatory discovery, Proposed Co-Lead Settlement Class Counsel shall, based upon all facts known to them, determine in good faith whether in their opinion the settlement is fair, reasonable and adequate. If Proposed Co-Lead Settlement Class Counsel determine that the settlement is not in their opinion fair, reasonable and adequate, Proposed Co-Lead Settlement Class Counsel shall terminate the

Settlement and give notice to Countrywide of such termination within ten (10) days after confirmatory discovery concludes.  In such case, the settlement shall be null and void, and the Parties shall return to their original positions.  Countrywide may defer incurring costs for notice under ¶ 3.2, and/or providing such notice under ¶ 3.2, until the period for Proposed Co-Lead Settlement Class Counsel to terminate the settlement pursuant to this paragraph has expired without Proposed Co-Lead Settlement Class Counsel taking such action.

10.5      The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.6      This Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement by, between, and among the Settling Parties hereto and no representations, warranties, or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such document.  Except as otherwise provided herein, each Party shall bear its own attorney's fees, costs, and expenses.

10.7      Proposed Co-Lead Settlement Class Counsel, on behalf of the Settlement Class, are expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms.  Proposed Co-Lead Settlement Class Counsel, on behalf of the Settlement Class, also are expressly authorized by Representative Plaintiffs to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class that they deem appropriate.

10.8      Each counsel or other Person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such counsel or other Person has the full authority to do so.

10.9      The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

10.10      The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto.

10.11      The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.12      This Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the Settling Parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice of law principles.

10.13      As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.14      All dollar amounts are in United States dollars, unless otherwise expressly stated.

10.15      All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

10.16      If circumstances transpire such that the Settling Parties are unable to fulfill the terms of the Settlement Agreement, notwithstanding their best good faith efforts, performance shall be deemed impossible, and the Settlement Agreement shall be deemed to be terminated in accordance with the provisions of ¶ 9.3.

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Settlement

Agreement to be executed, by their duly authorized attorneys.


*Counsel for Countrywide*                          *Proposed Co-Lead*
*and Duly Authorized Signatory*                     *Settlement Class Counsel*



_____                          _____
Mark S. Melodia                                   Ben Barnow
Paul Bond                                         Barnow and Associates, P.C.
Reed Smith, LLP                                   1 North LaSalle, Suite 4600
Princeton Forrestal Village                       Chicago, IL  60602
136 Main Street, Suite 250                        (312) 621-2000
Princeton, NJ 08543-7839
(609) 520-6015



                                                  _____
                                                  Burton H. Finkelstein
                                                  Finkelstein Thompson LLP
                                                  The Duvall Foundry
                                                  1050 30th Street, N.W.
                                                  Washington, D.C. 20007
                                                  (202) 337-8000



- 29 -

**List of Exhibits**

Exhibit 1: Identity Theft Reimbursement Evidence of Coverage

Exhibit 2: Evidence of Coverage for the Experian Guarantee

Exhibit 3: Judgment Order

Exhibit 4: Order of Preliminary Approval

# Exhibit 1

Online Credit Reports                                                              http://experian.consumerinfo.com/PREMBOM/Message.aspx?PageTy...

 Experian™

Credit Monitoring · Credit Resources    Credit Center Login

## Identity Theft Expense Reimbursement
## Evidence of Coverage

Virginia Surety Company, Inc., 175 West Jackson Blvd., Chicago, IL 60604

**Definitions:**

- We, Us, Our, or Company means Virginia Surety Company, Inc.
- You, Your, or Member means the individual person who has enrolled in a membership that this coverage is part of.
- Identity Theft means the use of Your name, address, Social Security number (SSN), bank, or credit card account number, or other identifying information without Your knowledge to commit fraud or other crimes.
- Administrator means TWG Innovation Solutions, Inc. (TWGIS) located at 13922 Denver West Parkway, Golden CO, 80401.
- Identity Theft Expenses means the following when incurred as a direct result of Identity Theft:
  1. **Legal Expenses:** Reasonable and necessary attorney fees or court costs associated with defending any suit brought against You by merchants, financial institutions or other credit grantors, or their collection agencies or the removal of any criminal or civil judgment wrongly entered against You;
  2. **Lost Wages:** Actual U.S. wages or salary You lose as a direct result of time off work taken by You to report or address the effects of Identity Theft;
  3. **Miscellaneous:** Loan applications fees, long distance telephone costs, mailing and postage costs, costs of having affidavits or other documents notarized. Costs to purchase up to four (4) credit reports from any of the three major credit bureaus (Experian, Equifax, or TransUnion). The credit reports may be purchased only after the Identity Theft has occurred and for the purpose of correcting inaccuracies that occur as a result of Identity Theft.

**Coverage Agreement:**

- We will reimburse You for Identity Theft Expenses You incur as a result of an Identity Theft incident that occurs or was first known to You while You are a Member to be eligible for coverage.
- Coverage is secondary to any other applicable insurance or coverage available to You.
- This Evidence of Coverage is not transferable to another person or entity.

**Coverage Limitations:**

Coverage is subject to:

- Reimbursement is limited to Your actual Identity Theft Expenses, not to exceed a total of $25,000 USD.
- There is a limit of two (2) Identity Theft incidents per twelve (12) month period.

**Coverage Period:**
This coverage begins on Your membership's effective date, and continues monthly unless non-renewed or cancelled by the Group Policyholder, the Company or You, and will end on the date Your membership is cancelled, non-renewed or expires

**Exclusions:**

Identity Theft Expense Reimbursement coverage does not apply to:

- Any Identity Theft Expense not listed in the above Definitions section;
- Any act of theft, deceit, collusion, dishonesty or criminal act by You or any person acting in concert with You, or by any authorized representative of You, whether acting alone or in collusion with You or others;
- Damages or losses arising from the theft or unauthorized or illegal use of Your business name, d/b/a/ or any other method of identifying Your business activity;
- Any lost wages due to sickness or emotional breakdown;
- Damages or losses of any type for which the credit card company, bank, creditor, etc. is legally liable;
- Identity Theft Expenses that were incurred or commenced from a known Identity Theft incident that occurred prior to the effective date of Your membership;
- Damages or losses of any type resulting from fraudulent charges or withdrawal of cash from a debit or credit card or financial/bank investment account;
- Any incident involving a loss or potential loss not notified to the relevant police authority within seventy-two (72) hours from the date You had knowledge of the loss
- Fees or costs associated with the use of any investigative agencies or private investigators.

**What to do if You are a Victim of Identity Theft:**

- Contact TWG Innovation Solutions, Inc. (TWGIS) located at 13922 Denver West Parkway, Golden CO, 80401 to request assignment of a recovery advocate.

- Notify the Administrator within ten (10) days of discovery of Your Identity Theft problem.
- Notify the police in Your local jurisdiction within seventy-two (72) hours from the date You had knowledge of the Identity Theft loss. Obtain a copy of the police report.

**How to File for Reimbursement Under This Coverage:**

- Contact the Administrator at 1-888-398-4776 6am to 6pm MDT, M-F to request an Identity Theft Expense Reimbursement claim form. You must submit the following documentation within thirty (30) days to the Administrator after final resolution of Your Identity Theft incident or Your Identity Theft Expenses may not be covered:
- Completed and signed claim form;
- Proof that a fraud alert was placed with each major credit bureau (Experian, Equifax, TransUnion, etc.) immediately after discovery of Identity Theft;
- Copy of the complaint filed with the Federal Trade Commission (FTC);
- Copy of settlement reached by each party (creditors, collection agency, banks, etc.) involved with Your Identity Theft incident;
- Copy of a police report from Your local jurisdiction;
- Copy of all receipts, bills or other records that support the Identity Theft Expenses incurred by You;
- Any other documentation that may be reasonably requested to validate an Identity Theft incident.

**General Provisions:**

**Cancellation and Non-Renewal:**
The Policyholder or the Company can cancel or choose not to renew this coverage. If this happens, You will be notified at least sixty (60) days in advance of the expiration of this coverage. Such notices need not be given if substantially similar replacement coverage takes effect without interruption. If coverage is canceled or non-renewed by the Policyholder or the Company, the coverage benefits will continue to be in force for the period that premium has already been paid for to the Company. Coverage will still apply to claims that occurred prior to the date of such cancellation or non-renewal, provided all other terms, conditions, and exclusions of coverage are met.

**Payment of Coverage:**
Benefits payable under this Evidence of Coverage for any loss will be paid upon receipt of acceptable proof of such loss and all required information necessary to support Your claim. All benefits will be paid to You directly or, in the case of Your death, to Your estate.

**Subrogation:**
If payment is made under this Evidence of Coverage, We are entitled to recover such amounts from other parties or persons. Any person who receives payment under this coverage must transfer to Us his or her right to recover against any other party or person and must do everything necessary to secure these rights and must do nothing that would jeopardize them, or these rights will be recovered from You.

**Concealment or Misrepresentation:**
Your coverage shall be void if, whether before or after a loss, You have concealed or misrepresented any material fact or circumstances concerning this coverage or the subject thereof, or if You commit fraud or swear falsely in connection with any of the foregoing.

**Legal Actions:**
No action at law or in equity shall be brought to recover under the Evidence of Coverage prior to expiration of sixty (60) days after proof of loss has been submitted in accordance with the requirements of the Evidence of Coverage.

