(A)(i) the members' rights to request exclusion from the class action; or

    (ii) if no right to request exclusion exists, a statement that no such right exists; and

(B) a proposed settlement of a class action;

(4) any proposed or final class action settlement;

(5) any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants;

(6) any final judgment or notice of dismissal;

(7)(A) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official; or

(B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement; and

(8) any written judicial opinion relating to the materials described under subparagraphs (3) through (6).

28 U.S.C.A. §1715(b). In this case, because Countrywide is not "a Federal depository institution, a State depository institution, a depository institution holding company, a foreign bank, or a nondepository institution subsidiary of the foregoing," 28 U.S.C.A. §1715(a)(1)(B), the appropriate Federal official is the Attorney General of the United States. 28 U.S.C.A. §1715(a)(1)(A). Because the Settlement Class includes Class members from the 50 states, the appropriate State officials are the 50 State Attorneys General. 28 U.S.C.A. §1715(a)(2) ("If there is no primary regulator, supervisor, or licensing authority, or the matters alleged in the class action are not subject to regulation or supervision by that person, then the appropriate State official shall be the State attorney general.").

## VI.   PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE

Courts look favorably on the settlement of disputed claims, and settlement is especially

favored in class actions because it minimizes the litigation expenses of all parties and reduces the

strain on judicial resources.  In fact, there is a "federal policy favoring settlement of class

actions."  *Wade v. Kroger Co.*, 3:01CV-699-R, 2008 WL 4999171, at *8 (W.D. Ky. Nov. 20,

2008); *International Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v.

General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (citing *In re Warfarin Sodium Antitrust

Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).  Under Rule 23(e)(1)(A), however, the court still "must

approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of

a certified class." F.R.C.P., Rule 23(e)(1)(A).

When considering a class action settlement, a court must engage in three steps:  "1) the

Court must preliminarily approve the proposed settlement; 2) members of the class must be

given notice of the proposed settlement; and 3) a hearing must be held, after which the Court

must decide whether the proposed settlement is fair, reasonable and adequate." *Whitford v. First

Nationwide Bank*, 147 F.R.D. 135, 137 (W.D. Ky. 1992) (citing *Williams v. Vukovich*, 720 F.2d

909 (6th Cir. 1983); *Stotts v. Memphis Fire Dep't*, 679 F.2d 541 (6th Cir. 1982), *reversed on

other grounds, sub nom. Firefighters Local Union No. 1784 v. Stotts, et al.*, 467 U.S. 561 (1984);

*Bronson v. Board of Ed. of the City Sch. Dist. of the City of Cincinnati*, 604 F. Supp. 68 (S.D.

Ohio 1984)).

Preliminary approval is the first step of this process, and the court must simply determine

whether the proposed settlement falls within the range of possible approval and whether it is

reasonable to issue notification to class members of the settlement's terms.  *See Manual for

Complex Litigation (Third)* § 30.41 (1995); Alba Conte & Herbert B. Newberg, 4 *Newberg on*

*Class Actions* § 11.25 (4th ed. 2002). The proposed settlement clearly satisfies all of the factors required for preliminary approval under Rule 23.

Where, as here, the proposed settlement is the result of serious, arm's length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, and does not grant preferential treatment to the Representative Plaintiffs[9] or other segments of the class, courts generally grant preliminary approval and direct that notice of a formal fairness hearing be given to class members. *See Williams Foods, Inc. v. Eastman Chemical Co.*, 2001-2 Trade Cases (CCH) ¶ 73,414, 2001 WL 1298887 (D. Kan. Aug. 8, 2001); *see also In re Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp. 456, 459–60 (D. Md. 1987); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *see also Manual for Complex Litigation* at § 30.41 (noting that where the proposed settlement appears to be the product of "serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted").

Although not required at this stage, the settlement also meets the standard for final approval as being fair, reasonable and adequate under F.R.C.P. Rule 23(e)(1)(C), including the Sixth Circuit's standard of being "fair, reasonable and adequate." *See New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006).

---

[9] Subject to ¶ 7.4 of the Settlement Agreement, Countrywide has agreed to pay, subject to Court approval, incentive awards to Representative Plaintiffs and other Named Plaintiffs in amounts to be agreed upon by the Settling Parties, if any. Such awards, however, do not provide preferential treatment to Representative Plaintiffs and other Named Plaintiffs, as such incentive awards are customary in class actions. *See, e.g., See Allapattah Servs, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006); *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $35,000).

While meeting the higher standard of being fair, reasonable and adequate—as opposed to

meeting the standard of being within the range of fair, reasonable and adequate—is not required

at this time, it is offered as informative.

For final approval, the court must examine the following factors when determining

whether to approve a class action settlement:

(1)      the potential relief that plaintiffs may realize following a full trial on
         the merits balanced against the relief offered by the settlement;

(2)      the complexity, expense and likely duration of the litigation;

(3)      the status of the proceedings and the amount of discovery completed;

(4)      the judgment of experienced trial counsel;

(5)      the nature of the negotiations;

(6)      the objections of the class members; and

(7)      the public interest.

*Id.* at 631 (citing *In re Cincinnati Policing*, 209 F.R.D. 395 (S.D. Ohio. 2002); *In re Cardizem*

*CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Granada Invs., Inc. v. DWG Corp.*,

962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983);

*Bronson*, 604 F. Supp. at 73).

The objections of class members can only be determined after notice has been

accomplished. Thus, this factor is not analyzed here.  Without limiting the briefing which will be

made in support of final approval, as shown by the following analysis of the remaining factors, a

final approval analysis also shows that the settlement is fair, reasonable and adequate, and in the

best interests of the Settlement Class.

**A.    The Potential Relief That Plaintiffs May Realize Following a Full Trial on the Merits Balanced Against the Relief Offered By the Settlement.**

"A fine-tuned equation by which to determine the reasonableness of the size of a settlement fund does not exist." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 73 (citations omitted).  The groundbreaking settlement at issue here paves new ground.  With the threat of future harm to Settlement Class Members' personal and financial interests, the Litigation presents claims for what some may view as a unique form of damages.  Yet, the settlement provides innovative relief.  Its terms examine and reasonably provide for the monitoring of individuals' credit reports, reimbursing Settlement Class Members for any losses they have already suffered, or may suffer in the future, and provides security against a heightened risk of identity theft, in addition to the relief provided by the enhanced security measures being implemented by Countrywide.

The settlement provides substantial benefits in contrast to the possibility of no relief should the claims of Representative Plaintiffs be denied; the Settlement Agreement is a reasonable compromise of Settlement Class Members' claims.  With an approximate value of available benefits of over $660 million, against the vagaries of litigation, the recovery under the terms of the Settlement Agreement is necessarily fair and reasonable.  Thus, this factor favors preliminary approval of the settlement.

**B.    The Complexity, Expense and Likely Duration of the Litigation.**

Representative Plaintiffs and Proposed Co-Lead Settlement Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the litigation against Countrywide through motion practice, discovery, trial, and potential appeals.  The Representative Plaintiffs believe that the claims asserted in the litigation have merit.  However, Proposed Co-Lead Settlement Class Counsel have taken into account the uncertain

- 23 -

outcome and the risk of further litigation.  Countrywide has aggressively maintained its positions

regarding liability and damages.  It denies both.  Proposed Co-Lead Settlement Class Counsel are

also mindful of the inherent problems of proof and possible defenses to the claims asserted in the

litigation.  In any event, Representative Plaintiffs recognize the difficulties in establishing

liability on a class-wide basis at trial, or in achieving a result better than that offered by the

Settlement Agreement here. *See Fruit of the Loom*, 234 F.R.D. at 631 (the uncertainty of

prevailing at trial weighs in favor of settlement).

Given the nature of the case, it is almost assured that any decision on the merits would be

appealed, which would then cause further delay, as it would require briefing, oral argument (if

requested by the appeals court), and awaiting a decision. In contrast, the settlement provides for

significant benefits for the members of Settlement Class without the delays described herein.

Due to the significant risks in this litigation and the uncertainty of prevailing on the merits and of

establishing damages, this factor favors preliminary approval of the Settlement Agreement.

**C.      The Status of the Proceedings and the Amount of Discovery Completed.**

Beginning on August 18, 2008, numerous lawsuits were filed against

Countrywide asserting claims in relation to the alleged theft of the Private Information.  In the

interest of resolution of this matter, counsel for Representative Plaintiffs and counsel for

Countrywide began discussing the possibility of settlement at an early stage of the litigation.

These discussions continued throughout a period of several months.   Meanwhile, various

motions, and corresponding responses, were filed with the Judicial Panel on Multidistrict

Litigation ("the Panel") for transfer and coordination of all actions related to the Litigation.  A

hearing was held on the matter, and on December 2, 2008, the Panel transferred all related

actions to the Western District of Kentucky for coordinated proceedings.

Throughout the settlement negotiations, Proposed Co-Lead Settlement Class Counsel pursued discovery from Countrywide. Valuable informal discovery occurred during the negotiation of the Settlement Agreement, and it was appropriately targeted at information relevant to the settlement. *See* Manual for Complex Litigation (Fourth) at § 13.12 (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal discovery, of course, is a recognized method of minimizing the cost, delay, and burden associated with formal discovery. *See* Manual for Complex Litigation (Fourth) at § 11.423. Indeed, to further such ends, Courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery." *Id.*

Significantly, pursuant to ¶ 10.4 of the Settlement Agreement, additional confirmatory discovery will be conducted by Proposed Co-Lead Settlement Class Counsel, including discovery specifically related to the corrective actions taken by Countrywide to prevent such incidents from occurring in the future, and the steps taken to enhance the security of consumers' Private Information that is entrusted to Countrywide. Once the confirmatory discovery is completed, Proposed Co-Lead Settlement Class Counsel shall determine, based on said discovery, whether in their opinion the settlement is fair, reasonable, and adequate. *Id.* If Proposed Co-Lead Settlement Class Counsel are not satisfied that this standard has been met, it is within their discretion to terminate the settlement. *Id.*

This factor also favors preliminary approval of the Settlement Agreement.

**D.      The Judgment of Experienced Trial Counsel.**

"The former Fifth Circuit in *Cotton* stated that, in the 'absen[ce] of fraud, collusion or the like,' the court is 'entitled to rely upon the judgment of experienced counsel for the parties' and

'should be hesitant to substitute its own judgment for that of counsel.'" *Bragg v. Bill Heard Chevrolet, Inc.-Plant City*, No. 8:02-CV-609-T-30EAJ, 2007 WL 2781105, at *3 (M.D. Fla. Aug. 28, 2007) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Proposed Co-Lead Settlement Class Counsel, in their experience, as well as members of the Proposed Plaintiffs' Executive Committee, Proposed Plaintiffs' Liaison Counsel, and the other Plaintiffs' counsel supporting this settlement, are of the opinion that the Settlement Agreement provides substantial relief and benefits to Settlement Class Members. Proposed Co-Lead Settlement Class Counsel's extensive experience in the area of data breach class actions strongly supports this opinion.

Proposed Co-Lead Settlement Class Counsel, and other members of the Proposed Plaintiffs' Executive Committee, have extensive experience, not only with consumer class actions and class actions generally, but also direct experience in cases involving the theft or loss of private consumer information. Mr. Barnow, one of the Proposed Co-Lead Settlement Class Counsel, and Sherrie R. Savett, one of the members of the Proposed Plaintiffs' Executive Committee, were two of three Co-Lead Settlement Class Counsel in the *In Re TJX Companies Retail Security Breach Litigation*, No. 07-10162, before The Honorable William G. Young, District Court Judge, in the United States District Court for the District of Massachusetts. Allegations in that action arose from a security breach of TJX Companies, Inc.'s computer system, compromising the personal and financial information of millions of TJX customers throughout the United States and abroad. Judge Young granted final approval of the settlement in the matter on September 2, 2008. *See generally*, www.tjxsettlement.com.

Additionally, Mr. Barnow, along with Lance A. Harke and Ralph K. Phalen, who are two other members of the Proposed Plaintiffs' Executive Committee, were the Co-Lead Settlement

Class Counsel in *Lockwood et al. v. Certegy Check Servs., Inc.*, No. 07-cv-1434 (M.D. Fla.),

another case involving the breach of private consumer information. Larry D. Drury, Larry D.

Drury, Ltd., Daniel C. Girard, Girard Gibbs, LLP, and Justin G. Witkin, Aylstock, Witkin, Kreis

& Overholtz, PLLC, who are also members of the Proposed Plaintiffs' Executive Committee,

were members of the Plaintiffs' Executive Committee in the *Certegy* litigation. In that action, a

former employee of Certegy Check Services misappropriated the private consumer information

of in excess of five million individuals from the company's computer databases and sold it. The

Honorable Steven D. Merryday, District Court Judge, United States District Court for the Middle

District of Florida, granted final approval of the settlement in the matter on September 3, 2008.

*See generally*, www.datasettlement.com.

  Given the absence of any fraud or collusion among the Settling Parties here, this factor

favors preliminary approval of the Settlement Agreement.

  **E. The Nature of the Negotiations.**

  In deciding whether the Proposed Settlement is fair, reasonable, and not a product of

collusion, a court should examine both the negotiations leading to the proposed settlement and

the substantive terms of that settlement. *See, e.g., In Re Holocaust Victim Assets Litig.*, 105 F.

Supp. 2d 139, 145 (E.D.N.Y. 2000). In assessing procedural fairness, a court must consider the

negotiation process including the capabilities and experience of counsel, and whether the

settlement was the product of arm's length negotiations. *See, e.g., Fruit of the Loom*, 234 F.R.D.

at 632 (noting that the settlement in that case was "the product of arm's length negotiations

between…[c]apable and experienced counsel in class action and securities litigation," which led

to the presumption that the settlement was fair, adequate, and reasonable). Here, both the

manner of negotiation and the result of that negotiation support a finding that the Proposed Settlement is fair and reasonable.

The Parties engaged in extensive, arm's length negotiations for a period of more than four months. Numerous proposals and counter-proposals were initiated by both Co-Lead Settlement Counsel and counsel for Countrywide. Drafts of settlement agreements were exchanged between the Parties over a period of several months. The Parties fought hard for the interests of their respective clients, and in Proposed Co-Lead Settlement Class Counsel's informed opinion, the settlement achieved here includes a substantial and valuable recovery for members of the Settlement Class. As shown above, the leadership plaintiff attorneys who were primarily responsible for the negotiations are highly experienced counsel, not only generally, not only in class actions, but in class actions of this very type.

F.     **The Public Interest.**

Courts have observed that "[t]here is an overriding public interest in favor of settlement of class action lawsuits." *Whitford*, 147 F.R.D. at 143; *Fruit of the Loom*, 234 F.R.D. at 632. Furthermore, settlement benefits the public interest by avoiding long and drawn-out litigation. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). The public interest may be weighed in terms of both class members and non-class members.

Given the allegations of the underlying litigation, and the significance of the compromise of consumers' Private Information, the timeliness in delivering an appropriate remedy that meets the standards of fair, reasonable, and adequate is clearly in the best interest of the class. With the compromise of such sensitive personal information, including names, addresses, Social Security numbers, and other financial information, prompt and immediate relief for Settlement Class Members favors preliminary approval of the settlement.

## VII.   CONCLUSION

As the above analysis shows, the Settlement Agreement is clearly within the range of final approval. Therefore, Representative Plaintiffs, individually and on behalf of the proposed Settlement Class, by and through counsel, pray that this Honorable Court enter an order:

(a)   granting class certification of a Settlement Class as requested herein;

(b)   appointing Ben Barnow and Burton H. Finkelstein as Co-Lead Settlement Class Counsel and appointing plaintiffs Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman as Representative Plaintiffs;

(c)   appointing Co-Lead Settlement Class Counsel, and Daniel C. Girard, Girard Gibbs, LLP; Larry D. Drury, Larry D. Drury, Ltd.; Lance A. Harke, Harke & Clasby LLP; Sherrie R. Savett, Berger & Montague P.C.; Ralph K. Phalen, Ralph K. Phalen, Attorney at Law; Mark A. Maasch, Turner & Maasch, Inc.; Justin G. Witkin, Aylstock, Witkin, Kreis & Overholtz, PLLC; Frank E. Piscitelli, Jr., Frank Piscitelli Co., L.P.A.; and E. Kirk Wood, Wood Law Firm LLC, to the Plaintiffs' Executive Committee;

(d)   appointing Mark K. Gray, Franklin Gray & White, as Plaintiffs' Liaison Counsel

(e)   preliminarily finding that the Settlement Agreement is within the range of fair, reasonable, and adequate, and in the best interest of the Class;

(f)   authorizing the Notice of the settlement and preliminary approval of settlement to the Settlement Class in the manner set forth in the Settlement Agreement and in the Notice Plan submitted to the Court;

(g)   appointing the notice specialist selected and agreed to by the Settling Parties, which will be submitted to the Court with the Notice Plan, as the Notice Specialist;

(h)   appointing the claims administrator selected and agreed to by the Settling Parties, which will be submitted to the Court with the Notice Plan, as the Claims Administrator;

(i)   setting a date for the Final Fairness Hearing to consider entry of a final order approving the Settlement Agreement and the request for attorneys' fees, costs, and expenses; and

(j)     granting such other and additional relief as the Court may deem just and
        appropriate.