Home | About Us | Contact Us | Terms & Conditions | Privacy Policy | FAQ | 3 Bureau Report

# Exhibit 2

Exhibit 2

## $1 Million Triple Advantage℠ Premium Guarantee

If you (hereinafter "you") become a victim of Identity Theft (as defined below) while enrolled in and using the Triple Advantage Premium product, ConsumerInfo.com, Inc. (hereinafter "we", "our" or "us") will reimburse you for certain Identity Theft Expenses (as described in Section 3, below) up to $1 Million, subject to the terms and conditions of this Guarantee. "Identity Theft" means that your name, address, Social Security number, bank, or credit card account number, or other personally identifying information was used without your knowledge or approval to commit fraud or other crimes. The maximum amount that we will pay you is $1 Million for Identity Theft Expenses as a direct result of an Identity Theft.

1. **GUARANTEE PERIOD:** Under the $1 Million Triple Advantage Premium Guarantee, we will reimburse you solely for Identity Theft Expenses you incur as a direct result of an Identity Theft that occurs while you are actively enrolled in the above listed product and are a member in good standing ("Guarantee Period").

2. **WHAT YOU MUST DO:**

During the Guarantee Period, you must take an active role in protecting yourself against Identity Theft by using Triple Advantage Premium as described below. To be eligible to seek and retain reimbursement under this Guarantee, you must do the following:

- You have an obligation to review your credit report and any email or other notification we may send you and if, upon your review, you observe suspicious activity (including, but not limited to, credit cards or loans you did not apply for, credit inquiries you did not authorize, etc.) and/or suspect an Identity Theft, you must:
- File a police report with the relevant police authority within the earlier of ten (10) days from the date we sent you such email or other notification or the date that you first had knowledge of an Identity Theft;
- Report the suspected Identity Theft to our Fraud Resolution Department within the earlier of ten (10) days from the date we sent you such email or other notification or the date that you first had knowledge of an Identity Theft (contact our Fraud Resolution Department Monday-Friday, 6:00 a.m. to 6:00 p.m., Pacific Time at 1-888-609-2456;
- Place a fraud alert with Experian, Equifax and TransUnion within ten (10) days from the date you had knowledge of an Identity Theft (to learn more about fraud alerts or to place a fraud alert on your Experian credit report go to www.experian.com/fraud);
- Work directly with our Fraud Resolution Department to pursue all sources of potential reimbursement and submit all documentation you may receive, if any, relating to the resolution of any such requests for reimbursement from such sources, and/or assign your right to us to seek and recover funds reimbursable under this Guarantee, and reimburse us in the event you obtain recovery of any amounts paid by us hereunder. For example, if we pay a direct expense under this Guarantee to you or on your behalf and you later recover the amount paid to you or on your behalf, then we are entitled to receive, retain or recover the amount paid to you or on your behalf. You must provide all reasonable and necessary assistance to us in our recovery and reimbursement efforts; and
- You agree to pay and/or reimburse us for any amount paid to you or on your behalf under this Guarantee due to your misrepresentation, as defined in Section 4, below, in connection with an Identity Theft.

3. **WHAT WE WILL DO:** Under the $1 Million Triple Advantage Premium Guarantee, we will reimburse you solely for the following Identity Theft Expenses incurred as a direct result of an Identity Theft that occurs during the Guarantee Period while you are using Triple Advantage Premium as described above:

- Stolen Funds: Funds directly stolen from you that are related to any account that is included on your Experian credit report provided that you assign any rights you might have to us for recovery or reimbursement as further provided below;
- Legal Expenses: Reasonable and necessary attorney fees or court costs associated with defending any suit brought against you by merchants, financial institutions or other credit grantors or their collection agencies, or the removal of any criminal or civil judgment wrongly entered against you. You must obtain our advanced written consent to your choice of any attorneys and/or legal counsel, and we reserve the right to select such

Exhibit 2

attorneys and legal counsel. You must forward all attorney invoices to us on a current basis;

- Lost Wages: Actual United States wages or salary you lose as a direct result of time off work taken by you to report an Identity Theft;
- Miscellaneous: Loan applications fees, long distance telephone costs, mailing and postage costs, costs of having affidavits or other documents notarized; and
- Private Investigators: Any fees or costs associated with the use of any investigative agencies or private investigators. You must obtain our advanced written consent to your choice of private investigators, and we reserve the right to select such private investigators. You must forward all private investigator invoices to us on a current basis (collectively, "Identity Theft Expenses").

**4. WHAT WE WILL NOT DO:** We will NOT reimburse you for any expenses, damages or losses that are not expressly described in Section 3 above, including without limitation the following types of expenses, damages or losses you incur in connection with an Identity Theft:

- Any expense, damage or loss due to any act of theft, deceit, collusion, dishonesty or criminal act by you or any person acting in concert with you, or by any of your authorized representatives, whether acting alone or in collusion with you or others (collectively, your "Misrepresentation") and you expressly agree to reimburse us for any expense, damage or loss due to your Misrepresentation;
- Any expense, damage or loss arising from the theft or unauthorized or illegal use of your business name, "d/b/a," or any other method of identifying your business activity;
- Any expense, damage or loss due to bodily injury, sickness, emotional distress or breakdown or any other medical condition, including without limitation, lost wages or salary;
- Any expense, damage or loss due to the termination of your employment or separation from your employment, whether temporary or permanent, for any reason;
- Any expense, damage or loss of any type for which a credit card company, bank, creditor or other third party is legally liable for;
- Any expense, damage or loss incurred by you from an Identity Theft that did not occur during the Guarantee Period; and
- Any expense, damage or loss in connection with an Identity Theft if you fail to comply with all obligations, requirements, terms and conditions of Section 2 entitled "What You Must Do."

**5. HOW TO REQUEST REIMBURSEMENT:** To request reimbursement under the $1 Million Triple Advantage Premium Guarantee, you must contact our Fraud Resolution Department Monday-Friday, 6:00 a.m. to 6:00 p.m., Pacific Time at 1-888-609-2456 to obtain an Identity Theft Expense Reimbursement Request Form. To receive reimbursement, you must submit the following documentation to one of our Fraud Resolution Representatives, all within the timeframes described in Section 2 above: (a) a completed and signed Identity Theft Expense Reimbursement Request Form; (b) proof that a fraud alert was placed with either Experian, Equifax or TransUnion; (c) if applicable, a copy of any settlement agreement reached by each party (creditors, collection agency, banks, etc.) involved with an Identity Theft; (d) a copy of a police report from your local jurisdiction and provide proof that such police report was filed; (e) copies of all receipts, bills, pay stubs, court documents and other records that support the Identity Theft Expenses incurred by you.

**6. OUR RIGHT TO TERMINATE $1 Million TRIPLE ADVANTAGE PREMIUM GUARANTEE:** We expressly reserve the right to terminate and discontinue offering the $1 Million Triple Advantage Premium Guarantee at any time in our sole and complete discretion. If we terminate the $1 Million Triple Advantage Premium Guarantee, you will be notified in writing. We will continue to honor the $1 Million Triple Advantage Premium Guarantee for an Identity Theft that occurred during the Guarantee Period while you were using Triple Advantage Premium as described above.

**THE $1 MILLION TRIPLE ADVANTAGE PREMIUM GUARANTEE IS NOT OFFERED, APPLICABLE OR AVAILABLE TO RESIDENTS OF THE STATE OF NEW YORK.**

# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:08-MD-01998-TBR<br><br>Honorable Thomas B. Russell |

### [PROPOSED] JUDGMENT ORDER

WHEREAS, Representative Plaintiffs Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman, and the defendants, Countrywide Financial Corporation ("Countrywide Financial"), Countrywide Home Loans, Inc. ("Countrywide Home"), Countrywide Bank FSB ("Countrywide Bank"), Full Spectrum Lending Division ("FSL") and Bank Of America Corporation ("Bank of America"), for the benefit of Countrywide and its Related Entities (together, "Countrywide"), entered into a Settlement Agreement dated _____, 2009 (the "Settlement Agreement");

WHEREAS, on _____, 2009, the Court entered an Order of Preliminary Approval Order, ("Preliminary Approval Order") that, among other things, (a) preliminarily certified, pursuant to Fed. R. Civ. P. 23, a class for the purposes of settlement only; (b) approved the form of notice to Settlement Class Members, and the method of dissemination thereof; (c) directed that appropriate notice of the settlement be given to the Settlement Class; and (d) set a hearing date for final approval of the settlement;

WHEREAS, on _____, 2009, the Court entered an Order Publishing of Notice of a Final Fairness Hearing ("Notice Order") that, among other things, (a) approved the form of

notice to Settlement Class Members, and the method of dissemination thereof; and (b) directed that appropriate notice of the settlement be given to the Settlement Class;

WHEREAS, the notice to the Settlement Class ordered by the Court in its Notice Order has been provided, as attested to in the declaration of _____, filed with the Court on _____;

WHEREAS, the governmental notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, has been provided, as attested to in the declaration of _____, filed with the Court on _____; and

WHEREAS, on _____, a hearing was held on whether the settlement set forth in the Settlement Agreement was fair, reasonable, adequate, and in the best interests of the Settlement Class, such hearing date being a due and appropriate number of days after such notice to the Settlement Class and the requisite number of days after such governmental notice;

NOW THEREFORE, having reviewed and considered the submissions presented with respect to the settlement set forth in the Settlement Agreement and the record in these proceedings, having heard and considered the evidence presented by the parties and the arguments of counsel, having determined that the settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and noting that, as set forth in ¶ 7.6 of the Settlement Agreement, the application of Co-Lead Counsel Settlement Class Counsel for an award of fees, costs and expenses, and Representative Plaintiff and Named-Plaintiff awards is separate from the issue of whether final approval should be given to settlement set forth in the Settlement Agreement, and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.      The Court incorporates by reference the definitions set forth in the Settlement