Dated:  January 21, 2009                          *Proposed Co-Lead Settlement Class
                                                  Counsel*


                                                     /s/  Ben Barnow
                                                  Ben Barnow
                                                  Barnow and Associates, P.C.
                                                  One North LaSalle Street, Suite 4600
                                                  Chicago, IL  60602
                                                  (312) 621-2000


                                                  Burton H. Finkelstein
                                                  Finkelstein Thompson LLP
                                                  The Duvall Foundry
                                                  1050 30th Street, N.W.
                                                  Washington, D.C. 20007
                                                  (202) 337-8000


                                                  *Proposed Plaintiffs' Liaison Counsel*

                                                  Mark K. Gray
                                                  Franklin Gray & White
                                                  505 W. Ormsby Ave.
                                                  Louisville, KY 40203
                                                  (502) 637-6000

**List of Exhibits**

Exhibit A:      Settlement Agreement

              Exhibit 1:  Identity Theft Reimbursement Evidence of Coverage

              Exhibit 2:  Evidence of Coverage for the Experian Guarantee

              Exhibit 3:  Judgment Order

              Exhibit 4:  Order of Preliminary Approval

Group
Exhibit B:      Firm Resumes

**From:** kywd-ecf-notice@kywd.uscourts.gov [mailto:kywd-ecf-notice@kywd.uscourts.gov]
**Sent:** Wednesday, January 21, 2009 2:18 PM
**To:** kywd-ecf-notice@kywd.uscourts.gov
**Subject:** Activity in Case 3:08-md-01998-TBR In Re: Countrywide Financial Corp. Customer Data Security Breach Litigation Motion for Settlement

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Western District of Kentucky

## Notice of Electronic Filing

The following transaction was entered by Barnow, Ben on 1/21/2009 at 2:18 PM EST and filed on 1/21/2009

| | |
|---|---|
| **Case Name:** | In Re: Countrywide Financial Corp. Customer Data Security Breach Litigation |
| **Case Number:** | 3:08-md-1998 |
| **Filer:** | Edmond Moses |
| | Laila Elkhettab |
| | Kim Wickman |
| | Thomas A. Munz |
| | Scott Gregg |
| | Matthew B. Martin |
| | Harold L. Mooney |
| | Jay Gaumer |

**Document Number:** 7

01/21/2009

**Docket Text:**
**MOTION for Settlement** *Plaintiffs' Motion for and Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement and Publishing of Notice, and Setting of a Final Fairness Hearing* **by Plaintiffs Thomas A. Munz, Scott Gregg, Matthew B. Martin, Edmond Moses, Harold L. Mooney, Laila Elkhettab, Jay Gaumer, Kim Wickman Responses due by 2/9/2009 (Attachments: # (1) Exhibit Settlement Agreement, # (2) Exhibit Firm Resumes Part I, # (3) Exhibit Firm Resumes Part II) (Barnow, Ben)**

**3:08-md-1998 Notice has been electronically mailed to:**

Alexander Holmes Burke    ABurke@BurkeLawLLC.com

Ann L. Miller    alm@millerlawpc.com

Aron David Robinson    adroblaw@aol.com

Austin P Tighe , Jr    austin@feazell-tighe.com

Ben Barnow    b.barnow@barnowlaw.com

Bryan Frederick Aylstock    baylstock@awkolaw.com

Cary A Kinkead    ckinkead@hpolaw.com

Chaim Shaun Setareh    setarehlaw@sbcglobal.net

Corey Mather    cmather@ademilaw.com

David J Syrios    dsyrios@ademilaw.com

David M. Cuppage    dmcupp@climacolaw.com

Donald Chidi Amamgbo , Esq    donald@amamgbolaw.com

Douglass A. Kreis    dkreis@awkolaw.com

Eric D. Katz    ekatz@mskf.net

Evan Jason Smith    esmith@brodsky-smith.com

Frank E. Piscitelli , Jr    frank@piscitellilaw.com

Gene Joseph Stonebarger    gstonebarger@lindstonelaw.com

Gerry De Simone    desimonelaw@pacbell.net

Guri Ademi    gademi@ademilaw.com

Halley F. Ascher    hascher@finkelsteinthompson.com

01/21/2009

Howard Mitchell Bushman    hbushman@harkeclasby.com

James E. Hasser , Jr    jhasser@dhf-law.com

James L. Ward , Jr    jward@rpwb.com

James M Lindsay    jlindsay@lindstonelaw.com

James R Patterson    jpatterson@hpolaw.com

Jayne Arnold Goldstein    jgoldstein@sfmslaw.com

Joe R. Whatley , Jr    jwhatley@whatleydrake.com

John A. Macoretta    jmacoretta@srkw-law.com

John R. Olsen    olsenbrown@comcast.net

John S. Steward    glaw123@aol.com

Jon Lambiras    jlambiras@bm.net

Jon W Borderud    borderudlaw@ca.rr.com

Joseph V. Neill    neill5300@aol.com

Justin Graem Witkin    jwitkin@awkolaw.com

Kenneth G. Gilman    kgilman@gilmanpastor.com

Lance August Harke    lharke@harkeclasby.com

Larry Daniel Drury    ldrurylaw@aol.com

Lincoln B Quintana    lbq.qms@gmail.com

Mark A Maasch    mam@tmsdlaw.com

Mark K. Gray    mgray@franklingrayandwhite.com, dkim@franklingrayandwhite.com,
mkgrayatty@aol.com

Mark L. Knutson    fk@classactionlaw.com

Mark S. Melodia    mmelodia@reedsmith.com

Matthew L. White    mwhite@franklingrayandwhite.com

Michael Steven Goetz    mgoetz@forthepeople.com

Michael T Fantini    mfantini@bm.net

01/21/2009

Mitchell L. Burgess     mitch@burgessandlamb.com

Neil Duane Overholtz     noverholtz@awkolaw.com

Patrick J. O'Hara     patrick@cavanagh-ohara.com

Peter D Nitschke     peter@nlglaw.com

Peter K Huxster     desimonelaw@pacbell.net

Ralph K. Phalen     phalenlaw@comcast.net

Reginald V. Terrell     reggiet2@aol.com

Richard A. Lockridge     ralockridge@locklaw.com

Richard L. Coffman     rc@cofflaw.com

Robert K. Shelquist     rshelquist@locklaw.com

Rosemary M Rivas     rrivas@finkelsteinthompson.com

Samuel W. Lanham , Jr     slanham@lanhamblackwell.com

Scott D. Simpkins     sdsimp@climacolaw.com

Scott R. Shepherd     sshepherd@sfmslaw.com

Scott Wm. Weinstein     sweinstein@forthepeople.com

Sherrie R. Savett     ssavett@bm.net

Shpetim Ademi     sademi@ademilaw.com

Steven M. Sprenger     ssprenger@sprengerlang.com

Todd Christopher Atkins     tatkins@atkinsdavidson.com

W Mark Lanier     wml@lanierlawfirm.com

William M Sweetnam     wms@sweetnamllc.com

William Richard Restis     wrr@classactionlaw.com

**3:08-md-1998 Notice will not be electronically mailed to.:**

Alan M. Mansfield
Rosney & Mansfield LLP
10085 Carroll Canyon Road, 1st Floor
San Diego, CA 92131

01/21/2009

Archie Lamb , Jr
Law Offices of Archie Lamb, LLC
2017 2nd Avenue, North, 2nd Floor
Birmingham, AL 35233

Clark L Davidson
Atkins and Davidson
450 B Street
Suite 1430
San Diego, CA 92101

Craig S. Davis
Lockridge Grindal Nauen PLLP
100 Washington Avenue South Suite 2200
Minneapolis, MN 55401

E. Kirk Wood
Wood Law Firm
2900 1st Avenue South, Suite A
Birmingham, AL 35233

Jeffrey Krinsk
Finkelstein & Krinsk
501 W. Broadway
Suite 1250
SAN DIEGO, CA 92101-3579

John R. Climaco
Climaco, Lefkowitz, Peca, Wilcox & Garofolo Co., LPA
1228 Euclid Avenue
Suite 900, The Halle Bldg.
Cleveland, OH 44115

Patrick J. Sheehan
Whatley Drake & Kallas, LLC
1540 Broadway, 37th Floor
New York, NY 10036

Robert C. Long
Lockridge Grindal Nauen PLLP
100 Washington Avenue South Suite 2200
Minneapolis, MN 55401

Robert Jason Richards
Aylstock Witkin Kreis & Overholtz PLLC
803 N Palafox Street
Pensacola, FL 32501

The following document(s) are associated with this transaction:

**Document description:**Main Document

01/21/2009

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1036078947 [Date=1/21/2009] [FileNumber=1072755-0
] [5f83e7932947c081161307c3323eb6c2e73dc27d5db38e61c9c8d76629954a9cea9
8c83ac7e405377e19ffe6d71a7df01373c8911cf1b6896a9fddb61377226f]]

**Document description:**Exhibit Settlement Agreement

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1036078947 [Date=1/21/2009] [FileNumber=1072755-1
] [a3ca1354dac2ba5f60f84730468af30da7e07f2442b8331ed8092ef2f5faa7f7634
790651a927e142d13c1cb6a2526f2743f46bbf34bb30be3fb47bc75f8295d]]

**Document description:**Exhibit Firm Resumes Part I

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1036078947 [Date=1/21/2009] [FileNumber=1072755-2
] [00bf1da84bcaba8bd6a9dfc85e71c85742de69342718d128ff7324d44780600ea52
79c4982a9fe368ec62f41e00d33714ab12d32ecbfadc09a63d254e3674783]]

**Document description:**Exhibit Firm Resumes Part II

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1036078947 [Date=1/21/2009] [FileNumber=1072755-3
] [9617353a5735b1a510b0f286268fabbce9b1184b9dbfaef6d710a3023240e976c59
55311d15d16e9cd93623264554bbb9ebed19c39d14699c989057c320606cf]]

# EXHIBIT C

● ORIGINAL

PANISH, SHEA & BOYLE, LLP
LAWYERS
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025
TEL: (310) 477-1700
FAX: (310) 477-1699
BRIAN J. PANISH, STATE BAR NO. 116060
RAHUL RAVIPUDI, STATE BAR NO. 204519
SPENCER R. LUCAS, STATE BAR NO. 232498

Attorneys for _____Plaintiff_____

(SPACE BELOW FOR FILING STAMP ONLY)

**FILED**
LOS ANGELES SUPERIOR COURT

SEP 0 5 2008

JOHN A. CLARKE, CLERK

BY SHAUNYA WESLEY, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

BC397636

| | |
|---|---|
| DANIEL WEBER, an individual, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| | **1. NEGLIGENCE** |
| vs. | |
| | **2. VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, et. seq.** |
| COUNTRYWIDE FINANCIAL CORPORATION, a Delaware Corporation, and DOES 1-100, inclusive. | |
| | **3. VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500.** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff, DANIEL WEBER ("Plaintiff"), on behalf of himself and all others similarly situated, complains and pleads upon information and belief as follows:

### I.   OVERVIEW

1.      Defendant COUNTRYWIDE FINANCIAL CORPORATION ("COUNTRYWIDE") has engaged in a course of negligent, unlawful, deceptive and unfair business practices which has resulted in the widespread dissemination of its customers highly sensitive personal information.

2.      COUNTRYWIDE is one of the country's largest home mortgage lenders. Through the lending process, COUNTRYWIDE has amassed a wealth of information about its customers including, but not limited to their names, addresses, dates of birth, driver's license numbers, social

1889.06

1  security numbers, bank accounts, credit cards, employment history, earnings information, and personal

2  assets. In amassing this database of information, COUNTRYWIDE was well aware that its potential

3  customers are very protective of this personal information. Consumers now live in fear of identity

4  theft. Indeed, "identity theft" is so well known and such concern, it is now a word in the Webster's

5  Dictionary: "the stealing of a person's financial information, *esp. credit cards and Social Security*

6  *number*, with the intention of using that data to commit fraud and create a phony persona." (Emphasis

7  added). To put it another way, allowing unscrupulous persons unfettered access to this information

8  is equivalent to handing over your checkbook and all of your assets.

9

10      3.      To ease its potential customers' concerns that their personal information will not fall

11  into the wrong hands resulting in identity theft, COUNTRYWIDE informed its customers, *in writing*,

12  that it "strives to safeguard" their information, including:

13          ∘      "setting policies and procedures for carefully handling your information";

14          ∘      "limiting employee access to sensitive information";

15          ∘      "protecting against unauthorized access to customer data using data encryption;

16  authentication, and virus detection technology";

17          ∘      "requiring service providers who do business with Countrywide to comply with

18  privacy laws";

19          ∘      "auditing company security practices";

20          ∘      "monitoring our websites through recognized online privacy and security

21  organizations such as Cybertrust Corporation"; and

22          ∘      "conducting background check on all employees and providing privacy training."

23

24      4.      COUNTRYWIDE did no such things. Instead, in the COUNTRYWIDE offices,

25  computer stations were left with no security mechanisms whatsoever so that any person could access

26  the computer and download all of COUNTRYWIDE's customers' personal information directly to

27  a USB port flash drive – or hard drive – and later disseminate or use the information as those persons

28  saw fit.

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

1889.06

5.   A foreseeable outcome resulted from COUNTRYWIDE not securing its computers. One of its employees – someone who has worked for the COUNTRYWIDE for over nine years – on a weekly basis for years, has been accessing the unprotected computer, downloading the personal information of tens of thousands of customers personal information, and selling it on the black market. On August 2, 2008, COUNTRYWIDE informed Plaintiff – and many others – that their personal information was indeed downloaded by this employee and disseminated through the black market. *See* August 2, 2008 Letter Attached as Exhibit 1.

6.   Had COUNTRYWIDE placed the adequate protective measures on all of its computers, as it promised and as is required under the law, Plaintiff's information – as well as the information of numerous other customers – would not had been compromised resulting in harm and damages to the Plaintiff and other COUNTRYWIDE customers.

## II.   JURISDICTION & VENUE

7.   This is a civil action seeking recovery of damages and relief under California law. Plaintiff, for himself and all other members of the Class alleged herein, brings an action for equitable and injunctive relief for Defendant's violations of California *Business & Professions Code* §§ 17200, et seq., as a result of the unlawful, deceptive and unfair business practices set forth herein.  In addition, Plaintiff seeks relief for Defendant's false statements and misrepresentations in violation of California *Business & Professions Code* § 17500.

8.   Venue as to Defendant COUNTRYWIDE and Does 1-100 is proper in this judicial district pursuant to California *Code of Civil Procedure* § 395(a) and § 395.5, as at least some of the acts complained of herein occurred in the County of Los Angeles.  COUNTRYWIDE maintains its principal place of business within the County of Los Angeles and is within the jurisdiction of this Court for purposes of service of process.

///

///

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

1889.06

### III.  PARTIES

9.    Plaintiff DANIEL WEBER (hereinafter "Plaintiff" or "Plaintiff Class Representative") is and has been a resident of the County of Los Angeles, California at all times relevant to this action. Plaintiff was an applicant and obtained a COUNTRYWIDE home mortgage in 2002. Plaintiff was and is a consumer whose personal financial and other information has been entrusted to Defendant COUNTRYWIDE for identification, credit verification and other purposes. Plaintiff's information was in fact compromised as a result of COUNTRYWIDE's lack of security. *See* August 2, 2008 Letter Attached as Exhibit 1.