Agreement. Without limiting the effect of that incorporation, the following terms used in this

Judgment Order have the following meanings defined in the Settlement Agreement:

      a.      The term "Claims" has the following meaning:

      All known claims and Unknown Claims, actions, allegations,
demands, rights, liabilities, and causes of action of every nature
and description whatsoever, whether contingent or non-contingent,
and whether at law or equity.

      b.      The term "Released Claims" has the following meaning:

      Any and all Claims (including, without limitation, any causes of
action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et
seq.*, Gramm-Leach-Bliley Act 15 U.S.C. § 6801 *et seq.*, the
California Business & Professional Code § 17200 et seq.,
California Civil Code § 1798.80–84 *et seq.*, California Civil Code
§ 1798.53, and all similar statutes in effect in any other states in
the United States as defined herein; negligence; negligence per se;
breach of contract; breach of implied contract; breach of fiduciary
duty; breach of confidence; invasion of privacy; misrepresentation
(whether fraudulent, negligent or innocent); unjust enrichment;
bailment; and wantonness), and including, but not limited to, any
and all claims for damages, injunctive relief, disgorgement,
declaratory relief, equitable relief, attorneys' fees and expenses,
pre-judgment interest, credit monitoring services, the creation of a
fund for future damages, statutory damages, punitive damages,
special damages, exemplary damages, restitution, the appointment
of a receiver, and any other form of relief that either has been
asserted, or could have been asserted, by any Settlement Class
Member against Countrywide or its Related Entities based on,
relating to, concerning or arising out of the alleged theft of the
Private Information or the allegations, facts, or circumstances
described in the Litigation. Released Claims shall not include the
right of any Settlement Class Member or Countrywide or its
Related Entities to enforce the terms of the settlement contained in
this Settlement Agreement, and shall not include the claims of
Settlement Class Members who have timely excluded themselves
from the Settlement Class.

      c.      The term "Unknown Claims" has the following meaning:

      Any of the Released Claims that any Settlement Class Member,
including any Representative Plaintiff, does not know of or suspect

-3-

to exist in his or her favor at the time of the release of Countrywide which, if known by him or her, might have affected his or her settlement with and release of Countrywide, or might have affected his or her decision not to object to and/or participate in this settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States, or principle of common law which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to or different from those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but the Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the settlement of which this release is a part. Notwithstanding the foregoing, the Settling Parties acknowledge and *incorporate here as if fully set forth herein the last sentence of* ¶ 1.17 above.

d.     "Related Entities" means any past or present director, officer, employee, agent, attorney, predecessor, successor, parent, subsidiary, division and any affiliated entity of Countrywide, but excluding Rene L. Rebollo, Jr.

e.     "United States" as used in this Settlement Agreement includes the District of Columbia, Puerto Rico, U.S. Virgin

Islands, Guam, and any other recognized territory of the United States.

2.     The Court has subject matter jurisdiction of this matter and all claims asserted against Countrywide.

3.     The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

4.     Pursuant to Fed. R. Civ. P. 23 and this Court's Preliminary Approval Order, for the purposes of settling the Released Claims against Countrywide in accordance with the Settlement Agreement, the following Persons are members of the Settlement Class:

> All Persons in the United States who either:   (1) provided their Private Information to Countrywide prior to July 1, 2008; or (2) whose mortgage was serviced by Countrywide prior to July 1, 2008.  Countrywide, for this purpose, does not include Bank of America.

5.     Excluded from the Settlement Class are those Persons identified in Exhibit ____ hereto who submitted timely and valid requests for exclusion from the Settlement Class ("Opt-Outs").  Opt-Outs shall neither share in the distribution of the Settlement Fund nor receive any benefits of the terms of the Settlement Agreement, and shall not be bound by this Judgment Order.

6.     The Representative Plaintiffs and Co-Lead Settlement Class Counsel fairly and adequately represented the interests of Settlement Class Members in connection with the settlement set forth in the Settlement Agreement.

7.    All objections to the settlement set forth in the Settlement Agreement having been considered and having been found either to be mooted by the settlement or not supported by credible evidence, the settlement set forth in the Settlement Agreement is in all respects, fair, adequate, reasonable, proper, and in the best interests of the Settlement Class, and is hereby approved.

8.    Representative Plaintiffs, Countrywide, and Settlement Class Members shall consummate the settlement according to the terms of the Settlement Agreement. The Settlement Agreement, and each and every term and provision thereof, shall be deemed incorporated herein as if explicitly set forth herein and shall have the full force and effect of an order of this Court.

9.    As soon as is practicable, the plaintiffs in *Moses, et al. v. Countrywide Fin. Corp., et al.*, Case No. CV08-05416 MMM (RCX) (C.D. Cal.); *Goldman, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-61349 (S.D. Fla.); *Elkhettab v. Countrywide Fin. Corp., et al.*, Case No. 08-05808 SVW (SSX) (C.D. Cal.); *Weber v. Countrywide Fin. Corp., et al.*, Case No. BC397636 (Sup. Ct. Cal.); *Martin v. Countrywide Fin. Corp., et al.*, Case No. 08-0666-CV-W-SOW (W.D. Mo.); *Wickman v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-01668-DMS-CAB (S.D. Cal.); *Lemuz, et al. v. Countrywide Fin. Corp., et al.*, Case No. CV08-06034 (C.D. Cal.); *Munz v. Countrywide Fin. Corp., et al.*, Case No. 2:09-cv-707 (M.D. Fla.); *Martin, et al. v. Countrywide Fin. Corp., et al.*, Case No. CV08-06042 (C.D. Cal.); *Leonard v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-01435-FRB (E.D. Mo.); *Silverbach, et al. v. Countrywide Fin. Corp., et al.*, Case No. BC398509 (Sup. Ct. Cal.); *Garbo, et al. v. Countrywide Bank, FSB, et al.*, Case No. 08-cv-02035 (D. Co.); *Litvin v. Countrywide Fin. Corp., et al.*, Case No. 1:33-av-00001 (D.N.J.); *Hamilton, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-02450 (D. Kan.); *Ippolito v. Countrywide Fin. Corp., et al.*, Case No. 08-02249 (N.D. Ohio); *Kirksey v.*

-6-

*Countrywide Fin. Corp., et al.*, Case No. 08-cv-00545-KD-B (S.D. Ala.); *Posada, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-02246 (E.D. Cal.); *Devries v. Countrywide Fin. Corp., et al.*, Case No. 08-06334 (C.D. Cal.); *Brooks, et al. v. Countrywide Fin. Corp., et al.*, Case No. 1:08-cv-04817 (D.N.J.); *Colon v. Countrywide Fin. Corp., et al.*, Case No. 6:08-cv-1687 (M.D. Fla.); *Kowalski, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-5643 (N.D. Ill.); *Arias, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-cv-1875 (S.D. Cal.); *Hemphill, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-C-0863 (E.D. Wis.); *Johnson, et al. v. Countrywide Fin. Corp., et al.*, Case No. 8:08-cv-01144 (C.D. Cal.); *Blake v. Countrywide Fin. Corp., et al.*, Case No. 2:08-cv-14384 (E.D. Mich.); *Davis v. Countrywide Fin. Corp., et al.*, Case No. 4:08-cv-03095 (S.D. Tex.); *Modrzejewski, et al., v. Countrywide Fin. Corp., et al.*, Case No. 3:08-cv-50299 (N.D. Ill.); *Wilkinson v. Countrywide Fin. Corp., et al.*, Case No. 2:09-cv-00356 (D. Me.); *Reist, et al. v. Countrywide Fin. Corp., et al.*, Case No. A0809782 (Ct. Common Pleas, Hamilton Cty. Ohio); *Wardrop v. Countrywide Fin. Corp., et al.*, Case No. 1:08-cv-06264 (N.D. Ill.); *Blickensderfer, et al. v. Countrywide Fin. Corp., et al.*, Case No. 3:08-cv-05025 (N.D. Cal.); *Hamilton, et al. v. Bank of America Corp., et al.*, Case No. 3:08-cv-00505 (W.D.N.C.); *Lazard v. Countrywide Fin. Corp., et al.*, Case No. CV08-07463 (C.D. Cal.); *Clarke v. Countrywide Home Loans, Inc., et al.*, Case No. 2:08-cv-00774 (M.D. Fla.); *Hayes v. Countrywide Fin. Corp.*, Case No. 08-CVS-5306 (N.C. Sup. Ct.); *Mooney, et al. v. Countrywide Fin. Corp., et al.*, Case No. 3:08cv-639-S (W.D. Ky.); and *Holmes, et al. v. Countrywide Fin. Corp., et al.*, Case No. 5:08CV-205-R (W.D. Ky.), are hereby ordered to dismiss their cases with prejudice. Counsel for said plaintiffs have already agreed, in joining the underlying Settlement Agreement, to dismiss their cases with prejudice upon entry of this Judgment.

10.    Each Released Claim of each Settlement Class Member is hereby extinguished as against the Released Persons.  Representative Plaintiffs and each Settlement Class Member shall be deemed conclusively to have compromised, settled, discharged, and released the Released Claims against Countrywide upon the terms and conditions provided in the Settlement Agreement.

11.    Settlement Class Members shall be and hereby are permanently barred and enjoined from, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims against Countrywide is asserted.