10.    Defendant Countrywide is a Delaware Corporation with its headquarters and principal place of business in the County of Los Angeles, State of California. COUNTRYWIDE is a financial lending company engaged in the business of providing residential home loans to consumers. COUNTRYWIDE conducts a significant amount of its business with residents of the State of California.

11.    The true names and/or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the defendants fictitiously named herein as DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby proximately caused the injuries and damages to plaintiff and members of the Class as herein alleged. Plaintiff will seek leave of court to amend this Complaint and state the true names and/or capacities of said fictitiously named defendants when the same have been ascertained.

12.    Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, defendants, and each of them, including DOES 1-100, inclusive, and each of them, were the agents, servants, employees and/or joint ventures of their co-Defendants, and each was, as such, acting within the course, scope and authority of said agency, employment and/or venture, and that each and

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

1889.06

1   every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of

2   each and every other defendant as an agent, employee and/or joint venturer.

3

4                          IV.   CLASS ACTION ALLEGATIONS

5        13.    Plaintiff Class Representative is informed and believes and based thereon alleges that

6   COUNTRYWIDE is engaged in the business of providing home loans to consumers.  As part of this

7   business, COUNTRYWIDE obtains private information about home loan applicants including but not

8   limited to: names, addresses, dates of birth, driver's license numbers, social security numbers, bank

9   accounts, credit cards, employment history, earnings information, and personal assets.

10

11       14.    Plaintiff Class Representative is informed and believes and based thereon alleges that,

12  at all relevant times, COUNTRYWIDE advertises to the public, to home loan applicants, and to its

13  existing clients, that privacy of such information is a "priority" and that COUNTRYWIDE "strives

14  to safeguard your data". Specifically, COUNTRYWIDE advertises in print media and on its website

15  that they safeguard consumer data by:

16       °      "setting policies and procedures for carefully handling your information";

17       °      "limiting employee access to sensitive information";

18       °      "protecting against unauthorized access to customer data using data encryption;

19  authentication, and virus detection technology";

20       °      "requiring service providers who do business with Countrywide to comply with

21  privacy laws";

22       °      "auditing company security practices";

23       °      "monitoring our websites through recognized online privacy and security

24  organizations such as Cybertrust Corporation"; and

25       °      "conducting background check on all employees and providing privacy training."

26

27       15.    Plaintiff Class Representative is informed and believes and based thereon alleges that

28  COUNTRYWIDE took no efforts to safeguard all of its computers containing consumer data to such

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

--5--

1889.06

1    an extent that millions of COUNTRYWIDE applicants' and clients' private information were

2    compromised and disclosed to third parties.  Specifically, Plaintiff is informed and believes and based

3    thereon alleges that a COUNTRYWIDE employee in its Pasadena, California offices – for years –

4    downloaded COUNTRYWIDE consumer information from completely unsecured computers and sold

5    such information on the black market.

6

7         16.    Plaintiff is informed and believes and based thereon alleges that COUNTRYWIDE's

8    employee downloaded approximately 20,000 customer profiles each week for years including names,

9    addresses, telephone numbers, social security numbers, and other private information and sell that

10   information to various third parties on the black market, including predatory subprime mortgage

11   brokers and identity theft criminals.

12

13        17.    Plaintiff brings this action, on behalf of himself and all others similarly situated, as

14   a class action pursuant to California *Code of Civil Procedure* § 382.  The Class which the Plaintiff

15   seeks to represent is composed of and defined as follows:

16            All applicants and customers of COUNTRYWIDE in the United

17            States whose personal information, including but not limited to

18            names, addresses, important identification numbers, job and credit

19            histories, Social Security numbers, driver's license numbers, state

20            identification numbers, credit or debit card account numbers and/or

21            security codes were maintained by Defendant COUNTRYWIDE and

22            DOES 1-100 and were subjected to the unauthorized release of that

23            information to others for the period commencing from at least August

24            1, 2004 through the date of judgment (hereinafter the "Class Period").

25        (Hereinafter "the Class".)

26

27        18.    The members of the Class are so numerous that joinder of all members would be

28   infeasible and not practicable. The total number of consumers whose information was disseminated

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

1889.06

1  is unknown to Plaintiff at this time, however, the Federal Bureau of Investigation has located disks

2  sold to criminal third parties containing more than 38,000 COUNTRYWIDE consumers.  It is

3  anticipated that the number of class members will be approximately 2,000,000. The exact number and

4  identification of Class members has already been identified by COUNTRYWIDE and can be

5  ascertained through COUNTRYWIDE'S records, including a data retrieval from COUNTRYWIDE's

6  computers.

7

8     19.   There are common questions of law and fact as to the class which predominate over

9  questions affecting only individual members including, without limitation to:

10        (a) Whether COUNTRYWIDE owed a duty to protect the Class' personal

11  information;

12        (b) Whether COUNTRYWIDE breached its duty to protect the Class' personal

13  information;

14        (c) Whether COUNTRYWIDE violated California *Financial Code* § 4057(a) when

15  the Class' information was disseminated;

16        (d) Whether COUNTRYWIDE misrepresented any measures it took to protect the

17  Class' personal information;

18        (e) Whether COUNTRYWIDE's misrepresentation as to any measures it took to

19  protect the Class' personal information was deceptive or likely to mislead the general public;

20        (f) Whether COUNTRYWIDE's actions or omissions constituted an unfair business

21  practice;

22        (g) Whether the unauthorized distribution or release of Class members' personal

23  information is misrepresented and/or undisclosed by Countrywide;

24        (h) Whether or not Countrywide's business practices allowed the unauthorized release

25  of consumers' personal information, and thereby improperly retained and converted, appropriated or

26  deprived Plaintiff and the class of the use of monies or sums;

27        (i) Whether COUNTRYWIDE's security breach caused harm to the Class;

28        (j) Resulting damages and equitable relief;

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

-7-
Class Action Complaint for Damages

1889.06

20.     The claims of the Plaintiff are typical of the claims of all members of the Class as mentioned herein. Plaintiff, as representative party, will fairly and adequately protect the interests of the Class by vigorously pursuing the suit through his attorneys who are skilled and experienced in handling matters of this type.

21.     The nature of this action and the nature of the laws available to the Plaintiff and members of the Class make use of the class action format a superior procedure to afford relief to the Plaintiff for the wrongs alleged herein.  This lawsuit involves one (1) multi-billion dollar corporate defendant, COUNTRYWIDE, and a large number of individual consumers, estimated to be not less than 100,000 persons over the Class Period, with many relatively smaller claims involving common issues of law and fact. If each customer were required to file an individual lawsuit, the Court system would be inundated with lawsuits which could bring the judicial system to a grinding halt.  Moreover, requiring individual lawsuits to be filed would greatly increase the cost of litigation for each individual plaintiff giving the multi-billion dollar defendant an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of Plaintiff with its vastly superior financial resources. Requiring each class member to pursue the individual remedy would also discourage the assertion of lawful claims by customers who would be disinclined to pursue an action against Defendant Countrywide because of its financial viability.

22.     Proof of a common business practice and factual pattern, which the named Plaintiff experienced, is representative of the class mentioned herein and will establish the right of each of the members of the named class to recover on the causes of action alleged herein. The prosecution of separate actions by the individual class members, even if possible, would create a substantial risk of inconsistent or varying verdicts of adjudications with respect to the individual Class members against the Defendants herein; and (a) which would establish potentially incompatible standards of conduct for the Defendants; and/or (b) legal determinations with respect to individuals class members which would, as a practical matter, be dispositive of the interest of the other class members not party to adjudications or which would substantially impair or impede the ability of the class members to

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

1889.06

1    protect their interests. Further, the claims of the individual Class members are not sufficiently large

2    as to warrant vigorous individual prosecution considering all of the concomitant costs and expenses

3    attendant thereto.

4

5         23.    Plaintiff and each member of the class are entitled to compensation, equitable relief,

6    and to assurances that the conduct of COUNTRYWIDE and DOE Defendants, as set forth above, will

7    not happen again.

8

9                              **FIRST CAUSE OF ACTION**
                 (Negligence As Against COUNTRYWIDE And DOES 1 Through 100)

10

11        24.    Plaintiff repeats and re-alleges paragraphs 1 through 23 above as if set forth in full.

12

13        25.    Defendants COUNTRYWIDE and DOES 1-100, as a home loan company owed a

14   duty to its applicants and clients to safeguard their private and personal information including but not

15   limited to their names, addresses, dates of birth, driver's license numbers, social security numbers,

16   bank accounts, credit cards, employment history, earnings information, and personal assets.

17

18        26.    COUNTRYWIDE and DOES 1-100, owed a duty of care to the public, including

19   Plaintiff, to hire, retain, supervise and train their agents, employees, servants, and/or independent

20   contractors in a reasonable manner.

21

22        27.    Defendants COUNTRYWIDE, and DOES 1-100, breached said duties by failing to

23   provide any security measures for the Class members' personal information on computer stations in

24   its offices. Further, Defendants COUNTRYWIDE, and DOES 1-100 were negligent in the hiring and

25   in the retention of its their agents, employees, servants, and/or independent contractors in that

26   Defendants knew or should have known that they were unfit to perform their duties in a reasonable

27   manner. Defendants COUNTRYWIDE, and DOES 1-100 were further negligent by failing to provide

28   any or sufficient job training or supervision to their agents, employees, servants, and/or independent

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

1    contractors as to the need to protect and/or not access and disseminate Plaintiff's and Class members'

2    personal information.

3

4         28.    Defendants breach of their duties owed to Plaintiff and members of the Class were

5    the proximate cause of harm and damages to Plaintiff and members of the Class in that persons –

6    including COUNTRYWIDE their agents, employees, servants, and/or independent contractors –

7    gained access to the unsecured computers, downloaded millions of private consumer profiles

8    containing personal and nonpublic information over the course of multiple years onto a flash drive,

9    and disseminated the information to the black market.

10

11        29.    Said failures and breaches of Defendant COUNTRYWIDE, and DOES 1-100, were

12   the proximate and legal cause of the damages sustained by Plaintiff and the Class.

13

14                          **SECOND CAUSE OF ACTION**
                (Violation of California *Business & Professions Code* §§ 17200 et. seq.
15                 As Against COUNTRYWIDE And DOES 1 Through 100)

16        30.    Plaintiff repeats and re-alleges paragraphs 1 through 29 above as if set forth in full.

17

18        31.    Defendant's acts, conduct and practices, statements and representations, as alleged

19   in this Complaint, constitute unfair, unlawful business acts, and practices that are likely to harm and

20   deceive consumers, in violation of California *Business & Professions Code* §§ 17200 et. seq.

21

22        32.    Defendants COUNTRYWIDE and DOES 1-100 have engaged in unfair and

23   misleading conduct by advertising and promising to home loan applicants that their private financial

24   and personal information would be safeguarded, then disregarding proper security and data protection

25   procedures which directly led to a systematic and long-term disclosure of COUNTRYWIDE

26   consumers' private information. Specifically, COUNTRYWIDE represented to members of the Class

27   at all relevant times that they safeguard consumer data by:

28            "setting policies and procedures for carefully handling your information";

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

-10-
Class Action Complaint for Damages

1889.06

1    ∘    "limiting employee access to sensitive information";

2    ∘    "protecting against unauthorized access to customer data using data encryption;

3    authentication, and virus detection technology";

4    ∘    "requiring service providers who do business with Countrywide to comply with

5    privacy laws";

6    ∘    "auditing company security practices";

7    ∘    "monitoring our websites through recognized online privacy and security

8    organizations such as Cybertrust Corporation"; and

9    ∘    "conducting background check on all employees and providing privacy training."

10

11    33.    Such representations were likely to deceive the members of the Class and the general

12    public that COUNTRYWIDE and DOES 1 through 100 undertook the above represented efforts in

13    securing all of their computers.  Plaintiff is informed and believes, and thereupon alleges that

14    COUNTRYWIDE and DOES 1 through 100 undertook none of the above represented efforts in

15    securing all of their computers.

16

17    34.    Defendants' acts, conduct and practices, as alleged herein, were unfair in that the

18    gravity of consequences to the Plaintiff and the Class members greatly outweighs any utility of the

19    Defendants' acts. Furthermore, Defendants' conduct is immoral, unethical, oppressive, unscrupulous

20    and/or substantially injurious to Plaintiff, Class members, and the general public.

21

22    35.    Plaintiff is further informed and believes and based thereon alleges that Defendants

23    have engaged in unlawful conduct by violating California *Financial Code* § 4057(a).  California

24    *Financial Code* § 4057(a) provides that an entity that negligently discloses or shares nonpublic

25    personal information shall be in violation of the law. "Nonpublic personal information" as used in

26    Section 4057(a) is defined under California *Financial Code* § 4052(a) to include any personally

27    identifiable financial information provided by a consumer to a financial institution, such as

28    COUNTRYWIDE and DOES 1 through 100.  As alleged in Paragraphs 24 through 29 *supra*,

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

1889.06

1   Defendants negligently shared Plaintiff's and the Class' nonpublic personal information and, thus, are

2   in violation of California *Financial Code* § 4052(a).   Therefore, Defendants' practices constitute

3   unlawful business practices in violation of California *Business and Professions Code* §§ 17200 et. seq.

4

5       36.   Plaintiff is informed and believes and on that basis alleges that at all times herein

6   mentioned Defendants have engaged in unlawful, deceptive and unfair business practices prohibited

7   by California *Business & Professions Code* §§ 17200 et. seq. thereby depriving Plaintiff and the Class

8   members of the general public of fair and honest business practices.

9

10      37.   As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent

11  business practices as alleged herein, Plaintiff and the Plaintiff Class have had their private financial

12  information compromised to their detriment.

13

14      38.   As a result of the violations of California law alleged in this Complaint, Defendant

15  has been, and will be, unjustly enriched at the expense of Plaintiff and the Class members.   Plaintiff,

16  on behalf of himself and the Class, seeks to disgorge Defendants of any profits gained through their

17  violation of California *Business and Professions* Code §§ 17200 et. seq.

18

19      39.   Plaintiff, on behalf of himself and the Class, also seeks restitution for Defendants

20  violation of California *Business and Professions* Code §§ 17200 et. seq.

21

22      40.   Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief which

23  will prevent COUNTRYWIDE from any future negligent and/or unlawful dissemination of Class

24  members' personal information by way of implementing safeguards, state of the art technology, and

25  ongoing monitoring/auditing of any security methods implemented.

26

27  ///

28  ///

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

-12-

1889.06

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

### THIRD CAUSE OF ACTION
(Violation of California *Business & Professions Code* § 17500
As Against COUNTRYWIDE And DOES 1 Through 100)

41.   Plaintiff repeats and re-alleges paragraphs 1 through 40 above as if set forth in full.

42.   Defendant's acts, conduct and practices, statements and representations, as alleged in this Complaint, constitute false and misleading statements that are likely to harm and deceive consumers, within the meaning of *California Business & Professions Code § 17500 et. seq.*

43.   Plaintiff is informed and believes and based thereon alleges that Defendant COUNTRYWIDE, and DOES 1-100, advertises to the public, to home loan applicants, and to its existing clients, that privacy of consumer information is a "priority" and that COUNTRYWIDE "strives to safeguard your data". Specifically, COUNTRYWIDE advertises in print media and on its website that they safeguard consumer data by:

　　　○　　"setting policies and procedures for carefully handling your information";

　　　○　　"limiting employee access to sensitive information";

　　　○　　"protecting against unauthorized access to customer data using data encryption; authentication, and virus detection technology";

　　　○　　"requiring service providers who do business with Countrywide to comply with privacy laws";

　　　○　　"auditing company security practices";

　　　○　　"monitoring our websites through recognized online privacy and security organizations such as Cybertrust Corporation"; and

　　　○　　"conducting background check on all employees and providing privacy training."

44.   Plaintiff is informed and believes and based thereon alleges that such statements and representations are made with the intent to induce the public and potential home loan customers to enter into loan services with defendants.

///

-13-

1889.06

45.     Plaintiff is informed and believes and based thereon alleges that defendants knew, or by the exercise of reasonable care should have known, that such statements were false and misleading. Specifically, Plaintiff is informed and believes and based thereon alleges that Defendants failed to set and enforce policies and procedures to protect consumer data, and failed to limit employees' access to sensitive information.

46.     As a direct and proximate result of Defendant's false and misleading statements as alleged herein, Plaintiff and the Plaintiff Class have had their private financial information compromised to their detriment.