12.    Countrywide shall be deemed conclusively to have fully, finally, and forever released, relinquished, and discharged the Representative Plaintiffs, the Settlement Class Members, Co-Lead Settlement Class Counsel, and all other Plaintiffs' Counsel who have consented to and joined in the settlement, from all claims based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims, except as set forth in the Settlement Agreement.

13.    Neither this Judgment Order, the Settlement Agreement, the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of Countrywide; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Countrywide in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Countrywide

-8-

may file the Settlement Agreement and/or this Judgment in any action that may be brought against it in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14.    The Court has reviewed both the attorneys' fees, costs and expenses, and Representative Plaintiff and Named-Plaintiff awards petition filed by Co-Lead Settlement Class Counsel on behalf of all Plaintiffs' Counsel, and Countrywide's papers in response thereto, and hereby awards attorneys' fees in the amount of $_____, costs and expenses in the amount of $_____, Representative Plaintiff awards in the amount of $_____ each to Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman, and Named-Plaintiff awards in the amount of $_____ to each of the other Named-Plaintiffs in these actions.  All attorneys' fees, costs, expenses, and Representative Plaintiff and Named-Plaintiff award payments by Countrywide shall be made to Co-Lead Settlement Class Counsel.  The Court recognizes that Messers. Barnow and Finkelstein are most familiar with the participation and contributions of Plaintiffs' Counsel in this litigation, and, accordingly hereby orders and provides that they shall be and are hereby authorized to allocate and distribute said funds amongst Plaintiffs' Counsel in their sole discretion to be reasonably applied.  Any dispute concerning said allocations shall be under the jurisdiction of this Court.

15.    The parties have stipulated and the Court has determined that the Court's decision to grant final approval of the settlement set forth in the Settlement Agreement is separate from the issues raised by Co-Lead Settlement Class Counsel's petition for attorneys' fees, costs, and

expenses, and Representative Plaintiff and Named-Plaintiff awards, and Countrywide's papers in response thereto.

16.     Without affecting the finality of this Judgment in any way, this Court retains continuing jurisdiction over the Settling Parties and the Settlement Class for the administration, consummation, and enforcement of the terms of the Settlement Agreement.

17.     In the event the Effective Date does not occur, this Judgment Order shall be rendered null and void and shall be vacated and, in such event, as provided in the Settlement Agreement, this Judgment and all orders entered in connection herewith shall be vacated and null and void.

        SO ORDERED.


                                        _____
                                        Honorable Thomas B. Russell
                                        United States District Court Judge

Dated: _____, 2009

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:08-MD-01998-TBR<br><br>Honorable Thomas B. Russell |

## [PROPOSED] ORDER OF PRELIMINARY APPROVAL AND PUBLISHING OF NOTICE OF A FINAL FAIRNESS HEARING

Before the Court is Motion for and Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement and Publishing of Notice, and Setting of a Final Fairness Hearing by Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman ("Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP (collectively, "Proposed Co-Lead Settlement Class Counsel"), requesting that the Court enter an Order: (1) preliminarily finding that the Settlement Agreement, which was filed with the Court on January _____, 2009, is within the range of fair, reasonable, and adequate, and in the best interest of the Class; (2) authorizing notice of preliminary approval of settlement to the Settlement Class; (3) certifying, pursuant to Federal Rule of Civil Procedure ("Rule") 23, the Settlement Class; (4) appointing Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP as Co-Lead Settlement Class Counsel and appointing plaintiffs Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman as Representative Plaintiffs; (5) appointing Co-Lead Settlement Class Counsel, and Larry D. Drury, Larry D. Drury, Ltd.; Lance A. Harke, Harke &

1

Clasby LLP; Sherrie R. Savett, Berger & Montague P.C.; Ralph K. Phalen, Ralph K. Phalen, Attorney at Law; Mark A. Maasch, Turner & Maasch, Inc.; Daniel C. Girard, Girard Gibbs, LLP; Justin G. Witkin, Aylstock, Witkin, Kreis & Overholtz, PLLC; Frank E. Piscitelli, Jr., Frank Piscitelli Co., L.P.A.; and E. Kirk Wood, Wood Law Firm LLC, to the Plaintiffs' Executive Committee; (6) appointing Mark K. Gray, Franklin Gray & White, as Plaintiffs' Liaison Counsel; and (7) scheduling a hearing to consider final approval of the settlement and the request for attorneys' fees, costs, and expenses.

Having reviewed and considered the Settlement Agreement, the motion and memorandum in support for preliminary approval of the settlement, and having heard and considered the arguments of counsel, the Court makes the findings and grants the relief set forth below, preliminarily approving the settlement contained in the Settlement Agreement upon the terms and conditions set forth in this Order. Terms and phrases in this Order shall have the same meaning as defined in the Settlement Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.      Having made the findings set forth below, the Court hereby certifies a plaintiff class for settlement purposes only in accordance with the terms of the Settlement Agreement (the "Settlement Class"). The Settlement Class is defined as:

> All Persons in the United States who either:   (1) provided their Private Information to Countrywide prior to July 1, 2008; or (2) whose mortgage was serviced by Countrywide prior to July 1, 2008.  Countrywide, for this purpose, does not include Bank of America.

Excluded from the definition of the Settlement Class are (i) Countrywide and its officers and directors; (ii) the Court presiding over any motion to approve this Settlement Agreement; (iii) any Person or entity named as a defendant in any of the pending lawsuits in the Litigation; and (iv) those Persons who timely and validly request exclusion from the Settlement Class.  As

provided for in the Settlement Agreement, the definition of the Settlement Class contained therein may be modified as required, if at all, to comport with further review and confirmatory discovery. Any modification by the Settling Parties of the Settlement Class definition subsequent to the entering of this Order shall be presented to the Court for its approval.

As provided for in the Settlement Agreement, if the Court does not grant final approval of the settlement set forth in the Settlement Agreement, or if the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue.

2.      The Settlement Class is so numerous that joinder of all members is impracticable.

3.      The Court finds, based on the terms of the settlement described in the Settlement Agreement, that:

   a.      There are questions of law and fact common to the Settlement Class.

   b.      The claims of Representative Plaintiffs are typical of the claims of members of the Settlement Class.

   c.      Representative Plaintiffs and Co-Lead Settlement Class Counsel will fairly and adequately represent the interests of the Settlement Class. There are no conflicts of interest between Representative Plaintiffs and members of the Settlement Class.

   d.      Questions of law and fact common to Settlement Class Members predominate over any questions affecting only individual members of the Settlement Class.

   e.      Certification of the Settlement Class is superior to other methods for the fair and efficient adjudication of this controversy.

3

4.      Accordingly, the Court hereby certifies the Settlement Class, for settlement purposes only, pursuant to Rule 23.

5.      The Court preliminarily approves the settlement set forth in the Settlement Agreement as being within the range of fair, reasonable, and adequate, within the meaning of Rule 23 and the Class Action Fairness Act of 2005 ("CAFA"), subject to final consideration at the Final Fairness Hearing provided for below.

6.      Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP, are appointed as co-lead counsel for the Settlement Class ("Co-Lead Settlement Class Counsel").

7.      Co-Lead Settlement Class Counsel, and Larry D. Drury, Larry D. Drury, Ltd.; Lance A. Harke, Harke & Clasby LLP; Sherrie R. Savett, Berger & Montague P.C.; Ralph K. Phalen, Ralph K. Phalen, Attorney at Law; Mark A. Maasch, Turner & Maasch, Inc.; Daniel C. Girard, Girard Gibbs, LLP; Justin G. Witkin, Aylstock, Witkin, Kreis & Overholtz, PLLC; Frank E. Piscitelli, Jr., Frank Piscitelli Co., L.P.A.; and E. Kirk Wood, Wood Law Firm LLC, are appointed to the Plaintiffs' Executive Committee.

8.      Mark K. Gray, Franklin Gray & White, is appointed as Plaintiffs' Liaison Counsel.

9.      Plaintiffs Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman are appointed as Representative Plaintiffs

10.     A hearing (the "Final Fairness Hearing") shall be held before this Court on _____ at _____, in Courtroom _____ of the United States District Court for the Western District of Kentucky, Central Division, _____, to determine:  (a) whether the settlement set forth in

4

the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class; (b) whether a Judgment Order, as provided for in the Settlement Agreement, should be entered granting final approval of the settlement; and (c) whether, and in what amount, attorneys' fees, costs and expenses, and Representative Plaintiff and other Named-Plaintiff incentive awards should be paid to an account established and/or directed by Co-Lead Settlement Class Counsel for distribution. The Court may adjourn and/or continue the Final Fairness Hearing without further notice to Settlement Class Members.

11.      Countrywide shall comply with the obligation to give notice under CAFA, 28 U.S.C. § 1715, in connection with the proposed settlement. No later than 10 calendar days before the Final Fairness Hearing, counsel for Countrywide shall file with the Court one or more declarations stating that Countrywide has complied with its notice obligations under 28 U.S.C. § 1715.

12.      As soon as is possible, notice shall be issued consistent with the Notice Plan submitted on _____, 2009, in support of the motion for issuance of this Order, and the Notice Specialist shall establish a dedicated settlement website, and shall maintain and update the website throughout the Claim Period, which will provide access to the Summary Notice, Notice, and Proofs of Claim form approved by the Court, as well as the Settlement Agreement. The settlement website shall contain a question and answers section, with a link to a video presentation explaining the relevant terms of the settlement and how to properly fill out and submit the requisite claim forms and necessary documentation.  Additionally, the settlement website shall prominently display an appropriately recognized third-party verification on it (VeriSign, etc.) verifying the website's authenticity and legitimacy.