47. .   Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief which will prevent COUNTRYWIDE from any future negligent and/or unlawful dissemination of Class members' personal information by way of implementing safeguards, state of the art technology, and ongoing monitoring/auditing of any security methods implemented.

## PRAYER FOR RELIEF

WHEREFORE, for all of the above and foregoing reasons, Plaintiff and the class, pray for judgment against Countrywide as follows:

1.      That the Court determines that this action may be maintained as a Class action under California *Code of Civil Procedure* §382 and direct that reasonable notice of this action be given to members of the Class;

2.      For an Order finding and declaring that the acts and practices of COUNTRYWIDE and DOES 1-100 as alleged herein are unlawful, unfair, and/or fraudulent, and that judgment be entered in favor of the Plaintiff and the Class against Defendants;

3.      For an order of full restitution of all monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted from consumers as a result of the unfair, unlawful and/or deceptive business practices of COUNTRYWIDE and DOES 1-100 as alleged

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

1889.06

1   herein. For an order disgorging Defendants of all monies, profits and ill-gotten gains as a result of the

2   unfair, unlawful and/or deceptive business practices of COUNTRYWIDE and DOES 1-100 as alleged

3   herein. Plaintiff and the Class seek the appointment of a receiver as necessary. Plaintiff and the class

4   also seek pre-judgment interest and attorneys' fees as a result of the unfair, unlawful and/or deceptive

5   business practices.

6       4.      For an order issuing appropriate injunctive relief which will prevent

7   COUNTRYWIDE from any future negligent and/or unlawful dissemination of Class members'

8   personal information.

9       5.      For an accounting, under administration of Plaintiff and the Class and subject to court

10  review, to determine the amount to be returned by Defendants and the amounts to be refunded to

11  members of the public who are or were affected by Defendants' illegal acts;

12      6.      For the creation of an administrative process wherein each current and former injured

13  customer of COUNTRYWIDE receives his or her losses;

14      7.      For general damages according to proof;

15      8.      For special damages according to proof;

16      9.      For Plaintiff's and the Class' costs and fees incurred herein;

17      10.     For all such other relief as is just and necessary under the circumstances.

18

19                          **DEMAND FOR JURY TRIAL**

20          Plaintiff and the Class hereby demand a trial by jury.

21                              Respectfully submitted,

22

23

24  Date: September 4, 2008          PANISH, SHEA & BOYLE, LLP

25

26                                  Brian J. Panish
                                    Rahul Ravipudi
27                                  Spencer R. Lucas
28                                  Attorneys for Plaintiffs

PANISH, SHEA & BOYLE, LLP
11111 SANTA MONICA BOULEVARD, SUITE 700
LOS ANGELES, CALIFORNIA 90025

-15-

 

**Countrywide®**
PO Box #940910
Mt McCoy Station Post Office
Simi Valley, CA 93065

August 2, 2008

Daniel James Weber
3236 Stoner Ave
Los Angeles, CA 90066-1111
[barcode]

Ref No: 08-67161208

Dear Daniel James Weber,

We are writing to inform you that we recently became aware that a Countrywide employee sold personal information about you to a third party. Based on a joint investigation conducted by Countrywide and law enforcement authorities, it was determined that the customer information involved in this incident was related to your Countrywide home loan account and included your name, address and Social Security number.

We deeply regret this incident and apologize for any inconvenience or concern it may cause you. We take our responsibility to safeguard your information very seriously and will not tolerate any actions that compromise the privacy or security of our customers' information. We immediately terminated the employee's access to all Countrywide facilities and systems and will continue to work with law enforcement authorities to pursue further actions as appropriate.

In light of the sensitive nature of the information disclosed, we urge you to carefully read the enclosed brochure that outlines precautionary measures you may want to take. The brochure will guide you through steps to:

✓ contact the major credit bureaus and place a fraud alert on your credit reports;
✓ review your recent account activity for unauthorized charges or accounts;
✓ be vigilant and carefully review your monthly credit card and other account statements over the next twelve to twenty-four months for any unauthorized charges; and
✓ take action should any unauthorized activity appear on your credit report.

Additionally, Countrywide has engaged ConsumerInfo.com, Inc., an Experian® Company, to provide to you, at no cost, a two-year membership in Triple Advantage Credit Monitoring. This product includes daily monitoring of your credit reports from the three national credit reporting companies (Experian, Equifax® and TransUnion®) and email monitoring alerts of key changes to your credit reports.

To learn more about Triple Advantage and to enroll, log on to **www.consumerinfo.com/countrywide** and follow the instructions to complete the secure online form. You will need to enter the activation code provided below on page two of the online form to complete the enrollment. You will have 90 days from the date of this letter to use the code to activate the credit monitoring product.

Borrower Activation Code: CWH4YNYMY

We apologize again that this incident has occurred and for any inconvenience or worry it may have caused. If you have questions, please call our special services hotline at 1-866-451-5895 between the hours of 7:00 AM and 7:00 PM Central Time, Monday through Friday, and a specially trained representative will be ready to assist you.

Sincerely,

Sheila Zuckerman

Sheila Zuckerman
Countrywide Office of the President
Enclosure

EXH 1

# EXHIBIT D

1   SCOTT A. KAMBER
    DAVID A. STAMPLEY
2   KAMBEREDELSON, LLC
    11 Broadway, 22nd Floor
3   New York, NY 10004
    Telephone: (212) 920-3072
4   Facsimile: (212) 202-6364
    skamber@kamberedelson.com
5   dstampley@kamberedelson.com

6   DAVID C. PARISI (SBN 162248)
7   PARISI & HAVENS LLP
    15233 Valleyheart Drive
8   Sherman Oaks, California 91403
    Telephone: (818) 990-1299
9   Facsimile: (818) 501-7852
    dparisi@parisihavens.com
10  Counsel for Plaintiffs

11

**FILED**
LOS ANGELES SUPERIOR COURT

SEP 1 9 2008

JOHN A. CLARKE, CLERK

BY SHAUNYA WESLEY, DEPUTY

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                          **COUNTY OF LOS ANGELES**

14                                          | Case No.   BC398509

15  SPENCER SILVERBACH and VICKI     | **JURY DEMAND**
    SILVERBACH, individuals, on behalf of
16  themselves and all others similarly situated,   | **CLASS ACTION COMPLAINT FOR:**

17                              Plaintiffs   | 1. **VIOLATIONS OF CIVIL CODE**
18                                          |    **SECTION 1770, ET SEQ.;**
            v.
19                                          | 2. **VIOLATIONS OF BUSINESS &**
    COUNTRYWIDE FINANCIAL CORP., a   |    **PROFESSIONS CODE SECTION**
20  corporation, COUNTRYWIDE BANK,   |    **17200, ET SEQ.; AND**
    FSB, a corporation, COUNTRYWIDE
21  HOME LOANS, INC., a corporation,   | 3. **VIOLATIONS OF BUSINESS &**
    BANK OF AMERICA CORPORATION, a   |    **PROFESSIONS CODE SECTION**
22  corporation, and J. DOES 1 through 100,   |    **17500, ET SEQ.; AND**
    corporations,
23                                          | 4. **VIOLATIONS OF CIVIL CODE**
                                            |    **SECTION 1798.80, ET SEQ.; AND**
24                              Defendants.
                                            | 5. **VIOLATIONS OF**
25                                          |    **CONSTITUTION OF THE STATE**
                                            |    **OF CALIFORNIA, ARTICLE I,**
26                                          |    **SECTION 1**

27

28

1
Class Action Complaint

**CLASS ACTION COMPLAINT**

Plaintiff SPENCER SILVERBACH and Plaintiff VICKI SILVERBACH, on be-half of themselves and all others similarly situated (collectively, "Plaintiffs" ), by and through their attorneys, KamberEdelson, LLC, and Parisi & Havens LLP, as and for their complaint and demanding a trial by jury, allege as follows upon information and belief, based upon, inter alia, investigations conducted by and through their attorneys, except as to those allegations pertaining to Plaintiffs and their counsel personally, which are alleged upon knowledge:

## I.  NATURE OF THE ACTION

1.      This matter arises from ongoing and intentional failure of Defendants, who provide home loan services, to safeguard the privacy and confidentiality of their loan customers' personal information.

2.      On or about August 2, 2008, it was reported in the press that, over a pe-riod of two years, a Countrywide employee had repeatedly stolen from Countrywide the personal information of many thousands, if not millions, of home loan customers and had sold the information to unauthorized third parties (the "Countrywide Breach").

3.      Defendants' had committed to safeguard their customers' information and claimed to have implemented information security processes necessary to fulfill their privacy and security commitments to customers. But for the Countrywide Breach, Defendants' customers might never have learned that, in violation of their commit-ments, Defendants knowingly and willfully elected not to implement the information security and privacy measures appropriate to safeguard their customers' personal infor-mation. Instead, across their multiple loan companies, including Full Spectrum and Countrywide Home Loans, Defendants pooled loan customers' sensitive, personal in-formation; left the information inadequately secured, open to access by employees who had no legitimate business need for it, and vulnerable to large-scale compromise; failed to monitor access to the information; failed to adequately secure information access de-

vices; and failed to adequately audit company security practices—all in violation of their commitments to customers and security standards by which they claimed to abide..

4.     All the while, Defendants misrepresented their security measures and their ability to safeguard customers' confidential information and so deceived customers, exposing customers to undue risk of unauthorized acquisition and use of personal information, failing to provide services as represented, and depriving customers of the opportunity to do business with loan providers willing to fulfill privacy, security and confidentiality commitments.

5.     Further, Defendants failed to timely and fully disclose the ongoing breach of confidential information to affected customers, and intentionally withheld and continue to withhold information from Full Spectrum and Home Loan customers affected by the Countrywide Breach, and so are depriving those customers of critical information they need to protect themselves.

6.     This class action lawsuit is brought by and on behalf of similarly situated individuals—Countrywide loan customers—whose rights in the privacy, security, and confidentiality of their information was violated by the actions of Countrywide Financial Corp., Countrywide Bank, FSB, Countrywide Home Loans, Inc., Bank of America Corporation, and the J. Doe corporations ("J. Does") (collectively, "Countrywide," or the "Defendants").

## II.  JURISDICTION AND VENUE

7.     This court may exercise jurisdiction over this case and these parties under Code of Civil Procedure section 410.10.  This is a court of general jurisdiction, and the amount in controversy exceeds this court's jurisdictional minimum.  Plaintiffs are California residents and defendants have their principal place of business in California.

8.     Venue is proper in this County because the transactions were performed in part and breached in part in Los Angeles County.  Further, this is the proper county pursuant to Code of Civil Procedure sections 395 and 395.5.  Pursuant to Los Angeles

Superior Court Local Rule 2.0, this is the type of action that may be filed in the Central District.

## III.   **PARTIES**

9.     Plaintiff SPENCER SILVERBACH is a resident of Sacramento County and was a customer of Country Home Loans during the relevant period.

10.     Plaintiff SPENCER SILVERBACH obtained a mortgage from Defendant Countrywide Home Loans on or about July 5, 2007.

11.     Plaintiff VICKI SILVERBACH is a resident of Sacramento County and was a customer of Country Home Loans during the relevant period.

12.     Plaintiff VICKI SILVERBACH obtained a mortgage from Defendant Countrywide Home Loans on or about July 5, 2007.

13.     Defendant COUNTRYWIDE FINANCIAL CORPORATION is a Delaware corporation with its offices in Los Angeles county, California and is the parent company of Defendants Countrywide Bank, FSB and Countrywide Home Loans.

14.     Defendant COUNTRYWIDE BANK, FSB, is a federal savings bank that has transacted and continues to transact business throughout the State of California, including Los Angeles County, and includes the Countrywide Home Loans, Inc. and Full Spectrum Lending ("Full Spectrum") divisions. Full Spectrum offers home loan products to borrowers "who may not fit within the traditional loan borrower profile."

15.     Defendant COUNTRYWIDE HOME LOANS, INC. ("Countrywide Home Loans") is a New York Corporation with its offices in Los Angeles County, California, and is a division of Defendant Countrywide Bank, FSB.

16.     Defendant BANK OF AMERICA CORPORATION is a Delaware corporation with principal offices in Charlotte, North Carolina, and, as of July 2008, is the parent company of Defendant Countrywide Financial Corporation.

17.     Plaintiffs do not know the true names or capacities, whether individual, partner or corporate, of the Defendants sued herein as Does 1 through 100, inclusive, and for that reason, said Defendants are sued under such fictitious names and Plaintiffs

1  will seek leave from the Court to amend this Complaint when such true names and ca-

2  pacities are discovered.

3      18.    Plaintiffs are informed and believe, and on that basis allege, that each of

4  the said fictitious Defendants, whether individuals, partners or corporate, were respon-

5  sible in some manner for the circumstances alleged herein and proximately caused

6  Plaintiffs, and those members of the general public and class members similarly situ-

7  ated, to be subjected to the unlawful business practices, wrongs and injuries and dam-

8  ages complained of herein.

9      19.    Plaintiffs are informed and believe and based thereon allege that all de-

10  fendants, including the fictitious Doe defendants, were at all relevant times acting as ac-

11  tual agents, conspirators, ostensible agents, partners and/or joint venturers and employ-

12  ees of all other defendants, and that all acts alleged herein occurred within the course

13  and scope of said agency, employment, partnership, and joint venture, conspiracy or en-

14  terprise, and with the express and/or implied permission, knowledge, consent, authoriz-

15  ation and ratification of their co-defendants; however, each of these allegations are

16  deemed "alternative" theories whenever not doing so would result in a contraction with

17  the other allegations.

18      20.    At all times mentioned herein, the acts and omissions of various Defen-

19  dants, and each of them, concurred and contributed to the various actions and omissions

20  of each and every one of the other Defendants in proximately causing the complaints,

21  injuries and damages alleged herein.

22      21.    At all times herein mentioned, Defendants, and each of them, aided and

23  abetted the acts and omissions of each and every one of the other Defendants, thereby

24  proximately causing the damages as alleged herein.

## IV.   CLASS ALLEGATIONS

25      22.    Plaintiffs bring this complaint against Defendants, pursuant to Code of

26

27  Civil Procedure Section 382, on behalf of themselves and all others similarly situated.

28  The classes that the Plaintiffs seek to represent is composed of and defined as follows:

a.      All consumers in California whose personal information, including, but not limited to, names, addresses, important identification numbers, job and credit history, credit or debit card account numbers and/or security codes were maintained and/or provided to others by Defendants and/or were subjected to the unauthorized release of that information to others for the period commencing from at least January 2006 through the date of judgment.

b.      All consumers in states other than California whose personal information, including, but not limited to, names, addresses, important identification numbers, job and credit history, credit or debit card account numbers and/or security codes were maintained and/or provided to others by Defendants and/or were subjected to the unauthorized release of that information to others for the period commencing from at least January 2006 through the date of judgment.

23.      While the exact number of Class members in each class is unknown to Plaintiffs at this time, it is clear that the members of the Class are so numerous that joinder of all members is impracticable. It has been estimated that the information of approximately tens of thousands of customers were affected every week over a two-year period. The information as to the identity of the Class members can be determined through Defendants' records.

24.      Plaintiffs' claims are typical of the claims of the members of the Class, as Plaintiffs and other members of the Class sustained damages arising out of Defendants' wrongful conduct based upon the same transactions, upon the same misrepresentations, and upon the same material omissions, which were made uniformly to the Plaintiffs and the public.

25.      Plaintiffs will fairly and adequately represent and protect the interests of the members of each of the Class and has retained counsel competent and experienced in class actions.

26.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impractica-

ble. Furthermore, as the damages suffered by the individual members of the Class may be comparatively small, the expense and burden of individual actions makes it impossible for the Class members to redress individually the wrongs from which they have suffered. There will be no real difficulty in the management of this action as a class action.

27.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a.      Whether Defendants failed to maintain adequate security measures to protect consumers' personal information;

b.      Whether Defendants misrepresent their security measures;

c.      Whether Defendants fail to adequately protect consumers' personal information from unauthorized distribution or release;

d.      Whether unauthorized distribution or release of consumers' personal information is misrepresented and/or undisclosed by Defendants;

e.      Whether Defendants were on notice as to the unauthorized release of consumers' personal information, and acted reasonably under the circumstances to protect the security of personal information of members of the Class;

f.      Whether Defendants have engaged in unfair business practices;

g.      Whether Defendants participated in allegedly unlawful and tortious conduct;

h.      Whether Defendants' business practices allowed the unauthorized release of consumers' personal information;

i.      Whether Plaintiffs and the Class are entitled to relief, and the amount and nature of such relief.