13.      The Court finds that compliance with the Notice Plan is the best notice practicable under the circumstances, and constitutes due and sufficient notice of this Order to all persons entitled

5

thereto and is in full compliance with the requirements of Rule 23, applicable law, and due process.

14.     Prior to the Final Fairness Hearing, Co-Lead Settlement Class Counsel and Countrywide shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with the Notice Plan.

15.     Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit a written notice of such intent to a designated Post Office Box established for said purpose, as set forth in the Notice. The written notice must clearly manifest an intent to be excluded from the Settlement Class. To be effective, written notice must be postmarked at least twenty-one (21) days prior to the date of the Final Fairness Hearing as set forth in the Notice.

16.     All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement, the Judgment Order entered thereon, and all Orders entered by the Court in connection with the settlement set forth in the Settlement Agreement. All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall neither receive any benefits nor be bound by the terms of the Settlement Agreement.

17.     Settlement Class Members who qualify for and wish to submit a claim for any benefit under the settlement as to which a claim is required shall do so in accordance with the requirements and procedures of the Settlement Agreement. All Settlement Class Members who qualify for any benefit under the settlement as to which a claim is required but fail to submit a claim therefor in accordance with the requirements and procedures of the Settlement Agreement shall be forever barred from receiving any such benefit, but will in all other respects be subject to

6

and bound by the provisions of the Settlement Agreement, the releases contained therein, and the Judgment Order.

18.    Each Settlement Class Member wishing to object to the settlement shall submit a timely written notice of his objection.   Each Settlement Class Member desiring to object to the settlement shall submit a timely written notice of his or her objection. Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address; (ii) information identifying the objector as a Settlement Class Member, including (a) proof that they are a member of the Settlement Class (e.g., a Letter from Countrywide, mailed/emailed notice of the settlement, or evidence that they either provided their Private Information to Countrywide prior to July 1, 2008 or had their mortgage serviced by Countrywide prior to July 1, 2008), including documentation of any damages they claim to have incurred as a result of the alleged theft of their Private Information, if any, if they are objecting to any portion of the settlement dealing with reimbursement of Identity Theft losses and for which they believe they would have an existing claim, , or (b) an affidavit setting forth, in as much detail as the objector can reasonably provide, either (1) that they received a Letter from Countrywide, or mailed/emailed notice, addressed to them, indicating that their Private Information may have been compromised, including the approximate date of said receipt, (2) that they provided their Private Information to Countrywide prior to July 1, 2008, or (3) that they had their mortgage serviced by Countrywide prior to July 1, 2008; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at

7

the Final Fairness Hearing; and (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation).   To be timely, written notice of an objection in appropriate form must be filed with the Clerk of the United States District Court for the Western District of Kentucky, at a courthouse location to be designated by the Court, twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing, and also served on both of the following:   one of Proposed Co-Lead Settlement Class Counsel, Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, and, further, counsel for Countrywide, Mark S. Melodia, Reed Smith LLP, Princeton Forrestal Village, 136 Main Street, Suite 250, Princeton, NJ 08543-7839.

19.   All discovery and pretrial proceedings in this Litigation, other than confirmatory discovery provided for in the Settlement Agreement, are stayed and suspended until further order of this Court. The Court further orders that Countrywide's time to answer or otherwise respond to the Complaints in all matters before this Court is extended without date.

20.   Pending the final determination of the fairness, reasonableness, and adequacy of the settlement set forth in the Settlement Agreement, no Settlement Class Member, either directly, representatively, or in any other capacity, shall institute, commence, or prosecute any of the Released Claims in any action or proceeding in any court or tribunal.

21.   Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (a) is or may be deemed to be, or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of Countrywide; or (b) is or may be deemed to be, or may be used as an admission of, or evidence

8

of, any fault or omission of Countrywide, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

22.     In the event the Court does not grant final approval of the Settlement Agreement or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation, except that all scheduled litigation deadlines shall be reasonably extended so as to avoid prejudice to any Settling Party or litigant. In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

SO ORDERED.

_____
Honorable Thomas B. Russell
United States District Court Judge

Dated: _____, 2009

9

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:08-MD-01998-TBR<br>MDL No. 1998<br>Honorable Thomas B. Russell |

## PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PUBLISHING OF NOTICE, AND SETTING OF A FINAL FAIRNESS HEARING

NOW COME plaintiffs Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman ("Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined in the Settlement Agreement and stated below), by and through Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP (collectively, "Proposed Co-Lead Settlement Class Counsel"), and as their Motion for and Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement and Publishing of Notice, and Setting of a Final Fairness Hearing, state as follows:

## I.    THE LITIGATION

On or about August 1, 2008, the FBI announced that a former employee of Countrywide (as defined below) was arrested for stealing and selling Countrywide's customers' names, social security numbers, home and/or office addresses, telephone numbers, credit and bank account information, and other financial information ("Private Information"). Following an extensive investigation by the FBI, it was discovered that Rene L. Rebollo, Jr., a senior level financial advisor at Countrywide since 2006, allegedly stole and unlawfully sold

Countrywide's customers' Private Information to third parties. Rebollo worked in

Countrywide's subprime mortgage division, and ultimately downloaded and sold the Private

Information of what is believed to be approximately 2.4 million individuals to third parties.

Subsequent to the discovery of the alleged theft, Countrywide mailed letters to these individuals.

A number of lawsuits were filed in federal and state courts asserting claims against

Countrywide in relation to the theft of the Private Information.[1]   Representative Plaintiffs Moses,

---

[1] *Moses, et al. v. Countrywide Fin. Corp., et al.*, Case No. CV08-05416 MMM (RCX) (C.D. Cal.) (filed Aug. 18, 2008); *Goldman, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-61349 (S.D. Fla.) (filed Aug. 22, 2008); *Elkhettab v. Countrywide Fin. Corp., et al.*, Case No. 08-05808 SVW (SSX) (C.D. Cal.) (filed Sept. 5, 2008); *Weber v. Countrywide Fin. Corp., et al.*, Case No. BC397636 (Sup. Ct. Cal.) (filed Sept. 5, 2008); *Martin v. Countrywide Fin. Corp., et al.*, Case No. 08-0666-CV-W-SOW (W.D. Mo.) (filed Sept. 12, 2008); *Wickman v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-01668-DMS-CAB (S.D. Cal.) (filed Sept. 12, 2008); *Lemuz, et al. v. Countrywide Fin. Corp., et al.*, Case No. CV08-06034 (C.D. Cal.) (filed Sept. 15, 2008); *Munz v. Countrywide Fin. Corp., et al.*, Case No. 2:09-cv-707 (M.D. Fla.) (filed Sept. 15, 2008); *Martin, et al. v. Countrywide Fin. Corp., et al.*, Case No. CV08-06042 (C.D. Cal.) (filed Sept. 16, 2008); *Leonard v. Countrywide Fin. Corp., et al.*, Case No. 08-CV01435-FRB (E.D. Mo.) (filed Sept. 19, 2008); *Silverbach, et al. v. Countrywide Fin. Corp., et al.*, Case No. BC398509 (Sup. Ct. Cal.) (filed Sept. 19, 2008); *Garbo, et al. v. Countrywide Bank, FSB, et al.*, Case No. 08-cv-02035 (D. Co.) (filed Sept. 22, 2008); *Litvin v. Countrywide Fin. Corp., et al.*, Case No. 1:33-av-00001 (D.N.J.) (filed Sept. 22, 2008); *Hamilton, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-02450 (D. Kan.) (filed Sept. 23, 2008); *Ippolito v. Countrywide Fin. Corp., et al.*, Case No. 08-02249 (N.D. Ohio) (filed Sept. 23, 2008); *Kirksey v. Countrywide Fin. Corp., et al.*, Case No. 08-cv-00545-KD-B (S.D. Ala.) (filed Sept. 23, 2008); *Posada, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-02246 (E.D. Cal.) (filed Sept. 23, 2008); *Devries v. Countrywide Fin. Corp., et al.*, Case No. 08-06334 (C.D. Cal.) (filed Sept. 25, 2008); *Brooks, et al. v. Countrywide Fin. Corp., et al.*, Case No. 1:08-cv-04817 (D.N.J.) (filed Sept. 26, 2008); *Colon v. Countrywide Fin. Corp., et al.*, Case No. 6:08-cv-1687 (M.D. Fla.) (filed Oct. 1, 2008); *Kowalski, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-5643 (N.D. Ill.) (filed Oct. 3, 2008); *Arias, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-cv-1875 (S.D. Cal.) (filed Oct. 14, 2008); *Hemphill, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-C-0863 (E.D. Wis.) (filed Oct. 14, 2008); *Johnson, et al. v. Countrywide Fin. Corp., et al.*, Case No. 8:08-cv-01144 (C.D. Cal.) (filed Oct. 14, 2008); *Blake v. Countrywide Fin. Corp., et al.*, Case No. 2:08-cv-14384 (E.D. Mich.) (filed Oct. 15, 2008); *Davis v. Countrywide Fin. Corp., et al.*, Case No. 4:08-cv-03095 (S.D. Tex.) (filed Oct. 17, 2008); *Modrzejewski, et al. v. Countrywide Fin. Corp., et al.*, Case No. 3:08-cv-50299 (N.D. Ill.) (filed Oct. 20, 2008); *Wilkinson v. Countrywide Fin. Corp., et al.*, Case No. 2:09-cv-00356 (D. Me.) (filed Oct. 21, 2008); *Reist, et al. v. Countrywide Fin. Corp., et al.*, Case No. A0809782 (Ct. Common Pleas, Hamilton Cty. Ohio) (filed Oct. 23, 2008); *Wardrop v. Countrywide Fin. Corp., et al.*, Case No. 1:08-cv-06264 (N.D. Ill.) (filed Oct. 31, 2008); *Blickensderfer, et al. v. Countrywide Fin. Corp., et al.*, Case No. 3:08-cv-05025 (N.D. Cal.) (filed Nov. 4, 2008); *Hamilton, et al. v. Bank of America Corp., et al.*, Case No. 3:08-cv-00505 (W.D.N.C.) (filed Nov. 5, 2008); *Lazard v. Countrywide Fin. Corp., et al.*, Case No. CV08-07463 (C.D. Cal.) (filed Nov. 12, 2008); *Clarke v. Countrywide Home Loans, Inc., et al.*, Case No. 2:08-