28.     The claims of Plaintiffs are typical of the claims of the members of the Class. Plaintiffs have no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

29.    Plaintiffs will fairly and adequately protect the interests of the Class, and have retained attorneys well experienced in class and complex litigation.

30.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a.    It is economically impractical for members of the Class to prosecute individual actions;

b.    The Class is readily definable; and

c.    Prosecution as a class action will eliminate the possibility of repetitious litigation.

31.    A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort and expense will be fostered and uniformity of decisions will be ensured.

32.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

## V.  FACTUAL ALLEGATIONS

### A.    Plaintiffs

33.    Plaintiffs, at all times relevant hereto, were and are consumers whose personal information was maintained and/or provided to others by Defendants, and has been subject to the illegal practices of said Defendants, by having their personal, financial and other information compromised and/or been subject to the unauthorized and illegal distribution to others of said information without their knowledge or consent, and has been damaged thereby.

34.    At all times relevant hereto, Plaintiffs' personal information was maintained and/or provided to others by Defendants and was subject to the unauthorized distribution of their confidential personal, financial, and other information.

### B.    The Countrywide Breach

35.    Countrywide Financial Corporation is the parent corporation of Defendant Countrywide Home Loans, Full Spectrum, servicing subprime mortgages, and

Countrywide Home Loans. The Defendants provide financial services, including home loan products, to consumers nationwide.

36.     Upon information and belief, the source of which is several news reports on or about August 2, 2008, a former Full Spectrum senior financial analyst was arrested for stealing Defendants' customers' personal information and selling it to various persons or entities. (http://www.latimes.com/business/la-fi-arrest2-2008aug02,0,733-0731.story, August 2, 2008)  The former employee reportedly admitted having perpetrated the theft by going to his office on weekends over the course of two years and downloading information on approximately 20,000 customers each week. The former employee copied the customer data to a portable thumb drive device, using a computer on which the security feature preventing thumb drive utilization was lacking. (http://www.washingtonpost.com/wp-dyn/content/article/2008/08/04/-AR2008080401886.html, August 5, 2008)

37.     An FBI agent reportedly examined the employee's thumb drive, retrieved 40 spreadsheets "at random," and observed that each spreadsheet contained several thousand rows of data that included phone numbers, addresses and social security numbers. Based on the employee's reports of his illicit activities, information of potentially millions of customers was compromised. (http://www.heraldnet.-com/article/20080802/BIZ/633244343/1012/BIZ03, August 2, 2008)

38.     Countrywide reportedly identified 19,000 compromised customers whom the company notified by mail and offered free credit-monitoring services for two years. (http://www.mercurynews.com/ci_10301474, August 25, 2008)

39.     Upon information and belief, the source of which is reports from putative class members, breach notification letters have been received by Full Spectrum customers as well as Countrywide Home Loans customers.

**C.     Countrywide's Material Privacy and Security Commitments**

40.     Upon information and belief, Countrywide provides privacy notices to its loan customers, and which state, in substance:

> Keeping customer information secure is a top priority . . . .
> We maintain physical, electronic, and procedural safeguards that
> comply with federal standards to store and secure information
> about you from unauthorized access, alteration, and destruction.
> Our control policies, for example, authorize access to customer
> information only by individuals who need access to do their
> work.

Privacy Policy Disclosure: Protection of the Privacy of Personal Non-Public Information (the "Customer Privacy Notice").

41.    At all times relevant to this complaint, Countrywide Financial Corporation published a privacy and security statement, available on its website to all consumers, and which stated, in substance and in pertinent part:

> **Your Privacy**
>
> **The opportunities you deserve, the privacy you expect**
>
>                         · · ·
>
> This section explains how the Countrywide family of companies
> protects and uses your information in a safe, secure and
> responsible manner.
>
>                         · · ·
>
> **Your protection is our priority**
>
> We strive to safeguard your data. We do this by:
>
> - setting policies and procedures for carefully handling your information;
>
> - limiting employee access to sensitive information;
>
> - protecting against unauthorized access to customer data using data
>   encryption, authentication, and virus detection technology;
>
>                         · · ·
>
> - auditing company security practices;
>
>                         · · ·

Class Action Complaint

"Privacy and Security in the Countrywide Family," at http://my.countrywide.com/pri-vacy.aspx, downloaded September 15, 2008; "Privacy and Security in the Countrywide Family," (as of February 17, 2007), at http://web.archive.org/web/20070217090339/-http://my.countrywide.com/privacy.aspx, downloaded September 16, 2008 (boldface in original) (collectively, the "Privacy and Security Statement").

42.     In the Privacy and Security Statement, Countrywide described its infor-mation-sharing practices, stating that it "prudently" shared "limited information within our Countrywide family of companies and with carefully selected business partners."

43.     Countrywide was aware of the risks of inadequately securing customers' personal information and exposing it to capture by unauthorized third parties, stating, "According to the FBI, identity theft is the fastest growing crime in America." In its Privacy and Security Statement, the company warned:

> Identity thieves can damage the credit reputations and lives of
> victims. Studies have shown that victims spend an average of
> $808 and 205 hours resolving the identity theft. Time and money
> is spent clearing credit reports, reporting the theft to lenders and
> merchants, and filing complaints with law enforcement and
> governmental agencies. One of the menacing problems of
> identity theft is that it can happen more than once. Once the
> initial incident is resolved, the thief may begin using the victim's
> identity again after waiting 6 months to a year and the cycle
> begins all over again.

44.     Defendants' representations cited above were material to Plaintiffs' deci-sions to do business with Countrywide and were entitled to rely on Countrywide's com-mitments and acknowledgements.

**D.     Countrywide's Awareness of Security Standards**

45.     Defendants were aware of information security standards and practices necessary to safeguard Plaintiffs' personal information. For example, on a web page ad-

vertising Countrywide's subservicing offerings, under the heading of "Data Security," Countrywide stated:

> Your financial institution's data is protected by extensive security measures including physical perimeter barriers, network access barriers, user authentication filters and activity tracking. Countrywide has developed and implemented administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of corporate assets and customer information. The Program is also designed to satisfy the numerous laws and regulations governing the privacy and security of customer information of financial services organizations both in the U.S. and internationally.
>
> To address these requirements, Countrywide has based its policies, standards, guidelines and procedures on the ISO 17799 standards. These standards provide the framework for a comprehensive and strong program. In developing the Program, CFC has augmented the ISO standards with additional policies, standards, guidelines and procedures necessary to meet the requirements of various laws and regulations. These requirements include Title V of the Gramm-Leach-Bliley Act (GLB); the European Union Data Protection Directives (EU Directives); the Interagency Guidelines Establishing Standards for Safeguarding Customer Information; various bulletins issued by the Office of the Comptroller of the Currency (OCC); the Federal Financial Institutions Examination Council (FFIEC); and the Health Insurance Portability and Accountability Act (HIPAA).

"Why Choose Countrywide?" Google cache of http://subservicing.countrywide.com/-whychl.aspx as of August 24, 2008, downloaded September 15, 2008. (As of September 15, 2008, the current version of the web page no longer included the statements quoted above.)

a.    One of the standards to which Countrywide claims adherence in the above statement is ISO17799, an internationally recognized standard for information security controls that includes requirements such as:

    i.   audit logging to record user activities (10.10.1)

    ii.  usage monitoring, and regular review of monitoring results (10.10.2);

    iii. segregation of users and information systems (11.4.5)

    iv.  access restrictions for information and applications (11.6.1)

    v.   regular review of information systems' compliance with security implementation standards (15.2.2)

See ISO/IEC 17799:2005, Information technology—Security techniques—Code of practice for information, International Organization for Standardization (ISO) and the International Electrotechnical Commission (IEC).

b.    According to Countrywide's subservicing web page discussed above, the company adheres to guidance issued by Federal Financial Institutions Examination Counsel (FFIEC). These standards charge financial institutions' boards of directors with responsibility for information security program oversight and state:

> The [Gramm-Leach-Bliley Act], section 501(b), requires management to develop and the board to approve an information security program to protect the security and confidentiality of customer information. The institution should protect customer information from any anticipated threats to security or integrity. It should also protect customer information from unauthorized access or use that would result in substantial harm or inconvenience to any customer. GLBA also requires that the Board oversee the development, implementation and maintenance of the bank's security program and that it assigns specific responsibility for its implementation. The Board should also

1   review an annual report, prepared by management, regarding the

2   bank's actions toward GLBA compliance.

3   FFIEC IT Examination Handbook: Management Booklet, Federal Financial Institutions

4   Examination Council, at 30 (June 2004).

5           c.      Included in the FFIEC standards is the recognition that

6   "[e]mployees, contractors, or third-party employees can exploit their legitimate com-

7   puter access for malicious, fraudulent, or economic reasons" adding:

8           [T]he degree of internal access granted to some users increases

9           the risk of accidental damage or loss of information and systems.

10          Risk exposures from internal users include . . . [m]isusing

11          systems for personal gain or to damage the institution [and]

12          [s]tealing strategic or customer data for corporate espionage or

13          fraud.

14  FFIEC IT Examination Handbook: Information Security, Federal Financial Institutions

15  Examination Council, at 60-61 (December 2002). The FFIEC standards state that, as

16  part of an institution's logical security controls, "Management should employ the prin-

17  ciple of least possible privilege throughout IT operations. The principle provides that

18  individuals should only have privileges on systems and access to functions that are re-

19  quired to perform their job function and assigned tasks." FFIEC IT Examination Hand-

20  book: Operations, Federal Financial Institutions Examination Council, at 22 (July

21  2004). The principle of least privilege is set forth in CFC's own security standards.

22  Standards, Guidelines and Procedures to Enterprise Information Security Standards,

23  Countrywide Financial Corporation, Policy 0701, June 2004.

24          d.      CFC's own Enterprise Information Standards include provisions

25  requiring: logging and monitoring to identify misuse of systems and information (Stan-

26  dard 0701d); prohibition against connecting of non-corporate computer devices to cor-

27  porate computer equipment (Standards 0807j, 0807k); and auditing of corporate com-

28

puter devices and of the corporate information security program (Standards 0807h and 1004c).

E. **Countrywide's Intentional Failures to Safeguard Information**

46.     Despite Defendants' above-described privacy and security commitments and its awareness of standards for implementing information security protections, Defendants pooled customer information from their various companies and divisions, including Full Spectrum and Countrywide Home Loans, storing customers' sensitive, personal information in a common database. This allegation is made upon information and belief, the source of which is the fact that the Full Spectrum employee in the Countrywide breach was able to access Home Loan customers' information. See also "Countrywide Financial Simplifies Lending: A fast-growing lending company with widely distributed IT shops abstracts applications as services, links them via messaging bus, and gains new business agility," Galen Gruman, Infoworld, at http://www.infoworld.com/infoworld/article/05/05/02/18FEsoacountrywide_1.html (describing Countrywide's service-oriented architecture).

47.     The pooled customer data was not stored with network, user, and application authentication and access controls sufficient to limit what network could access the data, what individual or organization role could access the data, and/or what application could access the data. In addition, Countrywide did not adequately log and monitor user activity or audit its security processes and security-sensitive devices, such as computers with USB ports capable of accepting thumb drive devices. This allegation is made upon information and belief, the source of which is reports that, in the Countrywide Breach, the employee was affiliated with Full Spectrum and yet was repeatedly able to access large volumes Home Loan customers' data, in spreadsheet format, over a two-year period, without any check on the legitimacy of his business purpose in doing so.

**F.      Countrywide's Failures to Notify Customers of the Countrywide Breach**

48.     Defendants have withheld and continue to withhold information from customers affected by the Countrywide Breach, and so are depriving those customers of critical information they need to protect themselves. This allegation is made upon information and belief, the source of which is the above-cited news reports referring to illicitly downloaded records of customers potentially numbering in the millions, compared with Countrywide's reported statement that it has notified approximately 19,000 customers.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

## VIOLATIONS OF CIVIL CODE SECTION 1770

## (CONSUMER LEGAL REMEDIES ACT)

49.     Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

50.     In violation of Civil Code section 1770 (the "CLRA"), Defendants have engaged and are engaging in unfair and deceptive acts and practices in the course of transactions with Plaintiffs, and such transactions are intended to and have resulted in the sale of services to consumers. Defendants' past and ongoing acts and practices include but are not limited to:

a.      Defendants' representations that their services have characteristics, uses, and benefits that they do not have, in violation of Civil Code section 1770(a)(5);

b.      Defendants' representations that their services are of a particular standard, quality and grade but are of another standard quality and grade, in violation of Civil Codes section 1770(a)(7);

c.      Defendants' advertisements of services with the intent not to sell those services as advertised, in violation of Civil Codes section 1770(a)(9);

d.    Defendants' representations that transactions for their services confer and involve rights, remedies and obligations that such services do not have and involve, in violation of Civil Code section 1770(a)(14).

51.    Defendants' violations of Civil Code section 1770 have damaged Plaintiffs and the other Class members and threaten additional injury if the violations continue. This damage includes the loss of the benefit of bargain of Defendants' services, which were premised, in part, on Defendants' compliance with the privacy statements and full disclosure of facts relevant to the security of Class members' information. Further, Class members are subject to identity theft to the extent that their social security numbers and other personal information were obtained in the security breach.

52.    Pursuant to Civil Code section 1782, in conjunction with the filing of this action, Plaintiffs will notify Defendants in writing of the particular violations of Civil Code section 1770 and demand that Defendants rectify the problems associated with their behavior detailed above, which violations are in violation of Civil Code section 1770.

53.    If Defendants fail to respond adequately to Plaintiffs' above-described demand within 30 days of Plaintiffs' notice, pursuant to Civil Code section 1782(b), Plaintiffs will amend the complaint to request damages, as permitted by Civil Code section 1780.

### SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### VIOLATIONS OF CIVIL CODE SECTION 17200

### (UNFAIR COMPETITION)

54.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

55.    In violation of Business and Professions Code section 17200, Defendants, with the intent to perform services, have made, disseminated, caused to be made, and caused to be disseminated untrue and misleading statements, and have done so before the public in this State of California and all other states of the United States. De-

fendants knew and, through the exercise of reasonable care, should have known that such statements were untrue and misleading.

56.     Defendants conduct in this regard is ongoing and includes, but is not limited to statements made by Defendants in their Customer Privacy Notice and online Privacy and Security Statement regarding:

        a.      Defendants' information security, privacy, and confidentiality safeguards and practices; and

        b.      Defendants' information-sharing practices within Countrywide and with third parties.

57.     By engaging in the above described acts and practices, defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Section 17200, et seq., and Plaintiffs have lost property, specifically, personal information, thereby.

58.     Defendants' acts and practices have deceived members of the consuming public.

59.     Defendants' acts and practices are unlawful in part because they violate Civil Code sections 1770, et seq., Civil Code sections 1798.82, 1798.85 and 1798.86, 1798.90.1, and 1799 through 1799.2.

60.     Plaintiffs, on behalf of themselves and on behalf of each member of the Class, seek individual restitution, injunctive relief and other relief allowed under Section 17200 et seq.

## THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

## VIOLATIONS OF CIVIL CODE SECTION 17500

## (UNTRUE AND MISLEADING STATEMENTS)

61.     Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

62.     In violation of Business and Professions Code section 17500, Defendants, with the intent to perform services, have made, disseminated, caused to be made,

and caused to be disseminated untrue and misleading statements, and have done so before the public in this State of California and all other states of the United States, and continue to do so. Defendants knew and, through the exercise of reasonable care, should have known that such statements, as alleged in paragraph 56, above, and detailed in Plaintiffs' recitations herein, above, were untrue and misleading.

63.     Plaintiffs, on behalf of themselves and on behalf of each member of the Class, seek individual restitution, injunctive relief and other relief allowed under Section 17500 et seq.

### FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### VIOLATIONS OF CIVIL CODE SECTION 1798.82

### (NOTICE OF SECURITY BREACH)

64.     Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

65.     In violation of Civil Code section 1798.82 Defendants have unreasonably delayed disclosing and have failed to disclose to Plaintiffs and Class members adequate notification regarding breaches of the security of systems containing Plaintiffs' and Class members' personal information and the acquisition by unauthorized third persons of such personal information.