Gregg, and Elkhettab represent the first three filed cases in the country, with the *Moses* action as

the first filing on August 18, 2008, in the Central District of California. On December 2, 2008,

the Judicial Panel on Multidistrict Litigation ("the Panel") transferred all related actions to the

Western District of Kentucky for coordinated proceedings. Subsequent to the transfer and

coordination of all related actions, two additional cases were filed.[2] One previously filed case[3]

was voluntarily dismissed, resulting in the Panel's Order of December 30, 2008, vacating its

December 2, 2008 Order insofar as it transferred said case.

Although the lawsuits had some variances, the claims asserted included: intentional

violations of the Fair Credit Reporting Act ("FCRA"), negligent violations of the FCRA,

negligence, breach of implied contract, and violations of various consumer protection statutes.

The lawsuits named, as defendants, Countrywide Financial Corporation, Countrywide Home

Loans, Inc., Countrywide Bank FSB, Full Spectrum Lending Division, and Bank of America

Corporation (collectively, "Countrywide").

## II.    SUMMARY OF THE SETTLEMENT

After extensive and arm's length negotiations, the Settlement Agreement has been

reached. It is an excellent one, providing valuable and important benefits for Settlement Class

Members, and readily meets the standard for preliminary approval—that is, it is well within the

required range of fair, reasonable, and adequate. *Miracle v. Bullitt County, Ky.*, No. 05-130-C,

---

cv-00774 (M.D. Fla.) (filed Dec. 6, 2008); *Hayes v. Countrywide Fin. Corp.*, Case No. 08-CVS-5306 (N.C. Sup. Ct.) (filed Dec. 8, 2008).

[2] *Mooney, et al. v. Countrywide Fin. Corp., et al.*, Case No. 3:08cv-639-S (W.D. Ky.) (filed Dec. 8, 2008); *Holmes, et al. v. Countrywide Fin. Corp., et al.*, Case No. 5:08CV-205-R (W.D. Ky.) (filed Dec. 17, 2008).

[3] *Holmes, et al. v. Countrywide Fin. Corp., et al.*, Case No. 1:08-cv-5619 (D.N.J.) (filed Nov. 14, 2008).

2008 WL 3850477, at *5 (W.D. Ky. Aug. 15, 2008); *Manual for Complex Litig.* (Third) § 30.41

at 237 (1995) (explaining the standard for preliminary approval); *see also In re NASDAQ*

*Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *In re Mid-Atlantic Toyota*

*Antitrust Litig.*, 564 F. Supp. 1379, 1383–85 (D. Md. 1983). A copy of the Settlement

Agreement is attached hereto as Exhibit A.

The Settling Parties have entered into the present Settlement Agreement, which provides,

*inter alia*, for:

(1)     two (2) years of the Credit Monitoring Protection Package, which includes Experian's "Triple Advantage$^{SM}$" credit monitoring product, subject to the Experian Guarantee (in summary, guarantees this product against covered identity theft losses up to $1 million, as explained in Exhibit 2 to the Settlement Agreement), along with $25,000 in identity theft insurance, for each of the Settlement Class Members who were sent a Letter by Countrywide and did not accept Countrywide's prior offer of two (2) years of Credit Monitoring, and who elect said benefit;

(2)     the Experian Guarantee for each of the Settlement Class Members who were sent a Letter by Countrywide and accepted Countrywide's prior offer of two (2) years of Credit Monitoring,

(3)     cash reimbursement of identity theft losses suffered by Settlement Class Members, subject to a cap of $5 million in total payments by Countrywide, and each Settlement Class Member who is reimbursed for such a loss will have made available to them an additional year of the Credit Monitoring Protection Package;

(4)     for each Settlement Class Member who was sent a Letter by Countrywide, reimbursement of the following expenses, if incurred: (i) up to $200 cash reimbursement for credit monitoring services costs; (ii) up to $90 cash reimbursement for check replacement costs; (iii) the cost of replacing their driver's license, except in the normal course of renewing one's license; and (iv) up to $60 for the cost of telephone calls, postage related to inquires on a person's financial accounts and/or credit reports, lost time (calculated at $10.00 per hour), the cost of placing a freeze on a person's credit report, and/or the cost of changing a person's phone number, all subject to a cap of $1.5 million in total payments by Countrywide;

(5)      dispute resolution at Countrywide's expense through JAMS/Endispute for those Settlement Class Members who have submitted a claim for identity theft losses and/or reimbursement of check replacement and credit monitoring services expenses, have had their claim denied, and who dispute Countrywide's denial of said claim;

(6)      substantially enhanced security measures implemented by Countrywide to prevent future thefts of data; and

(7)      payment of notice, claims administration costs, and attorneys' fees, costs, expenses, and Representative Plaintiff and Named-Plaintiff incentive awards.

The settlement is already supported by Representative Plaintiffs and their counsel,[4] along with other Plaintiffs and their counsel,[5] for a total of seventeen (17) of the underlying thirty-three (33) related actions before the Court. The overwhelming support achieved to date from Plaintiffs and their counsel highlights the strength and fairness of the proposed settlement.

Therefore, by the accompanying motion, Representative Plaintiffs and Proposed Co-Lead Settlement Class Counsel respectfully move the Court for entry of an order: (1) preliminarily approving the settlement set forth in the Settlement Agreement; (2) approving the proposed

---

[4] *Moses, et al. v. Countrywide Fin.  Corp., et al.*, Case No. CV08-05416 MMM (RCX) (C.D. Cal.); *Goldman, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-61349 (S.D. Fla.); *Elkhettab v. Countrywide Fin. Corp., et al.*, Case No. 08-05808 SVW (SSX) (C.D. Cal.); *Martin, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-0666-CV-W-SOW (W.D. Mo.); *Wickman v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-01668-DMS-CAB (S.D. Ca.); *Munz v. Countrywide Fin. Corp., et al.*, Case No. 2:09-cv-707 (M.D. Fla.); *Ippolito v. Countrywide Fin. Corp., et al.*, Case No. 08-02249 (N.D. Ohio); *Hamilton, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-02450 (D. Kan.); and *Mooney, et al. v. Countrywide Fin. Corp., et al.*, Case No. 3:08cv-639-S (W.D. Ky.).

[5] *Lemuz, et al. v. Countrywide Fin. Corp., et al.*, Case No. CV08-06034 (C.D. Cal.); *Leonard v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-01435-FRB (E.D. Mo.); *Kirksey v. Countrywide Fin. Corp., et al.*, Case No. 08-cv-00545-KD-B (S.D. Ala.); *Posada, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-02246 (E.D. Cal.); *Kowalski, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-CV-5643 (N.D. Ill.); *Hemphill, et al. v. Countrywide Fin. Corp., et al.*, Case No. 08-C-0863 (E.D. Wis.); *Johnson, et al. v. Countrywide Fin. Corp., et al.*, Case No. 8:08-cv-01144 (C.D. Cal.); and *Blake v. Countrywide Fin. Corp., et al.*, Case No. 2:08-cv-14384 (E.D. Mich.).

Notice Program to the Settlement Class; (3) appointing the notice specialist selected and agreed

to by the Settling Parties, which will be submitted to the Court with the Notice Plan, as the

Notice Specialist; (4) appointing the claims administrator selected and agreed to by the Settling

Parties, which will be submitted to the Court with the Notice Plan, as Claims Administrator; (5)

certifying the Settlement Class; (6) appointing Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer,

Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz,

Michael J. Rich, and Kim Wickman as the Representative Plaintiffs; (7) appointing Ben Barnow,

Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP, as Co-

Lead Settlement Class Counsel; (8) appointing Co-Lead Settlement Class Counsel, and Daniel C.

Girard, Girard Gibbs, LLP; Justin G. Witkin, Aylstock, Witkin, Kreis & Overholtz, PLLC; Larry

D. Drury, Larry D. Drury, Ltd.; Lance A. Harke, Harke & Clasby LLP; Sherrie R. Savett, Berger

& Montague P.C.; Ralph K. Phalen, Ralph K. Phalen, Attorney at Law; Mark A. Maasch, Turner

& Maasch, Inc.; Frank E. Piscitelli, Jr., Frank Piscitelli Co., L.P.A.; and E. Kirk Wood, Wood

Law Firm LLC, to the Plaintiffs' Executive Committee; and (9) appointing Mark K. Gray,

Franklin Gray & White, as Plaintiffs' Liaison Counsel.