66.     As a direct, proximate and legal result of Defendants' violations of Civil Code § 1798.82, the class members have been, and continue to be damaged, in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### VIOLATIONS OF THE CONSTITUTION OF THE STATE OF

### CALIFORNIA, ARTICLE I, SECTION 1

### (RIGHT TO PRIVACY)

67.     Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

68.   In violation of California Constitution, Article I, Section 1, Defendants, through the conduct alleged above, have violated Plaintiffs' and the Class members' rights to pursue and obtain privacy.

69.   As a direct, proximate and legal result of Defendants' violations of the California Constitution, the class members have been, and continue to be damaged, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, members of the Class, and/or in the public interest, pray for judgment and relief as follows:

1.   With respect to the Class claims, declaring the action to be a proper class action and designating Plaintiffs and their counsel as representatives thereof;

2.   Declaring that Defendants' acts and practices challenged herein are unlawful, unfair and/or fraudulent;

3.   An Order for full restitution of all monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted from consumers as a result of the unfair and fraudulent practices of Defendants as alleged herein.

4.   Pre-judgment interest and attorneys' fees as a result of the unfair business practices;

5.   The creation of an administrative process wherein each current and former injured customer of Defendants receives his or her losses.

6.   All appropriate declaratory and equitable relief;

7.   All such other relief as is just and necessary under the circumstances.

1  DATED:  September 19, 2008            PARISI & HAVENS LLP
2                                         KAMBEREDELSON LLC
3
4                                         By:
                                          David C. Parisi
5                                         Attorneys for plaintiffs Spencer Silverbach and
                                          Vicki Silverbach, on behalf of themselves, the
6                                         general public and all others similarly situated
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs and the class hereby demand a trial by jury.

DATED:  September 19, 2008

PARISI & HAVENS LLP
KAMBEREDELSON LLC

By:
David C. Parisi
Attorneys for plaintiffs Spencer Silverbach and
Vicki Silverbach, on behalf of themselves, the
general public and all others similarly situated

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

David C. Parisi
David C. Parisi
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, California   91403
TELEPHONE NO.: (818) 990-1299   FAX NO.: (818) 501-7852
ATTORNEY FOR *(Name):* Plaintiffs Spencer and Viki Silverbach

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, California   90012
BRANCH NAME:

**FILED**
LOS ANGELES SUPERIOR COURT

SEP 1 9 2008

JOHN A. CLARKE, CLERK

BY SHAUNYA WESLEY, DEPUTY

CASE NAME:   Silverbach v. Countrywide Financial Corp., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| x Unlimited (Amount demanded exceeds $25,000) | Limited (Amount demanded is $25,000 or less) | Counter   Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | BC398509 JUDGE: DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- Auto (22)
- Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
- Product liability (24)
- Medical malpractice (45)
- Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- Business tort/unfair business practice (07)
- Civil rights (08)
- Defamation (13)
- Fraud (16)
- Intellectual property (19)
- Professional negligence (25)
- Other non-PI/PD/WD tort (35)

**Employment**
- Wrongful termination (36)
- Other employment (15)

**Contract**
- Breach of contract/warranty (06)
- Rule 3.740 collections (09)
- Other collections (09)
- Insurance coverage (18)
- Other contract (37)

**Real Property**
- Eminent domain/Inverse condemnation (14)
- Wrongful eviction (33)
- Other real property (26)

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38)

**Judicial Review**
- Asset forfeiture (05)
- Petition re: arbitration award (11)
- Writ of mandate (02)
- Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- Antitrust/Trade regulation (03)
- Construction defect (10)
- x Mass tort (40)
- Securities litigation (28)
- Environmental/Toxic tort (30)
- Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- RICO (27)
- Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- Partnership and corporate governance (21)
- Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [x] Large number of separately represented parties   d. [x] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [x] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive

4. Number of causes of action *(specify):* Five: 1) Viol. of B&P s. 17200; 2) Viol. of B&P s. 17500; 3) Viol. CLRA, etc

5. This case [x] is [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 19, 2008

David C. Parisi
(TYPE OR PRINT NAME)                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal Solutions Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

| SHORT TITLE: Silverbach v. Countrywide Financial Corp., et al. | CASE NUMBER: BC398509 |
| --- | --- |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES   CLASS ACTION? [X] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 10 [ ] HOURS/ [X] DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked.
For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (See Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- | --- |
| **Auto Tort** | Auto (22) | [ ] A7100 | Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110 | Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | [ ] A6070 | Asbestos Property Damage | 2. |
| | | [ ] A7221 | Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260 | Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 | Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240 | Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250 | Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230 | Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270 | Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220 | Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | [X] A6029 | Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005 | Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010 | Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013 | Fraud (no contract) | 1., 2., 3. |

| LACIV 109 (Rev. 01/07)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION** | LASC, rule 2.0<br>Page 1 of 4<br>LA-481 |
| --- | --- | --- |

SHORT TITLE: Silverbach v. Countrywide Financial Corp., et al.

CASE NUMBER

| A<br>Civil Case Cover<br>Sheet Category No. | | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>- See Step 3 Above |
|---|---|---|---|
| Professional Negligence (25) | ☐ A6017 | Legal Malpractice | 1., 2., 3. |
| | ☐ A6050 | Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025 | Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination (36) | ☐ A6037 | Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024 | Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109 | Labor Commissioner Appeals | 10. |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 | Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008 | Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019 | Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028 | Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002 | Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012 | Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage (18) | ☐ A6015 | Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009 | Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031 | Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027 | Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300 | Eminent Domain/Condemnation   Number of parcels _____ | 2. |
| Wrongful Eviction (33) | ☐ A6023 | Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018 | Mortgage Foreclosure | 2., 6. |
| | ☐ A6032 | Quiet Title | 2., .6. |
| | ☐ A6060 | Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer - Commercial (31) | ☐ A6021 | Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer - Residential (32) | ☐ A6020 | Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer - Drugs (38) | ☐ A6022 | Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108 | Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115 | Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

Left margin labels (top to bottom): Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.) · Employment · Contract · Real Property · Unlawful Detainer · Judicial Review

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

| SHORT TITLE: Silverbach v. Countrywide Financial Corp., et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ / Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Silverbach v. Countrywide Financial Corp., et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE [X]1. [X]2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 4500 Park Granada |
|---|---|
| CITY: Calabasas | STATE: CA | ZIP CODE: 91302 | Def. Countrywide in LA County |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Los Angeles Superior Court</u> courthouse in the <u>CCW</u> District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>Sept. 19, 2008</u>



(SIGNATURE OF ATTORNEY/FILING PARTY)

David C. Parisi

---

## PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

---

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PATRICK REIST, and
ERIC AND MARYBETH
ROTH

         Plaintiffs,

v.

COUNTRYWIDE HOME LOANS, INC.,
COUNTRYWIDE FINANCIAL
CORPORATION, and
BANK OF AMERICA CORPORATION,

         Defendants.

Civil Action No.    **1:08 C V 831**



FILED
JAMES BONINI
CLERK

08 NOV 26 AM 11: 29

L. BECKWIL

**J. HOGAN**

**NOTICE OF REMOVAL**

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION:

PLEASE TAKE NOTICE THAT Defendants Countrywide Home Loans, Inc.,

Countrywide Financial Corporation ("Countrywide Financial"), and Bank of America

Corporation ("Bank of America"), by their undersigned counsel, hereby remove this action from

the Hamilton County, Ohio, Court of Common Pleas to the United States District Court for the

Southern District of Ohio, Western Division. Removal is based on 28 U.S.C. §§ 1332, 1441 and

1446, as amended in relevant part by the Class Action Fairness Act of 2005 ("CAFA"), and

authorized by 28 U.S.C. § 1453.

In support of this Notice of Removal, Countrywide Home Loans, Inc., Countrywide

Financial, and Bank of America state as follows:

1.      On or about October 23, 2008, a civil action captioned *Patrick Reist and Eric and*

*Marybeth Roth v. Countrywide Home Loans, Inc.*, *et al.*, No. A0809782 (Court of Common

Pleas, Hamilton County, Ohio) ("State Court Action"), was commenced by the filing of a Complaint in the Hamilton County, Ohio, Court of Common Pleas. Pursuant to 28 U.S.C. § 1446(a), Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America have attached copies of all process, pleadings and orders served on it in the above-referenced action as Exhibit 1 to this Notice of Removal.

2.      Countrywide Home Loans, Inc., and Countrywide Financial were served on November 3, 2008. Bank of America was served on October 31, 2008. Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America are filing this Notice of Removal within 30 days of the date on which they were served with the Complaint and summons.

3.      The Complaint alleges that Plaintiff Patrick Reist and Plaintiffs Eric and Marybeth Roth are individuals who reside in Hamilton County, Ohio. See Complaint ¶ 1. Upon information and belief, Plaintiffs Patrick Reist, Eric Roth, and Marybeth Roth are citizens of the state of Ohio for purposes of the diversity jurisdiction statute, 28 U.S.C. § 1332(a)(1).

4.      The Complaint alleges that Defendant Countrywide Home Loans is a New York corporation, however, it is a Delaware corporation. The Complaint correctly states that Defendants Countrywide Financial Corporation and Bank of America Corporation are Delaware corporations. See Complaint ¶¶ 2-4. While the Complaint does not include the principal place of business for any of the Defendants, Countrywide Home Loans, Inc. and Countrywide Financial have their principal place of business in Calabasas, California, and Bank of America has its principal place of business in Charlotte, North Carolina.

5.      Plaintiffs purport to bring their action as a class action, on behalf of a putative class defined to include "[a]ll persons or entities in the State of Ohio (A) (1) who are or were Countrywide Home Loan mortgage holders, or (2) who applied for a Countrywide Home Loan

mortgage, or (3) who submitted information to Countrywide Home Loans as a part of any mortgage application process, (B) who have had or allege to have had personal or financial dat[a] stolen or placed at risk of being stolen from Countrywide Home Loans's computer systems, and (C) who were or may be damaged thereby." Complaint ¶ 38. Accordingly, this case is brought as a "class action" within the meaning of 28 U.S.C. § 1332(d)(1)(B).

6.     The Complaint makes clear that the putative class is intended to include all persons in the state of Ohio who had a loan from Countrywide Home Loans, Inc., applied for a loan from Countrywide Home Loans, Inc., or submitted information while applying for a loan from Countrywide Home Loans, Inc. According to Plaintiffs' allegations, the putative class will include approximately 40,000 people. See Complaint ¶ 40. Accordingly, in this case, Plaintiffs and members of the putative class are citizens of a state different from the state of incorporation of each Defendant or the state where the principal place of business of each Defendant is located, within the meaning of 28 U.S.C. § 1332(d)(2)(A).

7.     Plaintiffs, in their individual capacity and on behalf of the putative class, assert claims against Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America for negligence, breach of express contract, breach of implied contract, breach of the covenant of good faith and fair dealing, violation of the Ohio Consumer Sales Practices Act, and breach of fiduciary duty. See Complaint ¶¶ 49-76. Plaintiffs allege that they provided personal and financial information to Countrywide as part of their mortgage applications. See Complaint ¶¶ 26-27. Plaintiffs further claim that an employee of Countrywide collected certain data from the databases and computer systems of Countrywide and sold it to a third party. See Complaint ¶¶ 11-22. The Plaintiffs seek remedies for the alleged failure of Countrywide "to adequately safeguard personal and private financial information provided to Countrywide by or on behalf of

- 3 -

the plaintiffs." Id. at ¶ 10. Plaintiffs also allege that they received notice that this personal and financial information was among the data stolen from the computer systems. See Complaint ¶¶ 28-29 & Ex. A, B attached thereto.

8.      On each of their claims, Plaintiffs allege that they and the putative class suffered damages, including but not limited to: "the cost of credit card monitoring services, the cost of identity theft insurance, costs to obtain credit reports, fees charged by vendors that were expecting timely payment through debit and credit cards but did not receive payment, fraudulent charges on their accounts, unpaid time off from work, notary fees, wire fees, and fees t[o] change[] drivers license numbers." See Complaint ¶ 45(A). Plaintiffs further allege damages in the form of "fear and apprehension of fraud," "damage to their credit history," "loss of privacy," and "other economic and non-economic damages." See Complaint ¶ 45(C), (I), (J), (K).

9.      Plaintiffs' complaint seeks injunctive relief in the form of "credit monitoring and credit card monitoring services," the "provision of identity theft insurance," and requiring Countrywide to "enhance the security of their computer system[s] and…institut[e] appropriate corporate-wide security policies, procedures, and processes to minimize the likelihood of intrusions in the future." See Complaint ¶ 46(A), (B), (C). Plaintiffs allege that money damages alone are "insufficient to redress the irreparable harm that class members face" and therefore, injunctive measures are included as a part of the relief that they seek. See Complaint ¶ 47.

## STATUTORY REQUIREMENTS – CLASS ACTION FAIRNESS ACT

10.     This Court has jurisdiction.  Pursuant to 28 U.S.C. § 1332, as amended by CAFA, a putative "class action" commenced after the effective date of CAFA may be removed to the United States District Court embracing the state court where the action was filed if (a) any member of the putative class is a citizen of a state different from any defendant, and (b) the

- 4 -

amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. Complete diversity among parties is not required. 28 U.S.C. § 1332(d)(2)(A).

11.    CAFA is applicable to the State Court Action because it was commenced after the effective date of the Act. See Notes to 28 U.S.C. §§ 1332 & 1453 ("The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act,"–*i.e.*, February 18, 2005) (citing Pub. L. 109-2, § 9, 119 Stat. 14).

12.    Pursuant to the express language of the CAFA, the amount in controversy in a putative class action filed on or after February 18, 2005 is determined by aggregating the alleged damages with respect to the claims of the named plaintiff and the claims of the alleged class members. 28 U.S.C. § 1332(d)(6). Pursuant to this provision, Congress substantially changed the scope of federal jurisdiction, both original and removal jurisdiction, so as to facilitate and favor removal of purported class actions to federal court. The requirements for jurisdiction are met in this case.

13.    The State Court Action is an alleged "class action" within the meaning of CAFA because it is a "civil action filed under" Ohio Rule of Civil Procedure 23 – Ohio's analog to Fed. R. Civ. P. 23 and a "rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B), 1453(a). Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America deny, however, that this case should be certified as a class action, and expressly reserve their right to oppose any motion for class certification filed in this action.

14.    Citizenship of Parties. The requisite diversity of citizenship exists under 28 U.S.C. §§ 1332(d)(2) and (d)(7). As set forth in Paragraphs 3-4 above, Countrywide Home Loans, Inc. and Countrywide Financial are Delaware corporations with their principal place of

- 5 -

business in California. Bank of America is a Delaware corporation with its principal place of business in North Carolina. By contrast, all of the named plaintiffs are citizens of the State of Ohio. Thus, the Defendants are citizens of different states from at least one class member.

15. <u>Amount in Controversy</u>. Although Plaintiffs have not alleged a specific amount in controversy, based on a fair reading of the allegations and purported damages of Plaintiffs' Complaint, Plaintiffs on their own behalf and on behalf of the members of the putative statewide class are allegedly seeking to recover more than $5 million in this action. Therefore, the amount in controversy requirement is satisfied. Under 28 U.S.C. § 1332(d), as amended by CAFA, the amount in controversy in a putative class action is determined by aggregating the amount allegedly at issue on behalf of all members of the alleged class. 28 U.S.C. § 1332(d)(6). While Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America deny that Plaintiffs or any putative class member is entitled to recover in any amount, and specifically deny that Plaintiffs or any putative class member is entitled to the relief in the various forms and amounts sought, the Complaint's allegation of a putative class and the relief sought put at issue an aggregate amount in controversy of more than $5,000,000.00, exclusive of interest and costs. See Faller Declaration attached as Exhibit 2.

16. A defendant seeking to remove an action to federal court has the burden to show by a preponderance of the evidence that the amount in controversy requirement for exercise of diversity jurisdiction has been met; however, this standard does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount in controversy requirement, as such a burden might well require the defendant to research, state, and prove the plaintiff's claim for damages. See <u>Hayes v. Equitable Energy Resources Co.</u>, 266 F.3d 560 (6th Cir. 2001); <u>Gafford v. Gen'l Elec. Co.</u>, 997 F.2d 150 (6th Cir.

- 6 -

1993). CAFA does not alter this burden. See e.g., Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005).