## III.   CERTIFICATION OF A SETTLEMENT CLASS

"The settlement class device has been recognized throughout the country as the best,

most practical way to effectuate settlements involving large numbers of claims," where the

claims are small. *In re Prudential Sec. Limited P'ship Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y.

1995); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55

F.3d 768, 784 (3d Cir. 1995) (holding that courts should favor the use of devices, including

settlement classes, that foster negotiated conclusions to class actions). In fact, a settlement class

in complex litigation "actually enhances absent class members' opt-out rights because the right

to exclusion is provided simultaneously with the opportunity to accept or reject the terms of a

proposed settlement." *In re Prudential*, 163 F.R.D. at 205.

Accordingly, the parties have stipulated to the definition of a Settlement Class. Subject

to the exclusions that follow and for settlement purposes only (Settlement Agreement at ¶ 2.4),

the "Settlement Class" is defined as follows:

> [A]ll Persons in the United States who either: (1) provided their Private
> Information to Countrywide prior to July 1, 2008; or (2) whose mortgage was
> serviced by Countrywide prior to July 1, 2008. Countrywide, for this purpose,
> does not include Bank of America.

*Id.* at ¶ 1.24. Excluded from the definition of the Settlement Class are: (i) Countrywide and its

officers and directors; (ii) the Court presiding over any motion to approve this Settlement

Agreement; (iii) any Person or entity named as a defendant in any of the pending lawsuits in the

concerned Litigation; and (iv) those Persons who timely and validly request exclusion from the

Settlement Class. *Id.*

**A.      The Proposed Settlement Class Meets All the Requirements for Class
          Certification Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.**

The Settlement Class meets all of the requirements for class certification pursuant to

Federal Rule of Civil Procedure Rule 23(a). Rule 23(a) sets forth the following prerequisites for

certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2)

there are questions of law or fact common to the class, (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class, and (4) the representative

parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

First, since private, non-public, financial and personal information was compromised for

approximately 2.4 million individuals throughout the United States, the Settlement Class is

clearly so numerous that joinder of all members is impractical.

Second, the same legal and factual questions are present for each member of the Settlement Class. "The threshold of 'commonality,' is not high." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005). Commonality is found "as long as members of the class have been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 580 (S.D. Ohio 1993). The questions of law and fact common to the Settlement Class include, *inter alia*:

- whether Countrywide acted negligently in collecting and storing Settlement Class Members' Private Information;

- whether Countrywide is a consumer reporting agency as defined by 15 U.S.C. § 1681a;

- whether Countrywide violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*;

- whether Representative Plaintiffs and other members of the Settlement Class have sustained damages, and, if so, the proper measure of those damages; and

- whether Representative Plaintiffs and other members of the Settlement Class should be awarded statutory damages.

All that is required is "a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996). As illustrated above, this standard is readily met here.

In regard to the third requirement, "[a] plaintiff's claim is considered 'typical' if it arises from the same course of conduct that gives rise to the claims of the other class members, or if it based on the same legal theory." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 (S.D. Ohio 2007). Further, "[c]ourts liberally construe the typicality requirement." *Id.* The claims of the Representative Plaintiffs are typical of the claims of the members of the Settlement Class, as they all had their Private Information compromised, and their claims arise from the same course of uniform conduct of Countrywide.

- 8 -

The fourth prerequisite for certification is that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

> "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.,* 532 F.2d 511, 524–25 (6th Cir. 1976). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625–26 (1997).

*Hyland v. Homeservices of Am., Inc.,* 2008 WL 4858202, at *4 (W.D. Ky. Nov. 7, 2008). The interests of Representative Plaintiffs here do not conflict with the interests of any other Settlement Class Member, as they all seek relief from the theft of their Private Information. Further, as demonstrated by the efforts of Proposed Co-Lead Settlement Class Counsel to date, and the other Plaintiffs' counsel supporting this settlement, they have competently and vigorously protected the interests of Representative Plaintiffs and Settlement Class Members, and will continue to do so. Early settlement in a case of this nature is in the best interests of the Settlement Class, as it works to protect them from the possible ill-effects of having their Private Information improperly used. Proposed Co-Lead Settlement Class Counsel, the members of the Proposed Plaintiffs' Executive Committee, and Proposed Plaintiffs' Liaison Counsel (Settlement Agreement at ¶¶ 1.19, 1.20, 1.21), have extensive experience in class litigation, including in the area of data breaches. *See Smith v. Ajax Magnethermic Corp.,* 2007 WL 3355080, at *4 (N.D. Ohio Nov. 7, 2007) (approving class counsel because they were "able attorneys with experience in the conduct of class action litigation"); *see also* Firm Resumes, attached hereto as Group Exhibit B. As such, they have adequately represented the class' interests. *See also infra* §VI(D).

**B.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(1)(A) and (b)(3).**

"In addition to the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, the party seeking to obtain class certification must demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005). The Settlement Class here satisfies the requirements of Rule 23(b)(1)(A) and (b)(3).

As required by Rule 23(b)(1)(A), a class action will prevent possible inconsistent or varying adjudications which could occur if individual members had to prosecute separate actions. The present settlement eliminates any such concerns. The Settlement Class also satisfies the requirements of Rule 23(b)(3). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote...uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. at 92 (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). "The superiority analysis dovetails with the predominance analysis." *Id.* "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 91 (*citing Amchem*, 521 U.S. at 623). These factors are readily satisfied here. For example, whether Countrywide's conduct in the events leading up to and during the theft of the Private Information was improper, whether this conduct violated the laws set forth in the various complaints, and whether the conduct caused damage to members of the Settlement Class, are all common questions that predominate over any individual ones that may exist. Additionally, a class action is superior to other available methods, as the amount of damages incurred by each

- 10 -

Settlement Class Member is insufficient to justify the costs of pursuing an individual action. *Id.* at 92.

## IV.    TERMS OF THE SETTLEMENT AGREEMENT

### A.    Credit Monitoring Protection Package.

For Settlement Class Members who were sent a Letter (as defined in ¶ 1.12 of the Settlement Agreement) by Countrywide and did not accept Countrywide's prior offer of two (2) years of credit monitoring, approximately 1.85 million, Countrywide shall make available to them the Credit Monitoring Protection Package, which includes:  the Experian "Triple Advantage[SM]" product, subject to the Experian Guarantee (as defined in ¶ 1.8 and Exhibit 2 of the Settlement Agreement), along with $25,000 in identity theft insurance provided by a designated third-party insurer.[6]  Settlement Agreement at ¶ 2.1(a).   The "Triple Advantage[SM]" product, *inter alia*, monitors all three national credit files for a person on a daily basis, sends out e-mail alerts of suspicious account activity, and allows a person to check their credit reports for possible signs of identity theft.  The Experian Guarantee, in summary, is a guarantee of the "Triple Advantage[SM]" product up to the amount of $1 million for Identity Theft losses, and is further detailed in Exhibit 2 to the Settlement Agreement.  For the remaining Settlement Class Members who were sent a Letter by Countrywide and accepted Countrywide's prior offer of two (2) years of credit monitoring, said Settlement Class Members' previously accepted credit monitoring shall be guaranteed by Experian pursuant to the Experian Guarantee.

---

[6] For Settlement Class Members residing in New York and Puerto Rico, where such identity theft insurance and the Experian Guarantee are not currently available, said members shall receive the "Triple Advantage[SM]" product without such insurance coverage or the Experian Guarantee, but they can still access the $5 million fund provided for identity theft losses, for a total of $50,000 in identity theft protection for each incident of identity theft.

The availability of the Credit Monitoring Protection Package provides significant benefits to said Settlement Class Members. The claimant here gets a benefit that would cost them $358.80 for the "Triple Advantage[SM]" product. And while the Experian Guarantee is not separately available to consumers, it is an extremely valuable additional layer of protection. The total benefit available to these Settlement Class Members amounts to more than $660 million.[7]

**B.      Cash Reimbursement of Identity Theft Losses.**

Countrywide shall reimburse each Settlement Class Member, up to a total of $50,000.00 for each incident of Identity Theft (as defined in ¶ 1.10 of the Settlement Agreement),[8] for any actual and unreimbursed out-of-pocket loss (other than the expenditure of time) that was caused by the theft of the Private Information for charges that were not initiated with the Settlement Class Member's authorization. Settlement Agreement at ¶ 2.1(b). Settlement Class Members will be eligible to make a claim for all such out-of-pocket losses that already occurred, or in the future do occur, during the period beginning January 1, 2006, through and including July 31, 2012. Countrywide shall pay such claims on a first valid claim received basis—i.e., when Countrywide receives all required documentation. Settlement Class Members who are reimbursed for any such losses shall also be entitled to receive one (1) additional year of the

---

[7] The cost of Experian's "Triple Advantage[SM]" product to members of the general public is $14.95 per month. Thus, the total available benefits provided for under this portion of the Settlement Agreement amounts to $663,780,000 ($14.95 X 24 months = $358.80; 1.85 million X $358.80 = $663,780,000). This does not mean that Countrywide will be required to spend that amount or that all such Settlement Class Members will file a claim; it means that it is the value of the benefit being made available to said Settlement Class Members.

[8] Claimants, except those that reside in New York and Puerto Rico, must exhaust the $25,000.00 in credit insurance included with the Credit Monitoring, and the protections afforded by the Experian Guarantee, described in ¶ 1.5 of the Settlement Agreement. For those Settlement Class Members who fail to elect to receive the Credit Monitoring Protection Package offered pursuant to the Settlement Agreement, said Settlement Class Members shall be eligible to recover up to $50,000 in identity theft losses for each incident of Identity Theft. Settlement Agreement at ¶ 2.1(b)(ii).