17. Further, punitive damages and injunction-related costs may be considered in the amount in controversy calculation. See e.g., Hayes v. Equitable Energy Resources Co., 266 F.3d 560 (6th Cir. 2001) (punitive damages); Pennsylvania R. Co. v. City of Girard, 210 F.2d 437, 439 (6th Cir. 1954) (injunction-related costs).

18. In actions seeking declaratory or injunctive relief, the amount in controversy should be determined "from the amount in controversy of the plaintiff, with a focus on the economic value of the rights he seeks to protect." Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro, 129 Fed. Appx. 194, 196 (6th Cir. 2005) (attached as Appendix A); Buckeye Recyclers v. CHEP USA, 228 F.Supp.2d 818 (S.D.Ohio 2002).

19. The Complaint alleges compensatory damages including, but not limited to "credit monitoring services, the cost of identity theft insurance, costs to obtain credit reports, fees charged by vendors that were expecting timely payment through debit and credit cards but did not receive payment, fraudulent charges on their account, unpaid time off from work, notary fees, wire fees, and fees t[o] change drivers license numbers;" and other unspecified "economic and non-economic damages." See Complaint at ¶45(A) and (K).

20. The Complaint also seeks punitive damages. Id. at p. 12 (prayer for relief).

21. With respect to injunctive relief, the Complaint alleges that the putative class is also entitled to "the provision of credit monitoring or credit card monitoring services," "identity theft insurance," and enhanced security of the Defendants' computer system. Id. at ¶ 46(A) – (C).

- 7 -

22.     In examining Plaintiffs' alleged compensatory and/or injunctive relief related to credit monitoring alone, the amount in controversy more likely than not exceeds the requisite $5,000,000. See Faller Declaration, Exhibit 2.

23.     Based on Countrywide Home Loans, Inc., Countrywide Financial Corporation, and Bank of America's investigation, at least $7,000,000 is in controversy in this case based only on the value to Plaintiffs of the cost of credit monitoring. See id.

24.     The value of credit monitoring for a minimum of one year for each of the alleged 40,000 members of the putative class is more than $7,000,000. Therefore, Plaintiffs' request for credit monitoring alone places more than $5,000,000, exclusive of interest and costs, in controversy in this action.

25.     In addition to damages related to these costs, Plaintiffs allege additional compensatory and punitive damages as well as other injunctive relief in the case. See Complaint at p. 12 (prayer for relief), ¶¶ 45-46.

26.     While Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America deny that any putative class member is entitled to recover any relief and deny that the case is appropriate for class certification, Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America have shown that based on the allegations of the Complaint that the aggregate amount in controversy in this putative statewide class action exceeds $5,000,000 exclusive of interest and costs. See Faller Declaration, Exhibit 2.

27.     Jurisdiction in this case is mandatory, not discretionary, under the CAFA because it does not meet the standard for discretionary jurisdiction established in 28 U.S.C. § 1332(d)(3).

28.    Although Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America do not bear the burden to show that CAFA's exceptions to jurisdiction in 28 U.S.C. § 1332(d) do not apply, none of those exceptions are applicable here.

29.    By filing this Notice of Removal, Countrywide Home Loans, Countrywide Financial, and Bank of America do not waive any defenses which may be available to the claims asserted by Plaintiffs, or concede that Plaintiffs have pleaded any claim upon which relief can be granted.

## PROCEDURAL REQUIREMENTS

30.    Removal to Proper Court. This Court is part of the "district and division" embracing the place where this action was filed--Cincinnati, Ohio. 28 U.S.C. § 1446(a).

31.    Removal is Timely. Defendants were served with the Summons and Complaint on October 31, 2008 and November 3, 2008, a copy of which is attached hereto as Exhibit 1. Receipt of the Summons and Complaint was the first notice of the State Court Action received by Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America. This Notice of Removal is being filed with the United States District Court for the Southern District of Ohio on November 26, 2008, within 30 days after receipt of the State Court Action Summons and Complaint.

32.    Pleadings and Process. Attached hereto as Exhibit 1 is a copy of all process, pleadings and orders served in the State Court Action. See 28 U.S.C. § 1446(a).

33.    Notice. Attached hereto as Exhibit 3 is a copy of the Notice to Plaintiffs of Removal, which will be promptly served upon Plaintiffs' counsel and filed with the Clerk of the Court of Common Pleas, Hamilton County, Ohio. See 28 U.S.C. §§ 1446(a), (d). Countrywide Home Loans, Inc., Countrywide Financial, and Bank of America will also file with the Clerk of

- 9 -

the Court of Common Pleas of Hamilton County, Ohio a Notice of Filing of Notice of Removal,

pursuant to 28 U.S.C. § 1446(d). A copy of the Notice of Filing of Notice of Removal is

attached hereto as Exhibit 4.

34.     Consent to Removal. Consent to removal is not required under CAFA.

35.     Signature. This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. See

28 U.S.C. § 1446(a).

36.     Based upon the foregoing, this Court has jurisdiction over this matter pursuant to

28 U.S.C. § 1332, as amended by CAFA, and this action properly is removed to this Court.

WHEREFORE, this action should proceed in the United States District Court for the

Southern District of Ohio, Western Division, as an action properly removed thereto.

DATE: November 26, 2008

Susan Grogan Faller, Esq.
Ohio Registration No. 0017777
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
Telephone: 513-651-6941
Fax: 513-651-6981
sfaller@fbtlaw.com

*Trial Attorney for Defendants*

and

REED SMITH LLP
Sharon L. Rusnak, Esq.
*Of Counsel*
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-4588
Facsimile: (412) 288-3063
srusnak@reedsmith.com

*Attorneys for Defendants*

- 10 -

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of this Notice of Removal was served by regular U.S. mail, first-class postage prepaid, upon the counsel for plaintiff listed below this 26th day of November, 2008.

Eric C. Deters
5247 Madison Pike
Independence, KY 41051-7941

Attorney for Defendants

CINLibrary 0115934.0562897 1914588v1

# EXHIBIT F

1        SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              FOR THE COUNTY OF LOS ANGELES

3   DEPARTMENT 309              HON. ANTHONY J. MOHR, JUDGE

4   DANIEL WEBER,                    )

5              PLAINTIFF,            )   NO. BC397636
                                     )
6       VS.                          )
                                     )
7   COUNTRYWIDE FINANCIAL            )
    CORPORATION,                     )
8                                    )
               DEFENDANTS.           )
9   ─────────────────────────────   )

10

11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                MONDAY, DECEMBER 15, 2008

15

16   APPEARANCES:

17   FOR PLAINTIFF:          PANISH SHEA & BOYLE LLP
                             BY:  RAHUL RAVIPUDI, ESQ.
18                                SPENCER R. LUCAS, ESQ.
                             11111 SANTA MONICA BOULEVARD
19                           SUITE 700
                             LOS ANGELES, CALIFORNIA 90025
20

21   FOR DEFENDANT:          REED SMITH LLP
                             BY:  NATASHA SUNG, ESQ.
22                           355 SOUTH GRAND AVENUE
                             SUITE 2900
23                           LOS ANGELES, CALIFORNIA 90071

24

25

26

27                          CLAUDIA VECCHI-CORTEZ, CSR NO. 11630
                            OFFICIAL REPORTER
28

COPY

RECEIVED

DEC 2 4 2008

Panish, Shea et al

```
 1   CASE NUMBER              BC397636
 2   CASE NAME:               DANIEL WEBER VS. COUNTRYWIDE
 3                            FINANCIAL CORPORATION
 4   LOS ANGELES, CALIFORNIA  MONDAY, DECEMBER 15, 2008
 5   DEPARTMENT 309           HON. ANTHONY J. MOHR, JUDGE
 6   REPORTER:                CLAUDIA VECCHI-CORTEZ,
 7                            CSR NO. 11630
 8   TIME:                    A.M. SESSION
 9
10
11        THE COURT:  GOOD MORNING.  WEBER AGAINST
12   COUNTRYWIDE.  CAN I GET YOUR APPEARANCES, PLEASE.
13        MR. RAVIPUDI:  RAHUL RAVIPUDI FOR PLAINTIFF.
14        MR. LUCAS:  SPENCER LUCAS ALSO FOR THE PLAINTIFF.
15        MS. SUNG:  NATASHA SUNG FOR DEFENDANT.
16        THE COURT:  OKAY.  WELL, TELL ME ABOUT THIS CASE.
17   I MAY HAVE SEEN YOU ONCE BEFORE.  BUT I DON'T SEE ANY
18   NOTES ABOUT IT.
19        MR. RAVIPUDI:  NO.  WE ARE BRAND-NEW.
20        THE COURT:  OKAY.  GOOD.  THEN IT'S CORRECT THAT I
21   DON'T HAVE THE FILE FOR YOU.  ALL RIGHT.  WHAT HAPPENED
22   HERE?
23        MR. RAVIPUDI:  THIS IS THE CASE IN WHICH A SENIOR
24   ANALYST, A NINE-AND-A-HALF-YEAR EMPLOYEE OF COUNTRYWIDE
25   ACCESSED UNSECURED DATABASES AND SERVERS THROUGHOUT
26   COUNTRYWIDE AT AN UNSECURED COMPUTER, GOT THE PERSONAL
27   INFORMATION OF TENS OF THOUSANDS, IF NOT A COUPLE OF
28   MILLION CONSUMERS' FILES AND SOLD THEM OUT ON THE BLACK
```