- 12 -

Credit Monitoring Protection Package, in addition to any other benefits they may be entitled to

under the terms of the settlement, even if the Settlement Class Member was previously ineligible

for the Credit Monitoring Protection Package. Countrywide has agreed to make cash

reimbursement payments to said Settlement Class Members up to the total amount of $5 million.

### C.   Cash Reimbursement of Expenses.

Settlement Class Members who were sent a Letter by Countrywide are also entitled to

recover, in addition to the other relief provided pursuant to the Settlement Agreement, cash re-

imbursement of:  (i) documented paper check printing costs of up to $90 per person necessitated

by the opening of a new checking account that were incurred prior to the published notice of this

settlement; (ii) the cost of obtaining credit monitoring and identity theft insurance by a person

incurred prior to the first cancellation opportunity of said credit monitoring and identity theft

insurance after the Credit Monitoring Protection Package offered hereunder becomes available,

but in no event more than $20.00 per month, subject to reasonable documentation, and up to a

total maximum of $200.00 per person ; (iii) the cost of telephone calls, postage related to

inquiries on a person's financial accounts and/or credit reports, lost time (calculated at $10.00

per hour), the cost of placing a freeze on a person's credit report, and/or the cost of changing a

person's phone number, up to $60 per person, subject to reasonable documentation and a signed

statement by the person that his or her claim is true and correct and is being made under penalty

of perjury; and (iv) the cost of replacing their driver's license, except in the normal course of

renewing one's license.  Settlement Agreement at ¶ 2.1(c).  Countrywide shall make such cash

reimbursement payments to said claims up to a total of $1.5 million.  In the event that the total

valid claims made by persons exceed $1.5 million, then the payment of said claims shall be made

on a prorated basis.

- 13 -

###### D.     Enhanced Security Measures.

Countrywide has represented that it has made changes in its policies as a supplementation to its security in response to theft of the Private Information. Settlement Agreement at ¶ 10.4. Pursuant to the Settlement Agreement, Proposed Co-Lead Settlement Class Counsel are entitled to reasonable confirmatory discovery from Countrywide regarding these changes. Countrywide will be proffering documentary evidence of these changes to Proposed Co-Lead Settlement Class Counsel, and if Proposed Co-Lead Settlement Class Counsel are not satisfied with said changes, they reserve the right to terminate the settlement. *Id.* While not lending itself to a financial calculation, this injunctive relief is unquestionably valuable to Settlement Class Members in its immediate and long-term effects by way of paying and dealing with their mortgages through Countrywide, and for all individuals applying for mortgages through Countrywide in the future.

###### E.     Dispute Resolution.

Countrywide shall also provide for a dispute resolution mechanism through JAMS/Endispute for any Settlement Class Member who files a claim for cash reimbursement of identity theft losses and/or other expenses, but whose claim is denied by Countrywide. Settlement Agreement at ¶ 2.1(d). If the decision by JAMS/Endispute results in an award in favor of the claimant, Countrywide shall pay:  (a) the amount of the award plus an additional 10% of the face value amount of the award; and (b) if the Settlement Class Member has hired an attorney to represent him or her in connection with the arbitration dispute process, the reasonable attorney's fees, costs, and expenses incurred by the Settlement Class Member, but said fees, costs, and expenses shall not be included as part of the face value amount of the award to which the 10% premium is applied. *Id.* at ¶ 2.1(d)(iii). Costs of said dispute resolution processes shall

- 14 -

be paid for by Countrywide, but any legal fees or expenses incurred during the process shall be

paid for by the party incurring them, except as otherwise provided for above. *Id.*

> **F.      Other Benefits.**

The costs associated with Notice of the settlement, Claims Administration, and attorneys'

fees, costs, expenses, and incentive awards, will be paid for by Countrywide separate and apart

from, and in addition to, the above-listed benefits and, thus, will not diminish the Class recovery.

In sum, the Settlement Agreement provides valuable and substantial benefits to the

Settlement Class.

**V.      NOTICE**

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all

class members who would be bound by a proposed settlement . . ." F.R.C.P., Rule 23(e)(1)(B).

The purpose of notice is to "afford members of the class due process which, in the context of the

Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action

and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966

F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74

(1974)).   Further, the Notice must fairly describe the litigation and the proposed settlement and

its legal significance. *See, e.g., Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir.

1998)) ("[The notice] must also contain an adequate description of the proceedings written in

objective, neutral terms, that, insofar as possible, may be understood by the average absentee

class member[.]"); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd,* 737 F.2d

982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of

all the details of the settlement, but merely to put class members on notice of the general

parameters of the settlement and to inform them of where information as to specifics may be obtained.").

Pursuant to ¶ 3.1 of the Settlement Agreement, the Settling Parties will submit a proposed Notice Plan to the Court by, at the latest, February 10, 2009, but in any event not less than fourteen (14) days prior to the date set by the Court for the hearing on preliminary approval. The Notice Plan to be submitted to the Court will be specifically tailored to meet these standards.

### A.      Contents of the Notice.

The Notice will include the definition of the Settlement Class and other identifying information, a fair summary of the parties' respective litigation positions, the general terms of the settlement as set forth in the Settlement Agreement, instructions for opting out of or objecting to the settlement, the process and instructions for making a claim, and the date, time, and place of the Final Fairness Hearing. The date that the Court sets for the Final Fairness Hearing should take into consideration that the Class Action Fairness Act requires that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C.A. §1715(b)]". 28 U.S.C.A. §1715(d). Notice to the State Attorneys General will be made as explained below in subsection C, and the notifications to Federal and State officials required under the Class Action Fairness Act must be served within 10 days of this filing.

### 1.      Opting Out.

Any member of the Settlement Class who wishes to opt out of the Settlement Class must individually sign and timely submit written notice ("notice of exclusion") clearly manifesting his or her intent to be excluded from the Class. Settlement Agreement at ¶ 4.1. The notice of

exclusion must be mailed to the Post Office Box designated by the Claims Administrator and

must be postmarked at least twenty-one (21) days prior to the date set in the Notice for the Final

Fairness Hearing. *Id.*

### 2.    Objections.

Any member of the Settlement Class who wishes to object to the settlement must submit

a timely written notice of his or her objection, which will set forth the reasons for the objection,

and further state whether the objector intends to appear at the Final Fairness Hearing. *Id.* at ¶

5.1. The objection also must provide: (i) the objector's full name, address, telephone number,

and e-mail address; (ii) information identifying the objector as a Settlement Class Member,

including (a) proof that they are a member of the Settlement Class (e.g., a Letter from

Countrywide, mailed/emailed notice of the settlement, or evidence that they either provided their

Private Information to Countrywide prior to July 1, 2008, or had their mortgage serviced by

Countrywide prior to July 1, 2008), including documentation of any damages they claim to have

incurred as a result of the alleged theft of their Private Information, if any, if they are objecting to

any portion of the settlement dealing with reimbursement of Identity Theft losses and for which

they believe they would have an existing claim, , or (b) an affidavit setting forth, in as much

detail as the objector can reasonably provide, either (1) that they received a Letter from

Countrywide, or mailed/emailed notice, addressed to them, indicating that their Private

Information may have been compromised, including the approximate date of said receipt, (2) that

they provided their Private Information to Countrywide prior to July 1, 2008, or (3) that they had

their mortgage serviced by Countrywide prior to July 1, 2008; (iii) a written statement of all

grounds for the objection, accompanied by any legal support for the objection; (iv) the identity of

all counsel representing the objector; (v) the identity of all counsel representing the objector who

will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at

the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the

objector intends to personally appear and/or testify at the Final Fairness Hearing; and (viii) the

objector's signature or the signature of the objector's duly authorized attorney or other duly

authorized representative (along with documentation setting forth such representation). *Id.* To

be timely, written notice of an objection in appropriate form must be filed with the Clerk of the

United States District Court for the Western District of Kentucky, at a courthouse location to be

designated by the Court, twenty-one (21) days prior to the date set in the Notice for the Final

Fairness Hearing, and also served on both of the following: one of Proposed Co-Lead Settlement

Class Counsel, Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite

4600, Chicago, IL 60602, and, further, counsel for Countrywide, Mark S. Melodia, Reed Smith

LLP, Princeton Forrestal Village, 136 Main Street, Suite 250, Princeton, NJ 08543-7839. *Id.*

**B.      Notifications to Appropriate Federal and State Officials.**

Pursuant to the Class Action Fairness Act, within 10 days of this filing, Countrywide

must serve notice of the proposed settlement on the appropriate Federal and State officials. 28

U.S.C.A. §1715. The relevant provision of the Class Action Fairness Act states as follows:

> (b) IN GENERAL.--Not later than 10 days after a proposed settlement of a class
> action is filed in court, each defendant that is participating in the proposed
> settlement shall serve upon the appropriate State official of each State in which a
> class member resides and the appropriate Federal official, a notice of the proposed
> settlement consisting of--
>
> (1) a copy of the complaint and any materials filed with the complaint and any
> amended complaints (except such materials shall not be required to be served if
> such materials are made electronically available through the Internet and such
> service includes notice of how to electronically access such material);
>
> (2) notice of any scheduled judicial hearing in the class action;
>
> (3) any proposed or final notification to class members of--