1   MARKET SO THAT IT CAN BE USED FOR IDENTITY THEFT

2   PURPOSES.

3        THE COURT:  WHEN DID THIS HAPPEN?

4        MR. RAVIPUDI:  WELL, OVER A TWO-YEAR PERIOD.

5        MR. LUCAS:  RIGHT.  AND THEN THERE WAS A CRIMINAL

6   COMPLAINT FILED IN JULY OF 2008, YOUR HONOR.

7        THE COURT:  OKAY.

8        MR. RAVIPUDI:  SO COUNTRYWIDE WANTS THE -- ONCE

9   THE CRIMINAL INVESTIGATION WAS INITIATED, COUNTRYWIDE

10  SENT NOTICES TO ALL OF ITS CONSUMERS.  "YOUR IDENTITY

11  WAS IN FACT STOLEN AND HEREIN LIES THE CLASS ACTION

12  LAWSUIT."

13       THE COURT:  OKAY.  AND SO WHAT IS THE CAUSE OF

14  ACTION? BECAUSE YOU ARE NOT SAYING THAT COUNTRYWIDE KNEW

15  AND APPROVED OF THIS GUY DOING IT, ARE YOU?

16       MR. RAVIPUDI:  NO.  IT'S MORE OF A KNOWN ISSUE OF

17  NEGLIGENCE AND ALSO FALSE REPRESENTATIONS AS TO

18  ADVERTISING.  FIRST, THEY SAID THAT ALL OF THEIR

19  CONSUMERS' IDENTITIES WOULD BE SAFE.  "WE TAKE YOUR

20  SECURITY AND YOUR PRIVACY VERY SERIOUSLY."  AND THESE

21  ARE ALL IN PUBLIC ADVERTISEMENTS.

22       THE COURT:  I'M SURE IT IS.  BUT I MEAN, A

23  CORPORATION IS MADE UP OF INDIVIDUALS, AND IF SOME

24  INDIVIDUAL GETS IN THE CORPORATION AND HAS, YOU KNOW,

25  EVIL IN HIS HEART, IF YOU WILL, AND DOES SOMETHING LIKE

26  THIS, HOW CAN YOU SAY COUNTRYWIDE IS FRAUDULENT UNLESS

27  THEY NEGLIGENTLY HIRED THEM?

28       MR. RAVIPUDI:  AND WE DON'T HAVE ANY INTENTIONAL

1   ACT FRAUDULENT LIKE THAT.  WHAT WE DO HAVE IS A CAUSE OF

2   ACTION FOR NEGLIGENCE AND A SECOND CAUSE OF ACTION FOR

3   17200, 17500; SO UNDER 17 --

4        THE COURT:  OKAY.  LET ME STOP YOU BECAUSE I'M

5   GOING TO MAKE A DISCLOSURE TO YOU WHICH IS I HAVE A CD

6   AT COUNTRYWIDE, AND I'VE HAD IT FOR PROBABLY A GOOD TWO

7   YEARS NOW, MAYBE EVEN LONGER.  SO ARGUABLY I'M A MEMBER

8   OF YOUR CLASS.

9        MR. RAVIPUDI:  IF YOU DIDN'T RECEIVE NOTICE THAT

10  YOUR IDENTITY WAS STOLEN, YOU WOULDN'T BE.

11       THE COURT:  I DON'T REMEMBER, TO BE FRANK WITH

12  YOU.  I GOT ONE RECENTLY FROM SOME OTHER BANK AND A

13  BROKERAGE HOUSE.  I DON'T REMEMBER IF COUNTRYWIDE SENT

14  ME ONE.  WHAT I WILL TELL YOU IS I'VE HAD NO EXPERIENCE

15  WITH IDENTITY THEFT; AND IF, IN FACT, I'M A MEMBER OF

16  THE CLASS, I WILL OPT OUT; BUT I WANTED YOU TO KNOW

17  THAT.

18       MR. RAVIPUDI:  I APPRECIATE THAT.

19       THE COURT:  OKAY.  NOW, LET ME ASK YOU.  17500

20  IS -- WELL, LET'S START WITH 17200; LIKELY TO DECEIVE

21  UNLAWFUL, UNFAIR.  YOU KNOW, AGAIN FRAUDULENT.  I DON'T

22  SEE HOW NEGLIGENT HIRING YOU CAN BE LIABLE FOR 17200

23  BECAUSE SOMEBODY IN YOUR FIRM --

24       MR. RAVIPUDI:  AND IT'S NOT A NEGLIGENT HIRING

25  ISSUE HERE.  WHAT WE'RE TALKING ABOUT IS THE CONCEPT OF

26  ACTUALLY HAVING -- MAKING THE ACTIVE REPRESENTATIONS TO

27  THE PUBLIC THAT "WE TAKE YOUR SECURITY VERY SERIOUSLY."

28  BUT ON THE FLIP SIDE, HAVING COMPUTER TERMINALS IN THEIR

4

1   OFFICES WHERE YOU CAN JUST STICK A FLASH DRIVE IN THERE

2   AND DOWNLOAD THE PERSONAL INFORMATION OF TENS OF

3   THOUSANDS, IF NOT, MILLIONS OF CONSUMERS.   SOCIAL

4   SECURITY NUMBERS, BANK INFORMATION -- THINGS LIKE THAT.

5        THE COURT:   OKAY.   GOT IT.   SO WHAT THEY SAY IS --

6   AND DO YOU HAVE COPIES OF THE ADS WITH YOU?

7        MR. RAVIPUDI:   WE CITED TO SOME OF THEM IN OUR

8   COMPLAINT, BUT I DIDN'T BRING THE ACTUAL ADS WITH US.

9        THE COURT:   OKAY.   BECAUSE, AGAIN, IF THE ADS SAID

10   "YOUR PERSONAL DATA IS ON A SERVER AND ONLY MEMBERS OF

11   THE BOARD OF DIRECTORS CAN FIND IT OR SOME SENIOR,

12   SENIOR PERSON WHO'S BEEN WITH US AND A TRUSTED EMPLOYEE

13   FOR 30 YEARS OR SOMETHING," THAT'S ONE THING.   BUT IF IT

14   SAYS "WE TAKE YOUR PRIVACY SERIOUSLY," AND THE PRIVACY

15   DATA CAN BE ACCESSED FROM ANY TERMINAL IN THE BANK, THEN

16   OBVIOUSLY THAT'S A PROBLEM.

17            ON THE OTHER HAND, IF ANY TERMINAL IN THE

18   BANK CAN ACCESS IT, ASSUMING YOU KNOW THE RIGHT CODES

19   AND ONLY THE TRUSTED PEOPLE KNOW THE RIGHT CODES, AND IT

20   JUST SO HAPPENS THAT SOME GUY IS A BAD APPLE, AGAIN, I'M

21   NOT SO SURE THAT'S A 17200 VIOLATION.

22        MR. RAVIPUDI:   IT'S THE FORMER.   IT'S NOT THE

23   LATTER.   THIS IS A GUY WHO -- IT COULD HAVE BEEN THE

24   CLEANING GUY WHO CAME IN AND STUCK A FLASH DRIVE IN

25   THERE AND DOWNLOADED THE INFORMATION.   THERE WERE NO

26   CODES REQUIRED; THERE WAS NOTHING REQUIRED.

27        THE COURT:   OKAY.   LET ME HEAR FROM THE

28   DEFENDANTS.

1      MS. SUNG:  WELL, THERE'S ABOUT 34 OTHER FEDERAL

2   CASES ALREADY IN THE M.D.L., THE WESTERN DISTRICT OF

3   KENTUCKY; AND 11 OF THOSE ARE CALIFORNIA FEDERAL

4   DISTRICT COURT CASES WHICH CONTAIN CLAIMS THAT

5   COMPLETELY OVERLAP THE CLAIMS HERE.  SO OUR GOAL HERE IS

6   TO ASK THE COURT TO KIND OF FOLLOW THE SCHEDULING

7   REGARDING HEARINGS AND DISCOVERY OF THE M.D.L. COURTS;

8   SAVE JUDICIAL RESOURCES AND JUST STREAMLINE THE CASES

9   TOGETHER.

10      MR. RAVIPUDI:  WELL, TWO THINGS.  FIRST, WE'VE GOT

11   A NATIONWIDE CLASS ACTION BROUGHT HERE IN THE STATE OF

12   CALIFORNIA.  WE'VE SUED COUNTRYWIDE ONLY, WHICH IS A

13   CALIFORNIA CORPORATION.

14      THE COURT:  WELL, WHAT IS THE M.D.L.?  IS THAT

15   COUNTRYWIDE OR SOMEBODY ELSE?

16      MR. RAVIPUDI:  COUNTRYWIDE, BANK OF AMERICA

17   CORPORATION, FULL SPECTRUM LENDING, OTHER ENTITIES

18   WITHIN COUNTRYWIDE; SO THERE'S A NUMBER OF DIFFERENT

19   PARTIES.  AND BANK OF AMERICA IS, OF COURSE, A NORTH

20   CAROLINA CORPORATION.  AND SO I DON'T KNOW EXACTLY WHAT

21   ISSUES THEY ARE GOING TO DEAL WITH.  THEY JUST GOT

22   M.D.L. PUT IN A FEDERAL DISTRICT COURT IN KENTUCKY.

23           IT'S -- WE'RE OF THE BELIEF THAT GIVEN THAT

24   THIS IS A CALIFORNIA ACT BY A CALIFORNIA EMPLOYEE

25   INVOLVING A CALIFORNIA CORPORATION THAT THE DISTRICT

26   COURT IN KENTUCKY MAY BE WELL SERVED BY SEEKING THE

27   GUIDANCE OF THIS COURT RATHER THAN THE CONVERSE.

28           ALSO, WE'RE HERE.  I DON'T KNOW EXACTLY HOW

1   WE CAN STREAMLINE THE CASES TOGETHER AND WHAT'S BEING

2   PROPOSED TO THAT END, BUT IF ANYTHING --

3         THE COURT:  BUT IS YOUR NATIONWIDE CLASS ASSUMED

4   IN THE M.D.L.?  YOU HAVE A NATIONWIDE CLASS HERE AGAINST

5   COUNTRYWIDE.

6         MR. RAVIPUDI:  CORRECT.

7         THE COURT:  IS THERE A SIMILAR NATIONWIDE CLASS

8   ALLEGED IN THE M.D.L.?

9         MR. RAVIPUDI:  THERE ARE NATIONWIDE CLASS ACTIONS

10  ALLEGED IN THE M.D.L.  WHETHER THEY ARE SIMILAR, THEY'RE

11  ALLEGING DIFFERENT CAUSES OF ACTION.  SOME OF THEM

12  INVOLVE FEDERAL QUESTIONS.  NONE OF OURS DO.

13        THE COURT:  OKAY.  WELL, WOULD YOU AGREE THAT THE

14  DISCOVERY IN THE M.D.L. CAN BE USED IN THIS CASE SO THAT

15  YOU DON'T HAVE TO START REPEATING YOUR DISCOVERY?

16        MR. RAVIPUDI:  I GUESS IT DEPENDS.  I MEAN, THE

17  FLIP SIDE -- I ALWAYS THINK OF THE FLIP SIDE WHICH IS

18  COULD THE DISCOVERY WE USE HERE BE USED IN THE M.D.L.

19  SINCE WE'RE HERE AND THE M.D.L. HASN'T EVEN HAD A

20  HEARING?

21        THE COURT:  WHAT DO YOU THINK?

22        MS. SUNG:  THE M.D.L. HAS THE SAME EXACT CAUSES OF

23  ACTION.  AND WE BELIEVE THAT --

24        THE COURT:  SO THE DISCOVERY YOU USE HERE YOU

25  WOULD AGREE COULD BE USED IN THE M.D.L.?

26        MS. SUNG:  RIGHT.  BUT, I MEAN, THERE'S A JUDGE

27  THERE WHO IS IN CHARGE OF 34 CASES.

28        THE COURT:  WELL, I UNDERSTAND THAT; I UNDERSTAND

1  THAT.  I MEAN, OBVIOUSLY THAT JUDGE CAN DECIDE "NO,

2  THAT'S NOT THE CASE."  BUT AS FAR AS YOU'RE CONCERNED,

3  YOU WOULD TELL THAT JUDGE THAT THE DISCOVERY HERE COULD

4  BE USABLE TO THE M.D.L.  YOU WOULD NOT OBJECT TO THAT;

5  IS THAT CORRECT?

6      MS. SUNG:  RIGHT.

7      THE COURT:  OKAY.  WELL, THAT'S A GOOD START.

8      MS. SUNG:  THERE'S ALSO AN ISSUE, YOUR HONOR,

9  OF -- A THRESHOLD ISSUE OF WHETHER THE PLAINTIFF HERE

10 HAS EVEN BEEN DAMAGED.  AND WE INTEND TO SUBMIT A MOTION

11 TO DISMISS IN THE M.D.L. AND OUR DEMURRER HERE BECAUSE

12 THE HARM ALLEGED IS THE FEAR OF FUTURE IDENTITY THEFT,

13 WHETHER IT HAPPENS OR NOT.  AND WE'RE GOING TO ARGUE

14 THAT THAT KIND OF HARM IS NOT SOMETHING WHICH YOU CAN

15 RECOVER UNDER THESE CLAIMS THAT THEY HAVE ALLEGED HERE.

16     THE COURT:  YOU MEAN FEAR OF IDENTITY THEFT?

17     MS. SUNG:  RIGHT.

18     THE COURT:  WELL, I AGREE THAT UNDER 17200 THERE

19 MAY BE -- THAT MIGHT BE -- WELL, LET'S BACK UP A MINUTE.

20 LET'S BACK UP.  THEY PROBABLY WOULDN'T GET RESTITUTION

21 OF ANYTHING.  BUT THEY MIGHT BE ABLE TO GET AN

22 INJUNCTION, ASSUMING THEY'RE RIGHT.  AS FAR AS THE

23 DAMAGES GO, THEY HAVE TO HAVE LOST MONEY OR PROPERTY.

24 MAYBE THEY HAVEN'T LOST MONEY, BUT THERE'S A PROPERTY

25 INTEREST IN YOUR PRIVACY INFORMATION.  I'M NOT READY TO

26 SAY CATEGORICALLY THERE IS NONE.  WE'LL BRIEF THAT AND

27 HAVE A LITTLE QUESTION.

28     MS. SUNG:  RIGHT.  THAT'S WHY WE'RE THINKING THAT

1  A BRIEFING ON THAT THRESHOLD ISSUE WOULD BE MORE HELPFUL

2  AND MIGHT SAVE JUDICIAL RESOURCES BEFORE DISCOVERY

3  STARTS GOING REGARDING CLASS CERTIFICATION AND

4  LIABILITY.

5      MR. RAVIPUDI:  A COUPLE OF THOUGHTS ON THAT.

6      THE COURT:  YEAH.

7      MR. RAVIPUDI:  FIRST, JUST TO TOUCH ON YOUR

8  REFERENCE TO RESTITUTION.  I THINK THAT RESTITUTION

9  WOULD BE A VALID RELIEF HERE.

10     THE COURT:  WHAT DID THEY LOSE?

11     MR. RAVIPUDI:  WELL, I MEAN, FIRST IT'S NOT A

12 QUESTION OF WHAT THEY'VE LOST.  IT'S WHAT COUNTRYWIDE

13 GAINED.  THEY --

14     THE COURT:  NO, NO, NO.  IT HAS TO BE FROM THE

15 PLAINTIFF'S POCKET INTO THE DEFENDANT'S POCKET.

16     MR. RAVIPUDI:  IT IS.  THEY ACTUALLY PUT THEIR

17 MONEY IN COUNTRYWIDE.  THEY PUT THEIR MONEY IN THERE

18 WHEN THEY WENT AND BOUGHT --

19     THE COURT:  THEY HAVEN'T LOST THEIR MONEY,

20 COUNSEL.  THEY HAVEN'T LOST THEIR MONEY.  SO THAT'S NOT

21 GOING TO WORK.  THAT ARGUMENT IS A NONSTARTER.

22     MR. RAVIPUDI:  AND THEN THE SECOND ISSUE IS THERE

23 IS POSSIBLY GOING TO BE A SUBCLASS WITH RESPECT TO

24 PEOPLE WHO ACTUALLY HAVE HAD THEIR IDENTITY STOLEN; SO

25 THERE IS GOING TO BE AN ISSUE THERE.  BUT WITH RESPECT

26 TO THE THRESHOLD ISSUE OF DAMAGES, THAT'S AN ISSUE THAT

27 SHOULD BE RESOLVED AFTER THE CLASS IS CERTIFIED OR CLASS

28 CERTIFICATION TAKES PLACE.  OBVIOUSLY THEY COULD DO A

1    DEMURRER, BUT --

2         THE COURT:  WELL, NO, NO, NO, NOT AT ALL.  I THINK

3    THE DAMAGES SHOULD BE SORTED OUT TO SEE IF THEY'RE

4    STANDING.  IT'S AN INTERESTING QUESTION.  IF I WERE TO

5    GUESS AT IT, YOU PROBABLY HAVE STANDING.  BUT THE

6    QUESTION -- WE HAVE TO FIGURE OUT WHAT ARE THE DAMAGES,

7    IF ANY.  MY GUESS -- AND, AGAIN, THIS IS JUST A HIP

8    SHOT -- IS YOU WOULD BE ENTITLED TO AN INJUNCTION AND NO

9    RESTITUTION.  THAT WOULD BE MY GUESS.  BUT ARGUABLY

10   THERE'S A PROPERTY LOSS.  NOW, FOR PEOPLE WHOSE IDENTITY

11   WAS STOLEN, DIFFERENT STORY.  AGAIN, I'M NOT SURE

12   THERE'S RESTITUTION, BUT CERTAINLY THE DAMAGES ARE

13   THERE.

14        MS. SUNG:  RIGHT.  AND FOR YOUR INFORMATION, YOUR

15   HONOR, COUNTRYWIDE HAS ALREADY AGREED TO OR OFFERED A

16   TWO-YEAR DAILY CREDIT CHECK TO THOSE PEOPLE THAT IT SENT

17   NOTIFICATION LETTERS TO.

18        THE COURT:  WAS THAT DONE BEFORE THE CLASS ACTION

19   WAS FILED?

20        MS. SUNG:  YES.

21        THE COURT:  AND TELL ME WHAT YOU OFFERED AGAIN.  A

22   DAILY CREDIT CHECK?

23        MS. SUNG:  A DAILY CREDIT CHECK FOR THE THREE

24   CREDIT BUREAUS FOR TWO YEARS.

25        THE COURT:  AND THAT'S EVERYBODY OR --

26        MS. SUNG:  I THINK IT'S APPROXIMATELY MORE THAN 2

27   MILLION PEOPLE WHO RECEIVED THAT LETTER.

28        THE COURT:  THEN I MAY NOT BE YOUR CLASS MEMBER.

1  I DON'T REMEMBER GETTING THAT KIND OF A LETTER WITH THAT

2  KIND OF OFFER.  IN OTHER WORDS, IF I GOT THAT LETTER,

3  ALL I CAN DO IS CALL YOU UP AND SAY "HEY, I ACCEPT YOUR

4  OFFER.  JUST RUN A DAILY CREDIT CHECK WITH THE THREE

5  AGENCIES FOR THE NEXT TWO YEARS?

6        MS. SUNG:  RIGHT.  I THINK IT'S FROM A THIRD PARTY

7  THAT IS RELATED TO EXPEDIA OR EXPERIAN -- I THINK IT'S

8  EXPERIAN -- AND THEN YOU GO ON THE WEBSITE.  YOU LOG IN

9  AND SIGN UP.

10        THE COURT:  AND THAT WAS DONE BEFORE THE CLASS

11  ACTION WAS FILED?

12        MS. SUNG:  RIGHT.  THERE'S A LETTER ATTACHED TO

13  THEIR COMPLAINT.  IT WAS SENT AUGUST 2ND, 2008.

14        THE COURT:  OKAY.

15        MR. LUCAS:  AND, YOUR HONOR, BEAR IN MIND --

16        THE COURT:  HANG ON.

17            AND WHEN WAS THAT COMPLAINT FILED?  IT WAS

18  FILED SEPTEMBER OF '08.  WE SHOW THE COMPLAINT HERE

19  FILED ON SEPTEMBER 5.  YOU DID THIS ON AUGUST 2ND; SO

20  YOU'RE RIGHT.  YOU'RE AHEAD OF THE CLASS ACTION.

21            GO AHEAD.

22        MR. LUCAS:  I WAS JUST GOING TO MENTION, YOUR

23  HONOR, THAT THIS LETTER IS JUST TO THE WEBER PLAINTIFFS.

24  THESE LETTERS WE KNOW ARE BEING SENT OUT EVEN TODAY.  I

25  HAVE A FRIEND THAT GOT A LETTER JUST LAST MONTH, FOR

26  EXAMPLE.

27        THE COURT:  SO YOU SAY TO THE WEBER PLAINTIFFS OR

28  TO THE NAMED PLAINTIFFS?

1  MR. LUCAS:  WELL, THIS LETTER FROM COUNTRYWIDE

2 WASN'T SENT OUT TO ALL 2 MILLION PEOPLE AT THE SAME

3 TIME.  THEY WERE SENT OUT PIECEMEAL AT DIFFERENT TIMES.

4  MS. SUNG:  I THINK THERE WAS A LARGE MAILING

5 DURING THIS PERIOD OF TIME, BUT I NEED TO CONFIRM THAT;

6 BUT THIS WAS SPECIFICALLY SENT TO THE PLAINTIFF HERE.

7  THE COURT:  RIGHT.  OKAY.  WELL, THAT'S GOING TO

8 HURT THE PLAINTIFF'S CASE.

9  MR. RAVIPUDI:  HOW SO?

10  THE COURT:  WELL, YOU KNOW, THERE'S A QUESTION AS

11 TO, YOU KNOW, WHAT IS THE BENEFIT OF A CLASS ACTION.  I

12 MEAN, IF COUNTRYWIDE IS ALREADY TAKING STEPS TO HANDLE

13 THESE -- TO HANDLE THE SITUATION, WE HAVE TO ASK

14 OURSELVES WHAT IS THE BENEFIT OF A CLASS ACTION?  YOU

15 KNOW, TAKE A LOOK AT CASES LIKE FIRST AMERICAN VS.

16 SUPERIOR COURT, CANN VS. CITY OF CALIFORNIA CITY.  THERE

17 ARE A COUPLE OF OTHERS.  IT'S NOT TO SAY THAT YOU DON'T

18 GET A CLASS ACTION, BUT IT IMPACTS SUPERIORITY WHEN WE

19 GET TO THE CERTIFICATION OF THAT.

20  MR. RAVIPUDI:  SO IF --

21  THE COURT:  I DON'T KNOW.  I'M JUST THROWING

22 THOUGHTS OUT.  LOOK, IN CANN VS. CALIFORNIA CITY, THE

23 GOVERNMENT HAD ALREADY TAKEN STEPS TO HELP THE

24 PLAINTIFFS.  I THINK THERE WAS SOME SORT OF A SCAM OR

25 SOMETHING.  THE GOVERNMENT CAME IN, THERE WAS A CONSENT

26 DECREE; AND THEN AFTER THAT SOME PLAINTIFFS LAWYERS FILE

27 A CLASS ACTION.  AND I THINK THE COURT SAID IT'S NOT A

28 SUPERIOR REMEDY.  THERE'S REALLY NO REASON FOR IT